# EXHIBIT 3

**MVC TRUST AGREEMENT**

# TABLE OF CONTENTS

**Page**

Article I. RECITALS ........................................................................................................................2

Article II. DEFINITIONS ................................................................................................................2
    **Section 2.1**    Accommodation .............................................................................2
    **Section 2.2**    Affiliation Agreement .....................................................................2
    **Section 2.3**    Annual Dues...................................................................................2
    **Section 2.4**    Articles ...........................................................................................2
    **Section 2.5**    Assessments...................................................................................2
    **Section 2.6**    Association.....................................................................................2
    **Section 2.7**    Association Delegee ......................................................................2
    **Section 2.8**    Association Property......................................................................2
    **Section 2.9**    Base Interest..................................................................................2
    **Section 2.10**    Beneficiaries..................................................................................2
    **Section 2.11**    Board..............................................................................................2
    **Section 2.12**    Bylaws ...........................................................................................2
    **Section 2.13**    Chapter 721 ...................................................................................3
    **Section 2.14**    Claims............................................................................................3
    **Section 2.15**    Common Expenses ........................................................................3
    **Section 2.16**    Component.....................................................................................3
    **Section 2.17**    Component Association..................................................................3
    **Section 2.18**    Component Declaration..................................................................3
    **Section 2.19**    Component Ownership Interests....................................................3
    **Section 2.20**    Developer.......................................................................................3
    **Section 2.21**    Division .........................................................................................3
    **Section 2.22**    Effective Date................................................................................3
    **Section 2.23**    Exchange Company .......................................................................4
    **Section 2.24**    Exchange Company Documents ....................................................4
    **Section 2.25**    Exchange Company Dues...............................................................4
    **Section 2.26**    Exchange Program.........................................................................4
    **Section 2.27**    External Exchange Company.........................................................4
    **Section 2.28**    External Exchange Program...........................................................4
    **Section 2.29**    Initial Property ..............................................................................4
    **Section 2.30**    Interest...........................................................................................4
    **Section 2.31**    Legacy Owner ...............................................................................4
    **Section 2.32**    Mortgagee .....................................................................................4
    **Section 2.33**    Notice of Submission to Trust Plan ..............................................4
    **Section 2.34**    Notice of Use Rights.....................................................................5
    **Section 2.35**    Point Schedule ..............................................................................5
    **Section 2.36**    Points.............................................................................................5
    **Section 2.37**    Points for Sale...............................................................................5
    **Section 2.38**    Points for Use ...............................................................................5
    **Section 2.39**    Program Manager..........................................................................5
    **Section 2.40**    Registry.........................................................................................5
    **Section 2.41**    Reservation Procedures .................................................................5
    **Section 2.42**    Restricted Use Property.................................................................5
    **Section 2.43**    Restricted Use Property Expenses.................................................5
    **Section 2.44**    Rules and Regulations...................................................................6
    **Section 2.45**    Submission Property .....................................................................6
    **Section 2.46**    Trust..............................................................................................6
    **Section 2.47**    Trust Agreement............................................................................6
    **Section 2.48**    Trust Manager ...............................................................................6

i

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| Section 2.49 | Trust Plan | 6 |
| Section 2.50 | Trust Plan Documents | 6 |
| Section 2.51 | Trust Property | 6 |
| Section 2.52 | Trustee | 6 |
| Section 2.53 | Use Period | 6 |
| Section 2.54 | Use Year | 6 |

Article III. DECLARATION AND TITLE; PURPOSE OF THE TRUST; COMMITMENT OF PROPERTIES TO THE TRUST PLAN; RECORDING AND LEGAL DESCRIPTIONS...6

| | | |
|---|---|---|
| Section 3.1 | Declaration and Title. | 6 |
| Section 3.2 | Purpose of the Trust. | 6 |
| Section 3.3 | Submission of Property to Trust. | 7 |
| Section 3.4 | Recording and Legal Descriptions. | 8 |
| Section 3.5 | Use Year. | 10 |
| Section 3.6 | Termination of Trust Plan. | 10 |

Article IV. BENEFICIARIES; TRANSFER OF BENEFICIAL INTERESTS; RIGHTS AND OBLIGATIONS OF BENEFICIARIES...10

| | | |
|---|---|---|
| Section 4.1 | Beneficiaries. | 10 |
| Section 4.2 | Transfers of Interests. | 11 |
| Section 4.3 | Rights of Beneficiaries. | 14 |

Article V. TRUST PROPERTY...14

| | | |
|---|---|---|
| Section 5.1 | Trust Property. | 14 |
| Section 5.2 | Base Interest; Assignment of Points. | 14 |
| Section 5.3 | Additions and Substitutions of Trust Property. | 16 |
| Section 5.4 | Withdrawals of Trust Property. | 18 |
| Section 5.5 | Removal of Trust Property Prior to Delivery of Notice of Use Rights. | 20 |
| Section 5.6 | Occupancy Assignments. | 20 |

Article VI. ARTICLE VI.  TERM; TERMINATION OF THE TRUST...21

| | | |
|---|---|---|
| Section 6.1 | Term. | 21 |
| Section 6.2 | Termination of the Trust by Developer. | 21 |
| Section 6.3 | Termination of the Trust by Beneficiaries. | 21 |

Article VII. POWERS, DUTIES AND OBLIGATIONS OF TRUSTEE...21

| | | |
|---|---|---|
| Section 7.1 | Fiduciary Duty. | 21 |
| Section 7.2 | Duties of Trustee. | 21 |
| Section 7.3 | Delegation of Authority and Obligations. | 22 |
| Section 7.4 | Trustee Acts Only on Written Authorization. | 23 |
| Section 7.5 | Trustee Expenses. | 23 |
| Section 7.6 | Resignation or Death of Trustee. | 24 |
| Section 7.7 | Removal of Trustee. | 24 |
| Section 7.8 | Successor Trustee. | 24 |
| Section 7.9 | Insurance by Trustee. | 25 |
| Section 7.10 | Protection of Third Parties Dealing with Trustee. | 25 |
| Section 7.11 | Disclosure of Interests. | 25 |
| Section 7.12 | Legal Proceedings. | 25 |
| Section 7.13 | Permissive Acts. | 25 |

ORLA.094873:0154_1288395.15 1/11/2010 9:21 AM

# TABLE OF CONTENTS

**Page**

Article VIII. TRUSTEE LIABILITY ................................................................................................26

Article IX. THE ASSOCIATION ....................................................................................................27
 **Section 9.1** Management and Operation of the Trust Property, Association Property, and the Trust Plan. ...............................................................................27
 **Section 9.2** Membership in the Association. ...............................................................27
 **Section 9.3** Limitation on Liability of Trust Association. ...........................................27
 **Section 9.4** Restraint on Assignment of Shares and Assets. .......................................28
 **Section 9.5** Acts of the Association. .............................................................................28
 **Section 9.6** Effect on Developer. .................................................................................28
 **Section 9.7** Initial Reservation Procedures. .................................................................28
 **Section 9.8** Assessments. .............................................................................................28

Article X. PROHIBITION AGAINST RECORDING .....................................................................29
 **Section 10.1** No Recording. ...........................................................................................29
 **Section 10.2** Memorandum of Trust Agreement. ...........................................................29
 **Section 10.3** Locus of Trust. ..........................................................................................30

Article XI. AMENDMENTS ...........................................................................................................30
 **Section 11.1** By Association. .........................................................................................30
 **Section 11.2** By Developer. ............................................................................................31
 **Section 11.3** Effect on Trustee. .....................................................................................31

Article XII. RIGHTS RESERVED BY DEVELOPER ...................................................................31
 **Section 12.1** General Rights of Access. .........................................................................31
 **Section 12.2** Developer Rights. ......................................................................................32

Article XIII. MISCELLANEOUS ...................................................................................................32
 **Section 13.1** Governing Law. .........................................................................................32
 **Section 13.2** Notices. .....................................................................................................32
 **Section 13.3** "Marriott" Mark or any Mark having the Name "Marriott" in It. .............33
 **Section 13.4** Component and Trust Plan Management Agreements. ...............................34
 **Section 13.5** Successors. ................................................................................................34
 **Section 13.6** Registered Agent for Service of Process. ..................................................35
 **Section 13.7** Headings. ...................................................................................................35
 **Section 13.8** Interpretation. ............................................................................................35
 **Section 13.9** No Third-Party Beneficiary. ......................................................................35
 **Section 13.10** Enforceability. ...........................................................................................35
 **Section 13.11** Inquiries. ...................................................................................................35
 **Section 13.12** Conflicting Claims. ...................................................................................35
 **Section 13.13** Tax Treatment. ..........................................................................................35
 **Section 13.14** Consumer Price Index. ..............................................................................36
 **Section 13.15** Counterparts. .............................................................................................36
 **Section 13.16** Other Plans. ...............................................................................................36
 **Section 13.17** Waiver of Jury Trial. .................................................................................36
 **Section 13.18** Attorneys' Fees. ........................................................................................37
 **Section 13.19** Force Majeure. ..........................................................................................37

# MVC TRUST AGREEMENT

**THIS MVC TRUST AGREEMENT** ("**Trust Agreement**") is effective as of the _____ day of _____, 20__ ("**Effective Date**"), by and among _____, whose address is _____, as "**Trustee**," which designation shall include any substitute trustee and all successor trustees, **Marriott Ownership Resorts, Inc.**, a Delaware corporation, whose address is 6649 Westwood Boulevard, Orlando, Florida 32821-6090 ("**Developer**"), and **MVC Trust Owners Association, Inc.**, a Florida not-for-profit corporation, whose address is 6649 Westwood Boulevard, Orlando, Florida 32821-6090 ("**Association**").

## W I T N E S S E T H :

**WHEREAS**, Developer is the owner of (or has an option or other contractual right to purchase) certain property, which shall be conveyed or assigned to the Trustee and thereby subject to the terms and conditions of this Trust Agreement ("**Initial Property**");

**WHEREAS**, Developer desires to establish a land trust (as further defined in Article II below, the "**Trust**"), as settlor of the Trust pursuant to Section 689.071, *Florida Statutes* (2010);

**WHEREAS**, Developer will transfer legal and equitable title to the Initial Property (or will otherwise cause legal and equitable title in the Initial Property to be transferred) to the Trustee as trustee of the Trust (the Initial Property, together with any other property transferred to Trustee now or hereafter pursuant to this Trust Agreement, shall be referred to as the "**Trust Property**");

**WHEREAS**, Developer desires to establish a vacation ownership plan with respect to the Trust Property, which vacation ownership plan shall be known as Marriott Vacation Club Destinations (as further defined in Article II below, "**Trust Plan**");

**WHEREAS**, each Interest (as defined in Article II below) in the Trust Plan shall consist of a beneficial interest in the Trust;

**WHEREAS**, Developer desires to offer for sale vacation ownership interests in the Trust Plan;

**WHEREAS**, ownership of an Interest shall entitle the owner thereof the right to reserve, use, and occupy the Trust Property in accordance with and subject to this Trust Agreement and the other Trust Plan Documents (as defined in Article II below);

**WHEREAS**, the purpose of the Trust shall be to hold the Trust Property for the benefit of the Beneficiaries (as defined in Article II below) pursuant to this Trust Agreement and other Trust Plan Documents;

**WHEREAS**, Trustee is authorized and qualified to conduct trust business in the State of Florida; and

**WHEREAS**, Trustee has agreed to accept the transfer of legal and equitable title to the Trust Property and has agreed to hold the Trust Property for the use and benefit of the Beneficiaries in accordance with the terms and conditions of this Trust Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises contained in this Trust Agreement, Trustee, Developer, the Association, and all Beneficiaries through their acceptance of Interests (collectively, the "**Parties**") hereby agree as follows:

1

# ARTICLE I.  RECITALS

The foregoing recitals are hereby ratified, confirmed, and approved, and are incorporated in this Trust Agreement by reference to show the intent of the Parties.

# ARTICLE II.  DEFINITIONS

All capitalized terms used in this Trust Agreement shall have the meanings ascribed to such terms as set forth in this Article II, unless the context requires otherwise.

**Section 2.1**     Accommodation means an accommodation, condominium unit, apartment, co-operative unit, single family home, efficiency cabana, cottage, attached or free standing townhome or villa, fee interest, leasehold interest, unit located in a multi-unit building, and that portion of the Component(s) or other similar real property interests that is subject to exclusive ownership or use by one or more persons.

**Section 2.2**     Affiliation Agreement means a contract between an Exchange Company, Association, Developer, and Trust Manager, as it is amended from time to time, pursuant to which the Trust Properties are included in an Exchange Program, and Beneficiaries are entitled to certain benefits and services of the Exchange Program.

**Section 2.3**     Annual Dues means the amount assessed against a Beneficiary for the Beneficiary's share of the Common Expenses pursuant to this Trust Agreement.

**Section 2.4**     Articles means the Articles of Incorporation of the Association as amended from time to time, the initial copy of which is attached to this Trust Agreement as Exhibit "A."

**Section 2.5**     Assessments means the Annual Dues and any other amounts, whether characterized as maintenance fees, fines, charges, fees, taxes, assessments, special assessments, or otherwise, levied against a Beneficiary by the Association pursuant to the terms and conditions of the Trust Plan Documents, and more specifically described in the Association's Bylaws.

**Section 2.6**     Association means MVC Trust Owners Association, Inc., a Florida corporation not-for-profit, formed by the Developer for the purpose of maintaining and operating the Trust Plan and Trust Property, which Association will be comprised of all Beneficiaries of the Trust, from time to time, with such powers as are set forth in this Trust Agreement, the Articles, and the Bylaws.

**Section 2.7**     Association Delegee means Program Manager for so long as an Affiliation Agreement with Program Manager is in effect, and thereafter shall mean the Trust Manager.

**Section 2.8**     Association Property means all real and personal property owned or leased by the Association from time to time for the use and benefit of Beneficiaries.

**Section 2.9**     Base Interest means six (6) Interests; provided, however, in the case of a Legacy Owner, a Base Interest shall mean two (2) Interests.

**Section 2.10**     Beneficiaries means the owners of Interests, including Developer.

**Section 2.11**     Board means the board of directors of the Association.

**Section 2.12**     Bylaws means the Bylaws of the Association, as amended from time to time, the initial copy of which is attached to this Trust Agreement as Exhibit "B."

2

**Section 2.13**      Chapter 721 means the provisions of Chapter 721, *Florida Statutes*, as the same is constituted on the Effective Date of this Trust Agreement except to the extent that the applicability of future amendments to Chapter 721 is mandatory or unless otherwise stated in this Trust Agreement.

**Section 2.14**      Claims means all claims, actions, causes of action, suits, liabilities, damages, losses, costs and expenses, including, without limitation, court costs, reasonable attorneys' fees and expenses, paralegal fees, settlement costs, and judgments at all trial and appellate levels and whether suit be brought or not, and any fees, fines, or penalties assessed by any governmental or quasi-governmental agency incurred by the Trustee in connection with this Trust Agreement except to the extent such are caused by the gross negligence or willful misconduct of Trustee, of Trustee's parents, subsidiaries and affiliates, or of their officers, directors, managers, equity holders, employees, agents, and representatives, or of all of those claiming by, through or under any of the foregoing, and all of their successors and assigns.

**Section 2.15**      Common Expenses means all expenses properly incurred in the ownership, maintenance, management, operation, repair, and replacement of the Trust Property (exclusive of Restricted Use Property Expenses) and the Association Property, in the operation of the Trust Plan, and by the Association in the performance of its duties, including Exchange Company Dues and any other fees, expenses, or Claims payable by the Association from time to time, and such other expenses defined in this Trust Agreement to be Common Expenses.  Common Expenses include any assessments due under any Component Declarations to which any of the Trust Property may also be subject.

**Section 2.16**      Component means those Accommodations located in a specific geographic location under common management, which constitute in whole or in part, any portion of the Trust Property, and related amenities and recreational facilities.  The Association Delegee retains the right to determine what constitutes a Component in the Association Delegee's sole discretion from time to time.

**Section 2.17**      Component Association means any owners' association or similar organization governing the use, operation, repair, replacement, or maintenance of a portion of the Trust Property, but excluding the Association.

**Section 2.18**      Component Declaration means any condominium declarations, community governing instruments, declaration of covenants, or such other documents which might now or in the future encumber and govern any portion of a Component.  Component Declaration also includes all the exhibits to encumbering documents and all documents governing the Component Association for such Component, as such may be amended from time to time.

**Section 2.19**      Component Ownership Interests means timeshare estates or other timeshare or fractional interests created in the Components pursuant to and as further described in the Components' governing documents.

**Section 2.20**      Developer means Marriott Ownership Resorts, Inc., a Delaware corporation, the settlor of the Trust.  No party other than Developer or Developer's affiliates, successors, or assigns shall exercise the rights and privileges reserved in this Trust Agreement to Developer unless such party receives and records in the Public Records of Orange County, Florida a written assignment from Developer of all or a portion of such rights and privileges.

**Section 2.21**      Division means the Division of Florida Condominiums, Timeshares, and Mobile Homes of the Florida Department of Business and Professional Regulation.

**Section 2.22**      Effective Date shall have the meaning ascribed to such term on page 1 of this Trust Agreement.

ORLA.094873:0154_1288395.15 1/11/2010 9:21 AM

**Section 2.23** <u>Exchange Company</u> means either an External Exchange Company or Program Manager.

**Section 2.24** <u>Exchange Company Documents</u> means the Affiliation Agreement, exchange reservation procedures, disclosure guide, and any other instruments governing the use and operation of an Exchange Program which are promulgated, executed and/or amended by an Exchange Company from time to time.

**Section 2.25** <u>Exchange Company Dues</u> means the charges assessed by an Exchange Company in connection with the operation of an Exchange Program that are assessable to the Association each calendar year.  The Exchange Company Dues shall be determined in accordance with the Affiliation Agreement for such Exchange Program, and may be different amounts for each timeshare plan that is affiliated with such Exchange Program.

**Section 2.26** <u>Exchange Program</u> means either an External Exchange Program or any exchange program offered by Program Manager.

**Section 2.27** <u>External Exchange Company</u> means any company that provides services to Program Manager or the Beneficiaries under an External Exchange Program.

**Section 2.28** <u>External Exchange Program</u> means the contractual arrangement between the Association or Program Manager and an External Exchange Company or Companies pursuant to which a Beneficiary may reserve, under certain conditions, the use of accommodations in resorts other than those which are part of the Trust Property.

**Section 2.29** <u>Initial Property</u> has the meaning ascribed to such term on page 1 of this Trust Agreement.

**Section 2.30** <u>Interest</u> means a beneficial interest in the Trust created pursuant to this Trust Agreement, Section 689.071, *Florida Statutes* (2010), and Chapter 721.  Each Interest entitles the owner of such Interest to reserve, use, and occupy the Trust Property in accordance with the Trust Plan Documents.  Each Interest shall constitute a "timeshare estate" as that term is defined by Section 721.05, *Florida Statutes*.

**Section 2.31** <u>Legacy Owner</u> means a Beneficiary who is the owner of a week-based timeshare interest in a resort developed, sold, or offered by Developer or its affiliates where: (i) such week-based timeshare interest was acquired prior to the purchase of the Beneficiary's first Interest, (ii) such week-based interest has been enrolled by the Beneficiary in the Exchange Program offered by Program Manager, and (iii) the Beneficiary owns a Base Interest.

**Section 2.32** <u>Mortgagee</u> means Developer, Developer's shareholders, and Developer's or Developer's shareholders' affiliates (and any successors in interest to Developer, Developer's shareholders, and Developer's or Developer's shareholders' affiliates as to a purchase money mortgage), any trust, savings and loan association, credit union, mortgage company, bank, insurance company, commercial loan company, or other institutional lender, to the extent that any of the same hold a first mortgage encumbering an Interest.

**Section 2.33** <u>Notice of Submission to Trust Plan</u> means a notice delivered by Developer to the Association and Trustee, upon the effective date of which a Trust Property shall be subject to the Trust Plan, but shall remain a Restricted Use Property until a delivery of a Notice of Use Rights.  The Notice of Submission to Trust Plan  shall particularly describe the Trust Property being submitted to the Trust Plan and the effective date of such submission.

4

**Section 2.34**     <u>Notice of Use Rights</u> means a notice delivered by Developer to the Association and Trustee, upon the effective date of which Developer and Beneficiaries other than Developer shall be entitled to reserve the use and occupancy of the Trust Property particularly described in such notice.

**Section 2.35**     <u>Point Schedule</u> means the annual schedule(s) promulgated by the Association Delegee which identifies the pertinent information for the Trust Reservation System in a given year, including setting forth the number of Points for Use required to reserve Use Periods, all as amended by Association Delegee from time to time.

**Section 2.36**     <u>Points</u> means the symbolic unit of use comparison initially assigned to a Beneficiary's Interest which signifies the use rights in the Trust Property that are appurtenant to a Beneficiary's Interest.

**Section 2.37**     <u>Points for Sale</u> means the number of Points that Developer ascribes to each particular portion of the Submission Property on the deed upon conveyance of such Submission Property to the Trustee.  The total Points for Sale in the Trust at any given time will never exceed the total Points for Use at such time.

**Section 2.38**     <u>Points for Use</u> means the number of Points that are required to reserve a particular Accommodation at a particular time in accordance with the Reservation Procedures.  The total Points for Sale in the Trust at any given time will never exceed the total Points for Use at such time.

**Section 2.39**     <u>Program Manager</u> means an exchange company operated by Developer or an affiliate of Developer that offers exchange and reservation services and related vacation and travel benefits to Beneficiaries and other members pursuant to an Affiliation Agreement.  Developer reserves the right, but not the obligation, to establish Program Manager.

**Section 2.40**     <u>Registry</u> means the registry of the Beneficiaries maintained by the Trustee in accordance with Section 7.2(e) of this Trust Agreement.

**Section 2.41**     <u>Reservation Procedures</u> means the rules and regulations governing the reservation and use of the Trust Property by Beneficiaries as adopted by the Board and Developer and as amended by the Association Delegee from time to time.

**Section 2.42**     <u>Restricted Use Property</u> means Trust Property that has not been made available for use and occupancy by Beneficiaries other than Developer pursuant to a Notice of Use Rights.  Developer shall be solely responsible for any Restricted Use Property Expenses and Developer shall retain all rights to the use, occupancy, enjoyment, and rental of each Restricted Use Property until the effective date of the Notice of Use Rights that has been delivered to the Association and Trustee by Developer with respect to such Restricted Use Property.

**Section 2.43**     <u>Restricted Use Property Expenses</u> means all expenses properly incurred in the ownership, operation, maintenance, repair, or replacement of the Restricted Use Property, all costs of carrying out the powers and duties of the Association with respect to the Restricted Use Property, all applicable insurance premiums and expenses relating thereto, including fire insurance and extended coverage, any reserves for capital expenditures and deferred maintenance unless waived, and any other expenses designated as Restricted Use Property Expenses, from time to time by the Board or under the provisions of this Trust Agreement.  Restricted Use Property Expenses include any fees, expenses, or Claims that are payable by the Association or Developer to the Trustee with respect to Restricted Use Property and any assessments due under any Component Declarations with respect to Restricted Use Property and such other expenses defined in this Trust Agreement to be Restricted Use Property Expenses.  Restricted Use Property Expenses shall only be assessed against Developer and shall only be

5

assessed against particular Restricted Use Property until such time as a Notice of Use Rights with respect to such Restricted Use Property is effective and has been delivered to the Association and Trustee.

**Section 2.44**    <u>Rules and Regulations</u> means the Rules and Regulations for MVC Trust as established and amended from time to time by the Board in the manner provided in the Bylaws.

**Section 2.45**    <u>Submission Property</u> means the Accommodations, Component Ownership Interests, leaseholds, beneficial interests in other trusts, property interests, or other real property that may be submitted to the Trust in accordance with this Trust Agreement.

**Section 2.46**    <u>Trust</u> means the MVC Trust established pursuant to this Trust Agreement.

**Section 2.47**    <u>Trust Agreement</u> means this MVC Trust Agreement, together with all of the exhibits, schedules and annexes thereto, as amended and supplemented from time to time.

**Section 2.48**    <u>Trust Manager</u> means the person or entity engaged by the Association, with responsibility for the management and operation of the Trust, Trust Plan, and Trust Property.

**Section 2.49**    <u>Trust Plan</u> means Marriott Vacation Club Destinations, the vacation ownership plan established by Developer pursuant to this Trust Agreement and in accordance with Chapter 721.

**Section 2.50**    <u>Trust Plan Documents</u> means the documents creating or governing the Trust Plan including the operation of the use plan in the Trust Property.  Trust Plan Documents include this Trust Agreement, the Articles, the Bylaws, the Reservation Procedures, and the Rules and Regulations.

**Section 2.51**    <u>Trust Property</u> means the Submission Property that has been submitted to the Trust in accordance with this Trust Agreement.

**Section 2.52**    <u>Trustee</u> means _____, its successors and assigns, and any substitute trustee and its successors and assigns.

**Section 2.53**    <u>Use Period</u> means the time period(s) of a day or consecutive days during which each Beneficiary is afforded the opportunity to reserve and use an Accommodation in accordance with this Trust Agreement, the Reservation Procedures, and the other Trust Plan Documents.

**Section 2.54**    <u>Use Year</u> means the annual period of time beginning on the first day of the month as set forth in a Beneficiary's deed.  The Points allocated to a Beneficiary for a particular Use Year are eligible for use during that Use Year, subject to the permitted banking or borrowing of such Points, in accordance with the Reservation Procedures.

## ARTICLE III.  DECLARATION AND TITLE; PURPOSE OF THE TRUST; COMMITMENT OF PROPERTIES TO THE TRUST PLAN; RECORDING AND LEGAL DESCRIPTIONS

**Section 3.1**    <u>Declaration and Title</u>.  As of the Effective Date, there is established a trust in accordance with Section 689.071, *Florida Statutes* (2010).  The Trust shall be irrevocable for so long as any Beneficiary has a right to occupy any portion of the Trust Property pursuant to the Trust Plan Documents unless the Trust is otherwise terminated in accordance with this Trust Agreement.  The Trust shall be known as the MVC Trust.  The Trustee, as trustee of the Trust, shall hold the Trust Property on behalf of the Beneficiaries for the use and purposes as set forth in this Trust Agreement.

**Section 3.2**    <u>Purpose of the Trust</u>.  The purpose of the Trust is to hold and preserve the Trust Property for the benefit of the Beneficiaries as set forth in this Trust Agreement until such time as all of

the Trust Property is sold (other than the sale of Interests in the Trust by Developer to purchasers) or otherwise disposed of or liquidated or until the termination of this Trust Agreement. Trustee shall not manage or operate the Trust Property nor undertake any other activity not strictly necessary to the attainment of the foregoing objects and purposes; nor shall Trustee transact business of any kind with respect to the Trust Property within the meaning of Chapter 609, *Florida Statutes* (2010); nor shall this Trust Agreement be deemed to be, create or evidence the existence of a corporation, de facto or de jure, a Massachusetts Trust, any other type of business trust, an association in the nature of a corporation, a co-partnership, or joint venture by or among Trustee, Developer, Association, or any Beneficiaries, or any combination thereof.

> **Section 3.3**    <u>Submission of Property to Trust</u>.

> (a)    <u>Commitment of Property to Trust, Trust Plan, and Granting of Use Rights</u>. Submission Property shall be submitted to the Trust upon the recording of the deed or other instrument which conveys such Submission Property to the Trustee; provided, however, Trust Property shall be deemed Restricted Use Property, and shall not be committed to the Trust Plan or eligible for reservation, use, or occupancy by Beneficiaries, until such time as Developer has delivered to the Association and Trustee the applicable notices as set forth below.

> At such time that Developer delivers to Association and Trustee a Notice of Submission to Trust Plan for a particular Restricted Use Property, such Restricted Use Property will be committed to the Trust Plan; however such property will remain a Restricted Use Property. At such time that Developer delivers to Association and Trustee a Notice of Use Rights with respect to a particular Trust Property, such property shall be committed to the Trust Plan (if a Notice of Submission to Trust Plan had not previously been delivered), shall be eligible for reservation, use, and occupancy by Beneficiaries, and shall no longer be a Restricted Use Property. Upon delivery of either notice as set forth above, Developer shall deliver to Trustee any Component Declarations applicable to the property. No Submission Property may be submitted to the Trust or committed to the Trust Plan, nor shall a Notice of Submission to Trust Plan or Notice of Use Rights with respect to any Restricted Use Property be delivered to Association and Trustee, by any person or entity other than Developer, without Developer's prior written consent.

> Until such time as Developer has delivered a Notice of Use Rights with respect to a particular Restricted Use Property, Developer shall retain full control over such Restricted Use Property and may utilize such Restricted Use Property in any manner including rental, exchange, promotional use, or any other purpose in Developer's sole discretion. Developer shall pay all Restricted Use Property Expenses incurred with respect to each Restricted Use Property, and no Common Expenses shall be assessed against the Beneficiaries with respect to such Restricted Use Property (nor shall the Association be obligated to furnish maintenance or other services to the Restricted Use Property until the Notice of Use Rights is delivered). It is expressly understood that there is not a precise formula for allocating the Restricted Use Property Expenses; however, the Association will use a commercially reasonable method for making such allocation as determined to be equitable by the Association in the Association's sole discretion. Trustee shall not place or consent to the placement of any encumbrances on any Restricted Use Property without the prior written consent of Developer. Further, until such time as Developer has delivered a Notice of Use Rights with respect to a particular Restricted Use Property, Trustee, within five (5) business days following receipt of written notice from Developer, shall convey such Restricted Use Property to Developer (or its designee), and upon such conveyance such Restricted Use Property shall no longer be deemed Trust Property.

> Notwithstanding the provisions of this Section 3.3, Developer may assign its right to submit property to the Trust together with its right to deliver a Notice of Use Rights or Notice of Submission to Trust Plan with respect to such property to any person or legal entity in Developer's sole discretion. To the extent that such other person or legal entity is not a party to this Trust Agreement and

7

is not thereby indemnifying Trustee, then such person or entity shall be required to provide the same indemnifications provided by Developer under this Trust Agreement and any other agreement executed in connection with this Trust Agreement, including any amendments, restatements, and supplements to such agreements.   Nothing in this Trust Agreement shall be deemed to preclude Developer from delivering a Notice of Use Rights with respect to any Restricted Use Property without first delivering a Notice of Submission to Trust Plan.   In such case, the Notice of Use Rights will also be deemed to subject such Restricted Use Property to the Trust Plan.   The requirements of this Section 3.3(a) regarding the provision of a Notice of Submission to Trust Plan or a Notice of Use Rights to the Trustee shall not be applicable to the Association in the event the Association submits property to the Trust as a result of any condemnation proceeding or casualty loss as set forth in the Bylaws, and any such property submitted by the Association shall be deemed immediately available for use by the Beneficiaries upon submission to the Trust.  Further, notwithstanding anything in this Trust Agreement to the contrary, no property shall be submitted to the Trust that would, in Developer's sole discretion, create any adverse tax consequences for the Developer or any of Developer's subsidiaries or affiliates.

(b)        Retention of Development Rights.   Notwithstanding Developer's submission of Submission Property to the Trust pursuant to Section 3.3(a) of this Trust Agreement, until delivery of the Notice of Use Rights with respect to any particular Restricted Use Property, Developer shall retain, and Trustee by execution of this Trust Agreement hereby assigns and grants to Developer, all rights and entitlements necessary to develop, construct improvements on, and furnish and equip the Restricted Use Property and deliver to the Beneficiaries the Accommodations and facilities of the Trust Plan as contemplated by the Trust Plan Documents, in each case without the requirement to obtain the consent of any party.  The rights retained by Developer under this Section 3.3(b) shall include the right to grant any easements and apply for and obtain any and all permits, entitlements, approvals, licenses, authorizations, certificates of occupancy, and similar documents necessary to develop, construct improvements on, and furnish and equip the Restricted Use Property from time to time as Developer may deem appropriate in Developer's sole and unfettered discretion.  Trustee and the Beneficiaries hereby reserve the right to grant such easements as are necessary to carry out the purposes of this Section 3.3(b) and agree to execute such documentation as may be reasonably necessary to evidence such easements to Developer.  Until delivery of the Notice of Use Rights with respect to any particular Restricted Use Property, no Beneficiaries (other than Developer) shall have any rights with respect to such property, and each Beneficiary, by acceptance of an Interest, acknowledges and consents to the rights reserved to Developer pursuant to this Section 3.3(b) and in the event that any rights of Beneficiaries (other than Developer) are deemed to exist in such property, each Beneficiary, by acceptance of an Interest, assigns such rights to Developer.

Section 3.4        Recording and Legal Descriptions.

(a)        Deeds to Trustee.  For purposes of establishing the Trust pursuant to this Trust Agreement and submitting additional property to the Trust from time to time, deeds or any other instruments of conveyance of Submission Property to Trustee as trustee of the Trust, shall provide the following:

(i)        A legal description of the Submission Property being submitted to the Trust together with a graphic description of such property, at grantor's discretion;

(ii)        A statement that all legal title and equitable title to the Submission Property is being conveyed to Trustee as trustee of the Trust under this Trust Agreement;

(iii)        Upon conveyance of the Submission Property to Trustee by Developer or Developer's successors or assigns, or at Developer's direction, all Interests in the Trust created by the conveyance of such Submission Property to the Trust shall immediately and automatically vest in Developer pursuant to this Trust Agreement and that certain Memorandum of Trust Agreement recorded

in the Public Records of Orange County, Florida, and any deeds conveying such Interests shall be recorded in the Public Records of Orange County, Florida;

(iv)     A statement identifying the number of Points for Sale associated with the existing Trust Property and the number of additional Points for Sale created by the conveyance of the additional Submission Property to Trustee;

(v)      A statement identifying the number of Interests resulting from the conveyance of the additional Submission Property to Trustee;

(vi)     That any lien on an Interest in the Trust shall be perfected only upon the recording of a mortgage or other legally sufficient notice of such lien in the Public Records of Orange County, Florida;

(vii)    That any mortgage or other notice of a lien on an Interest shall constitute a lien only on such Interest and no such document shall act as a lien or otherwise encumber Trustee's title to the Trust Property or any other Beneficiary's Interest;

(viii)   Certain easements and other rights with respect to the Trust Property that are reserved to Developer, its successors and assigns; and

(ix)     If, in accordance with this Trust Agreement and at Developer's direction, Submission Property is conveyed to the Trustee by a party other than Developer, then Developer shall join in or evidence its consent to the deed or other instrument of conveyance.

(b)      Deeds of Interests to Beneficiaries.  For purposes of conveying Interests in the Trust to any purchasers of such Interests, deeds and any other instruments of conveyance of Interests shall be recorded exclusively in the Public Records of Orange County, Florida and shall provide that: (a) any lien on an Interest in the Trust shall be perfected only upon the recording of a mortgage or other legally sufficient notice of such lien in the Public Records of Orange County, Florida; and (b) any mortgage or other notice of a lien on an Interest shall constitute a lien only on such Interest and no such instrument shall act as a lien or otherwise encumber Trustee's title to the Trust Property or any other Beneficiary's Interest.  It shall not be required that Trustee execute, join, or otherwise consent to any mortgage with respect to any Interest or any deed of an Interest to a Beneficiary.  Any contract of sale, deed, lease, mortgage, will, or other instrument affecting an Interest shall be recorded exclusively in the Public Records of Orange County, Florida, and shall describe the Interest by the identifying number assigned to the Interest by Developer and the description shall be followed by a reference to this Trust Agreement.  To illustrate, any instrument affecting title to an Interest will legally describe the Interest in substantially the following manner, with such omissions, insertions, recitals of fact or other provisions as may be required by the circumstances or appropriate to conform to the requirements of any governmental authority or any law relating to such matters:

A timeshare estate as defined by Section 721.05, *Florida Statutes*, more fully described as: _____ Interest(s) (numbered for administrative purposes: _____) in the MVC Trust ("Trust") evidenced for administrative, assessment and ownership purposes by _____ Points (250 Points for each Interest), which Trust was created pursuant to and further described in that certain MVC Trust Agreement dated _____ ____, 200_, executed by and among _____, as the trustee of the Trust, Marriott Ownership Resorts, Inc., a Delaware corporation, and MVC Trust Owners Association, Inc., a Florida corporation not-for-profit, as such agreement may be amended and supplemented from time


to time, a memorandum of which is recorded in Official Records Book _____, Page _____, Public Records of Orange County, Florida ("Trust Agreement").  The Interest(s) shall have a Use Year anniversary of _____ (subject to Section 3.5 of the Trust Agreement).

**Section 3.5**      <u>Use Year</u>.  Each Interest will have a Use Year designated in the initial deed for such Interest.  No person other than Developer (and Developer's affiliates and assigns) may alter the Use Year for an Interest; provided that any such alteration by Developer or Developer's affiliates or assigns may only redesignate the Use Year anniversary in a manner that ensures a one-to-one use right to use night requirement ratio.  Any such redesignation shall be evidenced by an instrument recorded in the Public Records of Orange County, Florida.

**Section 3.6**      <u>Termination of Trust Plan</u>.  In the event of termination of the Trust Plan in accordance with this Trust Agreement, Trustee may convey the Trust Property in accordance with Section 7.2(b) of this Trust Agreement.

## ARTICLE IV.  BENEFICIARIES; TRANSFER OF BENEFICIAL INTERESTS; RIGHTS AND OBLIGATIONS OF BENEFICIARIES

**Section 4.1**      <u>Beneficiaries</u>.

(a)      <u>Designation of Beneficiaries</u>.  The initial Beneficiary of the Trust shall be Developer.  Developer, as the initial settlor and sole Beneficiary as of the Effective Date, reserves and retains all Interests in the Trust until such Interests are conveyed by Developer to purchasers of such Interests in accordance with this Trust Agreement.  Developer may transfer any portion or all of its Interests in the Trust Property to purchasers of such Interests.  Each purchaser who purchases, or otherwise lawfully acquires, an Interest from Developer shall be a Beneficiary of the Trust.  Developer shall also be a Beneficiary of the Trust for so long as Developer holds ownership of any unsold or reacquired Interests.  No one may become a Beneficiary by acquiring an Interest from any transferor other than Developer unless such transfer occurs strictly in accordance with this Trust Agreement.

(b)      <u>Interests of Beneficiaries; Nature of Interests</u>.  The interest of each Beneficiary (other than Developer) in the Trust will be evidenced by a deed issued to the Beneficiary at the time of closing of the Beneficiary's purchase of an Interest as described in Section 3.4(b) of this Trust Agreement.  Each Beneficiary's Interest shall include the right of such Beneficiary to reserve and use the Trust Property (excluding the Restricted Use Property) in accordance with the Trust Plan Documents.  Furthermore, for so long as the Trust remains affiliated with an Exchange Program, such Beneficiary shall be entitled to make exchange reservations in accordance with and subject to the provisions of the applicable Exchange Company Documents.  The Interests will each be deemed to be Florida real property interests and may be transferred as such and only transferred pursuant to the provisions of this Trust Agreement, Section 689.071, *Florida Statutes* (2010), and Chapter 721.

(c)      <u>No Legal or Equitable Title</u>.  The interest of a Beneficiary under this Trust Agreement shall consist of the rights set forth in this Trust Agreement.  No Beneficiary shall have any right of partition as to any Trust Property or any Interest, other than as may be permitted by Developer.  A Beneficiary shall not have any right, title, or interest in or to any portion of the legal and equitable title to the Trust Property.  If a Beneficiary is a human being, the death of the Beneficiary shall not terminate the Beneficiary's Interest, the Trust, or this Trust Agreement, or affect the rights or powers of the Trustee, the Association, Developer, or the other Beneficiaries.  Upon the death of a Beneficiary, the Beneficiary's Interest shall be subject to and transferred in accordance with applicable testamentary laws, regulations, and procedures.

ORLA.094873:0154_1288395.15 1/11/2010 9:21 AM

(d)     <u>Timeshare Estates</u>.  Each Interest shall constitute a timeshare estate as that term is defined in Chapter 721, and shall be deemed an interest in real property.

(e)     <u>No Authority</u>.  No Beneficiary shall have the authority to contract for or in the name of the Trustee or any other Beneficiary or to bind the Trustee or any other Beneficiary personally.

**Section 4.2**     <u>Transfers of Interests</u>.

(a)     <u>Alienability of Interests</u>.  Subject to Sections 4.2(b), (c), and (e) below, the right of a Beneficiary to sell, transfer, assign, or hypothecate the Beneficiary's Interest shall not be subject to the approval of Developer, Trustee, or the Association.  Accordingly, subject to Sections 4.2(b), (c), and (e) below, a proper transfer or conveyance of such Interest shall not require the written approval of Developer, Trustee, or the Association.  However, in accordance with the Bylaws and applicable Florida law, a grantee Beneficiary is required to notify in writing Developer, the Association, and Trustee at the addresses set forth in this Trust Agreement of any change in information kept in the Registry by Trustee upon the transfer or conveyance of an Interest, and to pay any transfer or administrative fee required under the Trust Plan Documents.  Until such written notice is received by the parties noted above and all transfer or administrative fees are paid, the seller of such Interest shall remain liable for the payment of all Assessments, taxes, and other fees then due or which may later become due with relation to the Interest.

The right of a Beneficiary to sell, transfer, or assign such Beneficiary's Interest shall be subject to: (i) this Trust Agreement and all covenants, conditions, and restrictions set forth or referred to in this Trust Agreement; (ii) the covenant of the purchaser to the Association to perform and observe all covenants on the part of the Beneficiary; (iii) the payment of any sums due to the Association as Assessments and member education fees; (iv) Developer's right of first refusal under Section 4.2(b) below; and (v) the restriction imposed under Section 4.2(e) below.  Further, the Association Delegee has the right to create such reservation approval restrictions as it deems necessary from time to time, and compliance with such restrictions is required before and during possession and occupancy of Trust Property.

The United States Department of the Treasury, Office of Foreign Assets Control ("**OFAC**"), prohibits Developer, Trustee, Association, Trust Manager, Program Manager, and Beneficiaries from engaging, directly or indirectly, in transactions with individuals or entities on OFAC's list, as updated from time to time, of Specially Designated Nationals and Blocked Persons (the "**SDN List**").  OFAC also administers, from time to time, sanction and embargo programs involving certain designated countries (each an "**Embargoed Country**").  If at any time a Beneficiary (and the Beneficiary's members, shareholders, owners, and affiliates if the Beneficiary is an entity) becomes, or is discovered to: (i) be an individual, organization or other entity included on the SDN List or is owned or controlled by, or acting for or on behalf of, an individual, organization, or other entity included on the SDN List; (ii) be a resident or national of any Embargoed Country; (iii) be affiliated with, or gives support to or receives support from, any terrorist, terrorist organization, narcotics trafficker or person engaged in activities related to the proliferation of weapons of mass destruction; (iv) be an individual, organization or other entity with whom other Beneficiaries, Developer, Trustee, Trust Manager, Program Manager, or Developer's, Trustee's, Trust Manager's, or Program Manager's affiliates are prohibited from transacting business; (v) be out of compliance with any applicable anti-money laundering laws, including, without limitation, the USA Patriot Act of 2001, as amended from time to time, and the laws and regulations implemented, enforced, or administered by OFAC, including, without limitation, Executive Order 13224; (vi) have any employee, director, officer, funding source, or other person or entity with a controlling interest in a Beneficiary or any of a Beneficiary's affiliates that is on the SDN List; (vii) be directly or indirectly controlled by the government of any country or person that is subject to an embargo by the United States government that prohibits other Beneficiaries, Developer, Trustee, Trust Manager, Program Manager, or Developer's, Trustee's, Trust Manager's, or Program Manager's affiliates from conducting

11

the business activities contemplated by this Trust Agreement; or (viii) be acting on behalf of an Embargoed Country (collectively, a "**Prohibited Beneficiary**"), Beneficiary shall, immediately and without further action or notice on behalf of Trustee or Association, forfeit any use, voting and other rights attached to the Interests owned by the Prohibited Beneficiary until such Prohibited Beneficiary is no longer a Prohibited Beneficiary.  During such time that a Beneficiary is a Prohibited Beneficiary or Prohibited Transferee (as defined below), the use, voting and other rights attached to the Interests owned by the Prohibited Beneficiary shall be held by the Association.  Upon the occurrence of such an event, Beneficiary shall waive any claims it may have against Developer, Trustee, Trust Manager, and Association, and their parent and sister companies, affiliates, subsidiaries, employees, agents, officers and directors as a result of such forfeiture and will indemnify Developer, Trustee, Trust Manager, and Association and their parent and sister companies, affiliates, subsidiaries, employees, agents, officers and directors for any losses incurred by them arising from Beneficiary's status as a Prohibited Beneficiary. Further, Beneficiary shall not transfer or attempt to transfer Beneficiary's Interests to any individual, organization or other entity which would be considered a Prohibited Beneficiary under the terms of this Trust Agreement (a "**Prohibited Transferee**").  Any such transfer or attempted transfer may subject Beneficiary to fines or other liabilities, and such transaction may be declared null and void.  Beneficiary hereby agrees to indemnify and hold harmless Developer, Trustee, Trust Manager, and Association and their parent and sister companies, affiliates, subsidiaries, and the employees, agents, officers and directors of each from any losses incurred by them arising from Beneficiary's transfer or attempted transfer of Beneficiary's Interests to any Prohibited Transferee.

(b)     Right of First Refusal.  In consideration of the affirmative obligations of and benefits to all Beneficiaries provided by Developer under this Trust Agreement, when any Interest is offered for sale by successors in title to Developer, Developer shall have the exclusive option to purchase such Interest at the price and on the other terms of any bona fide offer made in writing to the Beneficiary at such time and submitted to Developer for verification.  Each Beneficiary shall notify Developer in writing of its intent to sell and provide Developer with a copy of the offer received.  Such notice shall include the full terms and conditions of the sale, and the full name and primary address of the prospective true buyer (as distinguished from agents and intermediaries).  Notice of a Beneficiary's intent to sell shall be sent to Developer at 6649 Westwood Boulevard, Orlando, Florida 32821-6090, or such other department or address as may be designated by Developer from time to time.  Developer shall have thirty (30) days after receipt of such notice to exercise its option to purchase the Interest at the same price and on the same monetary terms and conditions as the verified offer.  If Developer does not notify the Beneficiary of its election to purchase the Interest within such thirty (30) day period, then the Beneficiary may sell the Interest to the subject bona fide offeror subject to this Trust Agreement and to all limitations set forth in this Trust Agreement, at a price not lower than that which was offered to Developer.  In addition, any permitted sale between a Beneficiary and a bona fide third party shall be deemed to contain a provision requiring that any sums due to the Association as Assessments must be paid in full as a condition of closing of the sale.  Should, however, such sale to a third party not be consummated within four (4) months after the date the offer is transmitted to Developer at the price and on terms equal to or less favorable to purchaser than those offered to Developer, the terms and limitations of this Section 4.2(b) shall again be imposed on any sale.  If Developer elects to purchase such Interest, the transaction shall be consummated on the terms offered; provided, however, that Developer shall have a minimum of thirty (30) days from the delivery of notice of Developer's election to exercise Developer's option under this Section 4.2(b) to consummate the transaction.  The provisions of this Section 4.2(b) shall not apply to sales under powers contained in mortgages and similar instruments or to transfers upon the death of a Beneficiary, a divorce decree, a gift or bequest of an Interest from a Beneficiary to his/her spouse, to his/her direct descendants, to the trustee of a trust or other entity established primarily for the benefit of the Beneficiary, his/her spouse or his/her descendants, or to the Beneficiary's legal guardian, but the provisions of this paragraph shall apply to any further assignment (whether voluntarily, by operation of law, at judicial sale, or otherwise) by said Beneficiary's spouse, direct descendants, such trustees, or such guardian to the same extent that such provisions would have applied to said Beneficiary.  Developer's

right of first refusal as set forth herein shall also be binding upon any successor in title to a Beneficiary, the same being a covenant running with the land.  In addition to any available remedies at law or equity, Developer may impose an administrative charge, not to exceed One Dollar ($1.00) U.S. per Point, in connection with the waiver of this right of first refusal.

(c)     <u>Leasing or Rental Restrictions for Periods of Less Than Three Years</u>.  The right of a Beneficiary to lease or rent the Use Period(s) related to the Beneficiary's Interest (or enter into any other agreement relating to use of the Trust Property if not designated as a "lease") for periods of less than three (3) years shall not be subject to the approval of the Association; however, notice of such lease or rental of any Use Period must be delivered to the Association within five (5) days after the Beneficiary's agreement to lease or rent.  Any leasing or rental agreements must set forth or will be deemed to have set forth an acknowledgment and consent on the part of the lessee-sublessee-tenant to use, occupy, and possess such Use Period and the Trust Property in conformance and compliance with the provisions of this Trust Agreement and the other Trust Plan Documents.  In the event a Beneficiary fails to secure a written leasing or rental agreement, the Association shall have the right to require the lessee-sublessee-tenant to execute an acknowledgment to use and occupy the rental or leased Use Period and the Trust Property in conformance with this Trust Agreement and the other Trust Plan Documents.  Nothing in this Trust Agreement shall be deemed to affect: (i) Developer's exclusive right to use the Trust Property for the purposes reserved to Developer set forth in Section 12.2, below; (ii) Developer's (or Developer's designees' or affiliates') exclusive right to utilize Points assigned to Developer's Interests or any other Points that Developer is entitled to use for any purpose, including, without limitation, in their discretion any purpose related to marketing, selling, promoting the Trust Plan, extending rights for purposes of employee, customer or public relations or utilizing Use Periods or Points in manners which will enhance or expand the Trust Plan; (iii) any use by Developer (or its affiliates or designees) of any Trust Property prior to delivery by Developer of a Notice of Use Rights with respect to such Trust Property; or (iv) Developer's, Exchange Company's, Program Manager's, and Trust Manager's (or their affiliates or designees) right to use the Accommodations and Points as permitted in the Bylaws.  The rights reserved to Developer in this paragraph may be assigned by Developer.

(d)     <u>Transfers by Developer</u>.  Notwithstanding anything in this Trust Agreement to the contrary, Developer may sell Interests to purchasers for cash or other terms acceptable to Developer.  Developer may finance, with one or more lenders, the Trust Property, and Developer may deliver to any such lender deeds of trust, mortgages, or other security instruments or liens against such Trust Property; provided, however, that any such deed of trust, mortgage, or other security instruments or lien against the Trust Property shall be made subject to a nondisturbance and notice to creditors instrument, a subordination and notice to creditors instrument, or an alternate assurance in accordance with Section 721.53, *Florida Statutes*.

(e)     <u>Transfers by Beneficiaries Other than Developer</u>.  Other than a conveyance of all of a Beneficiary's Interests, no Beneficiary, other than Developer, shall voluntarily sell, transfer, assign, or hypothecate any number of Interests, the sale, transfer, assignment, or hypothecation of which will result in the Beneficiary or any other Beneficiary owning less than a Base Interest.  This subsection shall not apply to sales or transfers between a Beneficiary and the Developer or the Association.  Upon reacquisition by Developer of Interests from a Beneficiary, Developer may reconvey such Interests (and the Points related thereto) in any increment, subject to subsection 4.2(d) above.  Except as otherwise set forth in this Trust Agreement and the Bylaws, no Base Interest may be subdivided by any Beneficiary other than Developer.

ORLA.094873:0154_1288395.15 1/11/2010 9:21 AM

**Section 4.3**     Rights of Beneficiaries.  Except for the rights reserved to Developer under this Trust Agreement, the rights of each Beneficiary shall consist solely of the following with respect to the Trust Property:

(a)     Use.  The right to use and enjoy the Trust Property (exclusive of Restricted Use Property) pursuant to the Trust Plan Documents and the applicable Exchange Company Documents.

(b)     Receipt of Proceeds.  The right to receive the proceeds and avails from any conveyance, hypothecation, mortgage, assignment, lease, transfer, encumbrance, or other disposition of the Trust Property permitted under this Trust Agreement other than conveyances, hypothecations, mortgages, assignments, leases, transfers, encumbrances, or other dispositions made or executed by Developer pursuant to this Trust Agreement and applicable law.  The proceeds and avails to be received by the Beneficiaries in accordance with this Section 4.3(b) shall be distributed to the Beneficiaries in proportion to the Beneficiaries' respective Interests.  The conveyance of Interests by Developer or any other Beneficiary to any purchasers of such Interests shall not be subject to the provisions of this Section 4.3(b).

(c)     Prohibition on Encumbrances.  Except for: (i) the rights of a Beneficiary to transfer such Beneficiary's Interests to third parties as set forth in Section 4.2 of this Trust Agreement, (ii) the right of a Beneficiary to mortgage such Beneficiary's Interests, and (iii) the rights reserved to Developer under this Trust Agreement to convey, hypothecate, mortgage, assign, lease, or otherwise transfer or encumber the Trust Property, Beneficiaries shall have no authority, express or implied, to convey, hypothecate, mortgage, assign, lease, or otherwise transfer or encumber in any fashion any interest in or portion of the Trust Property.  Any encumbrance of the Trust Property or any portion of or interest in the Trust Property by a Beneficiary in contravention of this Section 4.3(c) shall not be recognized by Developer, the Association, or Trustee and shall be void and of no effect.

## ARTICLE V.  TRUST PROPERTY

**Section 5.1**     Trust Property.  The assets of the Trust shall be the Trust Property held by the Trustee from time to time.  Trust Property may be comprised of various types of Submission Property, including amenities and recreational facilities, condominium units, apartments, cooperative units, single family homes, efficiency cabanas, cottages, attached or free standing townhomes and villas, fee interests, leasehold interests, and units located in multi-unit buildings.  Developer shall determine, in its sole discretion, the Submission Property to be submitted to the Trust as Trust Property, and when additional Submission Property may be submitted, if at all.  Any Assessments held by the Association and any reservation system or other property held or owned by the Association or the Trust Manager shall not be part of the Trust Property.  Title to the Trust Property shall be conveyed to Trustee as trustee of the Trust in accordance with, and the rights of the Parties to this Trust Agreement, including the Beneficiaries, shall be governed, to the extent applicable, by the provisions of Section 689.071, *Florida Statutes* and Chapter 721, as applicable.  Upon the furnishing of a title commitment or title insurance policy for such Trust Property, Trustee agrees to accept any conveyances of the Trust Property and to cause such conveyances to be recorded in the respective jurisdictions in which such Trust Property is located, and to hold title to the Trust Property for the uses and purposes set forth in this Trust Agreement.  All monies required by the Trustee to record such conveyances including all appropriate documentary stamp taxes, transfer taxes, and recording fees, shall be paid by Developer, as the initial Beneficiary.  Except as otherwise permitted by Section 5.3(a) of this Trust Agreement, no Beneficiary may dedicate or cause any other property to be conveyed to Trustee under this Trust Agreement without the prior written consent of Trustee and Developer.

**Section 5.2**     Base Interest; Assignment of Points.

(a)  <u>Base Interest</u>.  Each Interest in the Trust is allocated 250 Points in accordance with Article II, Section 7 of the Bylaws.  Notwithstanding the foregoing, subject to Section 5.4(e), no Beneficiary, other than Developer, may own less than a Base Interest.  The Association Delegee is not required to accept any reservation requests for a Use Period from a Beneficiary who owns less than a Base Interest at any time other than during the Open Reservation Period (as defined in the Reservation Procedures).  In addition, the Association Delegee has the right to require Beneficiaries to utilize the same Use Year for all Interests owned by a Beneficiary, regardless of when such Interests are purchased.  The number of Interests comprising a Base Interest may in the future be modified by Developer in its sole discretion.

(b)  <u>Assignment of Points</u>.  For administrative convenience in the operation of the Trust Plan and to assist in the determination of the respective rights of Beneficiaries to enjoy the benefits of ownership of Interests in the Trust Plan, Developer and the Board established a reservation system that designates Point allocations for the reservation of each Use Period.  Each Use Year, the Association Delegee will credit each Beneficiary in the reservation system with the number of Points reflected by the deed(s) conveying the Beneficiary's Interests to the Beneficiary.  Such Points represent the reservation power of the Beneficiary's Interests in relation to the other Interests in the Trust Plan, as more fully described in the Reservation Procedures.  Any increase or decrease in the number of Points for Use for a designated Use Period pursuant to the Association Delegee's right to adjust the Point Schedule must be offset by a corresponding decrease or increase to other Use Period(s).  THERE IS NO GUARANTEE THAT A BENEFICIARY WILL BE ABLE TO USE ALL OF THE BENEFICIARY'S POINTS EACH YEAR BECAUSE THE ABILITY OF A BENEFICIARY TO USE ALL OF THE BENEFICIARY'S POINTS IN A GIVEN YEAR WILL DEPEND ON: (I) THE USE PERIODS RESERVED BY THE BENEFICIARY; (II) THE USE PERIODS RESERVED BY OTHER BENEFICIARIES; AND (III) THE NUMBER OF POINTS BANKED FOR USE IN THE IMMEDIATELY FOLLOWING USE YEAR. CONSEQUENTLY, A BENEFICIARY MAY HAVE POINTS AT THE END OF A GIVEN USE YEAR WHICH ARE INSUFFICIENT TO RESERVE ANY USE PERIOD AND, THUS, THE BENEFICIARY WILL NOT BE ABLE TO USE SUCH POINTS, AND WILL NOT BE PERMITTED TO CARRY OVER THE UNUSED, UNBANKED POINTS TO THE NEXT USE YEAR.  A Beneficiary's ability to reserve a Use Period in a particular Accommodation or Component will depend on, among other factors, the number of Points required to reserve the various Accommodations that have been committed to the Trust Plan and the number of Points available to the Beneficiary at the time of the reservation request.  Additionally, the ability of a Beneficiary to reserve a Use Period at a particular Component may be severely limited due to the limited number of Accommodations that may be committed to the Trust Plan at that Component. DEVELOPER RESERVES THE RIGHT, TO ITSELF AND ASSOCIATION DELEGEE, TO REASONABLY REVISE THE POINTS FOR USE ASSIGNMENTS FROM TIME TO TIME WITHOUT BENEFICIARY CONSENT IN THE BEST INTERESTS OF THE BENEFICIARIES AS A WHOLE; PROVIDED THAT, THE TOTAL NUMBER OF POINTS FOR USE THAT ARE REQUIRED TO RESERVE ALL USE PERIODS IN THE TRUST PLAN WILL EQUAL OR EXCEED THE TOTAL NUMBER OF POINTS FOR SALE ASSIGNED TO ALL OF THE BENEFICIARIES.

Developer shall have the exclusive right to create Interests.  When additional property is submitted to the Trust, the number of Points for Sale in the Trust Property shall increase and equal the sum of (a) the number of Points for Sale in existence immediately prior to such time plus (b) the number of Points for Sale being added at such time (which shall be identified in the conveyance instrument to the Trustee).  AS ADDITIONAL PROPERTY IS SUBMITTED TO THE TRUST, EACH BENEFICIARY'S UNDIVIDED INTEREST IN THE TRUST WILL BE RECALIBRATED BASED UPON THE FORMULA SET FORTH IN THE BYLAWS.  For example, assuming that the Trust Property for which a Notice of Use Rights has been delivered consists of property that is valued at 20,000 Points for Sale by Developer, then a Beneficiary owning a Base Interest (in this case, 6 Interests or 1,500 Points), will have a seven and one-half percent (7.5%) interest in the Trust (1,500/20,000).  If Developer subsequently delivers to the Association a Notice of Use Rights for property with a value of 10,000 Points for Sale, then the total Points for Sale of

15

the Trust Property will be 30,000 Points and the Beneficiary's Base Interest will have a five percent (5%) interest in the Trust (1,500/30,000). The total Points for Sale allocated to the Trust Property will not change unless more property is submitted to the Trust and a Notice of Use Rights with respect to such property is delivered by Developer to the Association and Trustee, or property is withdrawn from the Trust, and then, the only change will be to increase or decrease, as applicable, the total number of Points for Sale of the Trust Property by the number of Points for Sale directly attributable to such submitted or withdrawn property. Notwithstanding the inability to alter the total number of Points for Sale assigned to the entirety of the Trust Property, the Association is obligated, pursuant to Section 9.7 of this Trust Agreement, to, from time to time, evaluate the use and demand patterns of each Accommodation, and, based on such evaluation, reallocate the number Points for Use required to reserve an Accommodation for a particular Use Period. Any such reallocation will cause a corresponding change to the number of Points for Use required to reserve other Accommodations during the calendar year. As additional property is submitted to the Trust and a Notice of Use Rights is delivered, the number of Points for Use will increase at least as much as the corresponding increase in the number of Points for Sale.

**Section 5.3**     Additions and Substitutions of Trust Property.

(a)     Additions. Developer may, from time to time, in its sole and absolute discretion, cause additional Submission Property to be transferred into the Trust or otherwise made available to the Beneficiaries and the Trust without the consent of the Beneficiaries, the Association, or the Trustee; provided, however, that Developer is under no obligation to convey any such additional Submission Property to the Trust, and the availability of such property for usage shall be determined by Developer, in Developer's sole discretion, in accordance with this Trust Agreement. Prior to the transfer of additional property to the Trust pursuant to this Section 5.3(a), any lien or other encumbrance against such property shall be made subject to a nondisturbance and notice to creditors instrument, a subordination and notice to creditors instrument, or an alternate assurance in accordance with Section 721.53, *Florida Statutes*. Trustee agrees to accept the deed to any additional Submission Property conveyed to Trustee as trustee of the Trust and to cause said deed to be recorded in the public records of the jurisdiction in which such property is located. All monies required by the Trustee to record said deed or other documents including, but not limited to, all appropriate documentary stamp taxes, transfer taxes, and recording fees, shall be paid by Developer. Any additional Submission Property conveyed to the Trust shall be held by Trustee for the uses and purposes set forth in this Trust Agreement.

The impact, if any, which the addition of property to the Trust and the delivery of a Notice of Use Rights to the Association and Trustee with respect to such property would have upon the Trust Plan would be to increase the number of Use Periods that will be available for use by the Beneficiaries and such addition may result in the addition of new Beneficiaries who will compete with any Beneficiaries existing at the time of such addition in making reservations for the use and occupancy of the Trust Property. Additional property shall be conveyed to the Trust in accordance with Section 5.1 above.

At the time of conveyance of additional Submission Property to the Trust pursuant to this Section 5.3(a), the deed for such Submission Property being conveyed to the Trust shall include the information required by Section 3.4 and this Trust Agreement shall be deemed amended. Upon such event and at all times thereafter, the Trust Plan Documents shall govern the ownership, use, and transfer of such additional Submission Property as a part of the Trust Property. Upon the conveyance of additional Submission Property to the Trust, any Interests associated with such additional Submission Property shall be owned by Developer and may be transferred by Developer in any manner permitted by this Trust Agreement. It is hereby expressly provided that all Interests created by the addition of Submission Property to the Trust by Developer shall immediately and automatically vest exclusively in Developer for Developer's own use and occupancy until such time as such Interests are conveyed to third

16

party purchasers, and such property is made available for use by Developer in accordance with the terms of this Trust Agreement.

(b) <u>Substitutions</u>. Substitution of Trust Property is not currently permitted by applicable law. However, if substitution of other property is allowed by law or applicable law is amended subsequent to the Effective Date to permit the substitution of other property for the then existing Trust Property, Developer may, from time to time, in its sole and absolute discretion, perform such substitution subject to the following (unless applicable law is subsequently amended to permit more flexible standards and procedures for the substitution of Trust Property, in which case such applicable law will govern at the option of Developer and Developer may unilaterally amend this Trust Agreement to provide for such standards and procedures):

(i) Upon Developer's determination to substitute Trust Property, the determination of which other property shall be substituted for then existing Trust Property shall be based on all relevant factors including the size, capacity, furnishings, maintenance, location (geographic, topographic, and scenic), demand, availability for Beneficiary use, and recreational capabilities of the existing Trust Property and the proposed substitution property.

(ii) Any property substituted for existing Trust Property must provide the Beneficiaries with an opportunity to enjoy a substantially similar vacation experience as was available with the existing Trust Property.

(iii) The substitution of Trust Property under this Trust Agreement may be performed without the consent of the Beneficiaries or the Association. Trustee shall join and consent to any substitution; provided, however, that a title commitment or title insurance policy shall be provided to Trustee for any property submitted to the Trust in connection with any substitution. In addition, Developer will deliver to Trustee a certificate stating that the substitution is permitted by applicable law and this Trust Agreement.

(iv) Developer shall provide notice in writing to all Beneficiaries of Developer's intention to delete any Trust Property and to substitute it with another Trust Property pursuant to this Section 5.3(b) and as required by Florida law.

(v) Substitutions of Trust Property may be made only as long as a "one-to-one use right to use night requirement ratio," as defined by Chapter 721, is maintained at all times.

In the event Developer elects to substitute other property for the then existing Trust Property pursuant to this Section 5.3(b), Developer shall notify Trustee of its intent to substitute the Trust Property. After notice of Developer's intent to substitute the Trust Property has been delivered to Trustee, Developer may convey the property to be substituted for the then existing Trust Property to Trustee in accordance with Section 5.1 of this Trust Agreement. No later than five business (5) days after Developer's conveyance of the substitution property to Trustee, Trustee shall convey title of the then existing Trust Property being removed from the Trust as directed by Developer.

(c) <u>Impact of Additions and Substitutions on Budget</u>. In the event Developer makes an addition or substitution of Trust Property pursuant to this Trust Agreement, Developer will be permitted, without a vote of the Board or the Beneficiaries, to revise the Association's budget for such year to address such addition or substitution. The addition or substitution of Trust Property may result in increased expenses to the Beneficiaries as a result of such addition or substitution.

17

**Section 5.4**     <u>Withdrawals of Trust Property</u>.  Trustee, at the direction of the Board, and subject to the requirements of the Bylaws, may from time to time withdraw Trust Property, or an interest therein, from the Trust under any of the following circumstances:

(a)     <u>Trust Property Subject to a Component Declaration</u>.  With respect to Trust Property that has been subjected to a Component Declaration or a similar governing document(s) that contemplates the damage of the Trust Property by casualty or the condemnation of the Trust Property, as applicable, such Trust Property may be withdrawn from the Trust if:

(i)     The Trust Property has been damaged by casualty and, pursuant to the applicable Component Declaration, the Trust Property will not be repaired, replaced, or reconstructed.  In any vote of an owners' association or other governing body taken to determine whether the Trust Property will be repaired, replaced, or reconstructed pursuant to the applicable Component Declaration, Trustee must vote to repair, replace, or reconstruct the Trust Property unless otherwise directed by the Board;

(ii)     The Trust Property has been taken by condemnation and, pursuant to the applicable Component Declaration, the Trust Property may not be made tenantable;

(iii)     The Trust Property has been deemed by a court of competent jurisdiction or regulatory or governmental body with jurisdiction over such Trust Property to not be capable of being used for the purposes outlined in the Trust Plan Documents; or

(iv)     The Component or other real property regime of which the Trust Property is a part, or the Component Declaration to which the Trust Property has been subjected, has been terminated in accordance with the terms and conditions of the applicable Component Declaration or other governing document.  In any vote of a Component Association or other governing body taken to determine whether the Component or other real property regime of which the Trust Property is a part, or the Component Declaration to which the Trust Property has been subjected will be terminated, Trustee must vote not to terminate the Component or relevant Component Declaration or other governing document, as applicable, unless otherwise directed by the Board.

(b)     <u>Trust Property Not Subject to a Component Declaration</u>.  With respect to Trust Property that has not been subjected to a Component Declaration or, to the extent that the Trust Property has not been subjected to another condominium declaration or a similar governing document(s) that contemplates the damage of the Trust Property by casualty or the condemnation of the Trust Property, as applicable, such Trust Property may be withdrawn from the Trust by Trustee at the direction of the Beneficiaries, which direction must be approved by a vote of two-thirds (2/3) of those Beneficiaries that are present in person or by proxy at a duly called meeting of the Association, if:

(i)     The Trust Property has been damaged by casualty and, pursuant to the procedure set forth in the Bylaws, the Beneficiaries determine that the Trust Property should not be repaired, replaced, or reconstructed;

(ii)     The Trust Property has been totally taken by condemnation;

(iii)     The Trust Property has been deemed by a court of competent jurisdiction or regulatory or governmental body with jurisdiction over such Trust Property to not be capable of being used for the purposes outlined in the Trust Plan Documents; or

ORLA.094873:0154_1288395.15 1/11/2010 9:21 AM

(iv)     The Trust Property has been partially taken by condemnation and pursuant to the process set forth in the Bylaws, the Beneficiaries determine that the Trust Property may not be made tenantable.

(c)     <u>Permitted Withdrawals</u>.   In addition to the withdrawals of Trust Property pursuant to Section 5.4(a) and (b) above, the Trustee may withdraw Trust Property, or an interest therein, from the Trust pursuant to the order of any court of competent jurisdiction or as may be required by any governmental authority having jurisdiction over the Trust Property or Trust Plan.

(d)     <u>Replacement of Withdrawn Trust Property</u>.   Pursuant to the Bylaws, in the event Trust Property is withdrawn from the Trust pursuant to Sections 5.4(a) or (b) above, the Board, subject to the provisions of Article XIII of the Bylaws, may direct Trustee to apply the proceeds of any insurance claim or condemnation award, and the Board may impose a special assessment on the Beneficiaries to the extent such funds are insufficient, to replace the Trust Property such that the use rights available in connection with the Trust Property after replacement will equal or exceed the use rights among all Beneficiaries in the Trust Plan.

(e)     <u>Reduction of Interests or Use Rights</u>.   In the event that a portion, but not all, of the Trust Property has been withdrawn from the Trust and the Trust Property has not been replaced pursuant to Section 5.4(d) above and no substitution property has been conveyed to the Trust pursuant to Section 5.3(b) of this Trust Agreement, Trustee, at the direction of the Board, shall reduce the number of Interests in the Trust or the use rights attributable to each Interest in the Trust.   The reduction in the number of Interests or the use rights attributable to the Interests shall be in an amount sufficient to ensure that the use rights available in connection with the remaining Trust Property will equal or exceed the use rights remaining among all Beneficiaries after such reduction.   The Board, in its reasonable discretion, may determine to reduce the number of Interests or the use rights available with respect to the remaining Trust Property as set forth in paragraphs (i) or (ii) below.   The requirement of Beneficiaries to own at least a Base Interest, as set forth in the Trust Plan Documents shall not be applicable to any Beneficiary whose number of Interests or use rights are reduced pursuant to this Section 5.4(e).

(i)     In the event Trust Property is withdrawn pursuant to this Section 5.4 such that the use rights remaining among all Beneficiaries after such deletion exceeds the use rights available in connection with the remaining Trust Property, the Board may act to reduce the number of Interests in the Trust in accordance with this paragraph.   Each Beneficiary whose Interest is terminated will receive a share of any proceeds received in connection with any casualty or eminent domain action, in an amount equal to the proportion of the Common Expenses paid by the Beneficiary (as described in Exhibit "A" to the Bylaws) in connection with the Beneficiary's Interest relative to the Common Expenses paid by other Beneficiaries whose Interests are terminated.   Those Beneficiaries whose Interests are removed from the Trust and own no other Interests will not be entitled to reserve or use any Trust Property after such removal.   In order to determine which Interests will be removed from the Trust, the Board will notify all Beneficiaries of the opportunity to have such Beneficiaries' Interests removed from the Trust not less than thirty (30) days prior to such removal.   The determination of which Interests will be removed from the Trust will be determined on a first-come, first-served basis.   If there is an insufficient number of Beneficiaries desiring to have such Beneficiaries' Interests terminated, the Board, in its sole determination, will establish a random selection system to terminate the necessary number of Interests from the Trust.

(ii)     In the event Trust Property is withdrawn pursuant to this Section 5.4 such that the use rights remaining among all Beneficiaries after such deletion exceeds the use rights available in connection with the remaining Trust Property, the Board may reduce the use rights attributable to all or some of the Interests in the Trust.   Each Beneficiary whose use rights are affected by such reduction will pay reduced Common Expenses in accordance with this paragraph and will receive a

19

share of any proceeds received in connection with any casualty or eminent domain action, in an amount to be determined as provided in this paragraph.  The Common Expenses paid by each Beneficiary whose use rights are reduced shall be reduced by the same proportion as the reduction in the Beneficiary's use rights.  For example, a Beneficiary whose use rights are reduced by twenty-five percent (25%) will pay seventy-five percent (75%) of the Common Expenses that the Beneficiary would have paid had the Beneficiary's use rights not been reduced.  The proportion of any proceeds of a casualty or eminent domain action received by a Beneficiary relative to the total amount of the proceeds received by all Beneficiaries in connection with the casualty or eminent domain action shall be equal to the proportion of the reduction in Common Expenses paid by the Beneficiary relative to the total reduction in Common Expenses paid by all Beneficiaries whose use rights are reduced.  For example, if a Beneficiary has a $100 reduction in the amount of Common Expenses payable by the Beneficiary and all Beneficiaries whose use rights are reduced have a total reduction of Common Expenses equal to $10,000, the Beneficiary will be awarded one one-hundredth (.01) of the proceeds of the casualty or eminent domain action.  The Board shall not be required to reduce the use rights attributable to all Interests in equal proportions.  In order to determine which Interests will have such Interests' use rights reduced, the Board will notify all Beneficiaries of the opportunity to have the use rights attributable to a Beneficiary's Interest reduced not less than thirty (30) days prior to such reduction.  The determination of which Interests shall have such Interests' use rights reduced will be determined on a first-come, first-served basis.  If there is an insufficient number of Beneficiaries desiring to have their use rights reduced, the Board, in its sole determination, will establish a random selection system to reduce the use rights of the Interests in the Trust.  The Board may modify or create additional classes of Interests in accordance with the Bylaws to contemplate the reduced use rights attributable to some or all Interests as the Board may desire.

(f)     Restricted Use Property.  The provisions of this Section 5.4 shall not be applicable to any Restricted Use Property.

**Section 5.5**     Removal of Trust Property Prior to Delivery of Notice of Use Rights.  In accordance with Section 3.3 above, Trustee shall, within five business (5) days following receipt of written notice from Developer, convey to Developer or its designee any Restricted Use Property for which a Notice of Use Rights had not been previously delivered by Developer to Trustee.  Trustee and Beneficiaries acknowledge and agree that the removal of such Restricted Use Property shall not be deemed to be a breach of Trustee' fiduciary duty to the Beneficiaries or to affect the rights or obligations of any Beneficiaries as set forth in this Trust Agreement with respect to Trust Property for which a Notice of Use Rights had been previously delivered by Developer to Trustee.  Trustee acknowledges and agrees that the only compensation that will be paid for actions taken by the Trustee pursuant to this Section 5.5 shall be the administrative and processing costs incurred by Trustee upon the conveyance of the Restricted Use Property to Developer.

**Section 5.6**     Occupancy Assignments.  From time to time, Developer may own condominium units or other Accommodations that have not been committed to the Trust Plan ("**Other Accommodations**").  In order to provide Beneficiaries with the greatest possible flexibility in making reservations, upon check-in, Beneficiaries may be assigned to occupy Other Accommodations as long as the Other Accommodations are located within the same Component as the Accommodations originally reserved; provided, however, the total number of Accommodations available to be reserved by Beneficiaries for any given day shall not exceed the total number of Accommodations committed to the Trust Plan and for which a Notice of Use Rights has been delivered.  Developer may also permit the renters or other occupants of the Other Accommodations to be assigned to occupy the Trust Property; provided, however, the total number of Accommodations available to be reserved by such renters or other occupants shall not exceed the total number of Other Accommodations.  Except as otherwise permitted by Article XIII of the Bylaws, a one-to-one use right to use night requirement ratio shall be maintained with respect to the Trust Property.

## ARTICLE VI.  ARTICLE VI.  TERM; TERMINATION OF THE TRUST

**Section 6.1**      Term.  The term of the Trust shall be perpetual unless sooner terminated in accordance with the provisions of this Trust Agreement.

**Section 6.2**      Termination of the Trust by Developer.   At such time as there are no Beneficiaries (other than Developer) that have a right to occupy any portion of the Trust Property pursuant to the Trust Plan Documents, Developer may, but is not obligated to, in Developer's sole discretion, revoke the Trust and terminate the Trust Plan.

**Section 6.3**      Termination of the Trust by Beneficiaries.  The Trust and this Trust Agreement shall automatically terminate at such time as the Board directs Trustee to sell or otherwise transfer legal and equitable title to all of the Trust Property and any and all interest therein to a third party as set forth below, and all of the funds and other proceeds resulting from such transfer have been distributed to the Beneficiaries in proportion to the allocation of Common Expenses as set forth in Exhibit "A" to the Bylaws.  The Board is required to direct the Trustee to terminate the Trust and this Trust Agreement if: (i) during such time that the Developer has the right to appoint a majority of the Board, a majority of the Board and at least forty percent (40%) of the total voting interests of the Association, vote to terminate the Trust and this Trust Agreement; or (ii) at any time, at least ninety-five percent (95%) of the total voting interests of the Association vote to terminate the Trust and this Trust Agreement.

## ARTICLE VII.  POWERS, DUTIES AND OBLIGATIONS OF TRUSTEE

**Section 7.1**      Fiduciary Duty.  Trustee shall act as a fiduciary to the Beneficiaries.  Trustee shall have no rights, authority, or obligations, other than as specifically set forth in this Trust Agreement or pursuant to applicable law.

**Section 7.2**      Duties of Trustee.  In addition to the other duties and obligations specifically set forth in this Trust Agreement, the duties of Trustee with respect to the Trust, the Beneficiaries, and the Trust Property are as follows:

(a)      Holding Title.   To hold legal and equitable title to the Trust Property in accordance with this Trust Agreement.  In the event that any property is submitted to the Trust, such property shall be subject in all respects to the provisions of this Trust Agreement.  Trustee shall have no legal or equitable rights with respect to any Trust Property except as expressly set forth in this Trust Agreement nor shall Trustee have any right to any income or profit derived from the sale, transfer, or other conveyance of any Trust Property.  Trustee may not accept, without the express prior written consent of Developer, any property to become Trust Property from any person or entity other than Developer.

(b)      Conveyance of Trust Property.   Upon termination of the Trust or upon the direction of the Board pursuant to the Bylaws, to convey, mortgage, hypothecate, assign, lease, or otherwise transfer or encumber the Trust Property.  Trustee shall execute any and all documents and instruments which shall be necessary to fully carry out such direction to convey the Trust Property.  Trustee expressly acknowledges that, other than as set forth in the Bylaws, Article V of this Trust Agreement and this Section 7.2(b), Trustee shall have no authority, express or implied, to convey, hypothecate, mortgage, assign, lease, or otherwise transfer or encumber in any fashion any interest in or portion of the Trust Property.

(c)      Notification of Division.   To notify the Division in writing no later than ten (10) days after receiving notice of the filing of a petition for a court order to approve of a conveyance, hypothecation, mortgage, assignment, lease, or other transfer or encumbrance of the Trust Property.

(d)     <u>Voting</u>.  To vote on behalf of the Trust as the owner of legal and equitable title the Trust Property at any meeting or other proceeding of any owners' association or similar organization (excluding the Association) governing the Trust Property as directed by the President of the Association pursuant to a vote of the Board.

(e)     <u>Maintenance of Books and Records</u>.  To maintain the Registry, which shall include at a minimum, the names, addresses, and telephone numbers of all Beneficiaries and to maintain all other books and records of the Trust as may be required by the Association, from time to time. Notwithstanding anything in this Trust Agreement to the contrary, neither Trustee nor Trust Manager shall disclose the name, address, telephone number, or electronic mail address of any Beneficiary to any other Beneficiary or authorized agent thereof without the prior written approval of the Beneficiary whose name, address, telephone number, or electronic mail address is requested.

(f)     <u>Forward Records</u>.  Upon request by the Division, the Trustee shall be required to promptly furnish a copy of the Registry maintained by Trustee and a copy of any other books and records of the Trust Plan required to be maintained pursuant to Section 721.13, *Florida Statutes* that are in the possession, custody, or control of the Trustee.

(g)     <u>Execution of Documents</u>.  Trustee shall execute any and all documents required by any private, governmental, or quasi-governmental agency, or as otherwise reasonably requested by Developer for the purpose of permitting Developer to develop, construct improvements on, and furnish and equip the Trust Property, including any power of attorney, assignment of rights, permits, applications, easements, or other similar documents in accordance with Section 3.3(b) of this Trust Agreement.

(h)     <u>Payment of Taxes</u>.   Trustee shall receive and hold copies of proof that Association has paid or caused to be paid all applicable taxes with respect to the Trust Property.

(i)     <u>Payment of Insurance</u>.   Trustee shall receive and hold copies of proof that Association has paid or caused to be paid all applicable insurance premiums with respect to the Trust Property.

**Section 7.3**     <u>Delegation of Authority and Obligations</u>.  Subject to the prior written approval of the Board and any Trust Manager, Trustee may delegate to a third party any of Trustee's authority and obligations under this Trust Agreement that a prudent trustee of comparable skill could properly delegate under the circumstances existing at the time of such delegation.   In delegating Trustee's authority and obligations pursuant to this Section 7.3, Trustee must exercise reasonable care, skill, and caution in:

(a)     Selecting a third party to whom Trustee will delegate all or a portion of Trustee's duties and obligations; and

(b)     Establishing the scope and terms of the delegation, consistent with the purpose and terms of the Trust and this Trust Agreement.

(c)     Periodically reviewing the third party's actions in order to monitor the third party's performance and compliance with the terms of the delegation and this Trust Agreement.

No Beneficiary is an agent of the Trustee for any purpose whatsoever nor does any Beneficiary have any authority whatsoever to contract or to execute leases or to do any other act in the name of the Trustee or to obligate the Trustee personally or as Trustee.

22

**Section 7.4**     <u>Trustee Acts Only on Written Authorization</u>.  Except as otherwise set forth in this Trust Agreement, it is agreed by the Parties that Trustee will deal with the Trust Property only when authorized and directed to do so in writing by the Board or Developer, as applicable pursuant to this Trust Agreement.  On the written direction of the Board, Trustee shall execute deeds, mortgages or trust deeds, or leases with respect to the Trust Property, or otherwise deal with the title to the Trust Property.  Trustee shall not be required to inquire into the propriety or genuineness or authenticity of any written direction by the Board and/or Developer or the authority of the person signing said direction and may rely on such written direction therefrom for any action taken or omitted to be taken by it in good faith in reliance thereon.

**Section 7.5**     <u>Trustee Expenses</u>.  Trustee expenses shall be reimbursed as follows:

(a)     Except for Required Payments (as hereinafter defined) Trustee, with the prior approval of the Board (which approval shall not be unreasonably withheld), shall have the right, but not the obligation, to make any advances or incur or pay any expenses on account of this Trust Agreement or the Trust Property ("**Optional Payments**").  If Trustee shall make any Optional Payments, or shall incur any expenses by reason of being a party to any litigation in connection with this Trust Agreement or the Trust Property (except as a result of Trustee's willful misconduct or gross negligence), the Association, on demand by Trustee, shall reimburse Trustee for such expenses, advances or payments made by Trustee, including attorneys' fees and expenses and court costs (at all levels), incurred by Trustee in such matters; provided, however, in no event shall Trustee incur such expenses in an amount to exceed Twenty-Five Thousand Dollars ($25,000.00) in the aggregate without the prior written consent of the Board (which consent shall not be unreasonably withheld).  Trustee shall have the right, but not the obligation, to employ and consult with attorneys regarding this Trust Agreement and the Trust Property, and any and all such costs and expenses incurred by Trustee by virtue of said employment and consultation shall be deemed to be Optional Payments under this Section 7.5 to be paid by the Association on demand.  Except for Required Payments, any other monies expended by Trustee under any other provision of this Trust Agreement shall also be deemed to be an Optional Payment made by Trustee under this Section 7.5.

(b)     With respect to expenses that are reasonably required to be paid by Trustee to comply with the provisions of Sections 736.0809 and 736.0811, *Florida Statutes*, or that Trustee shall be compelled by a court of law, regulatory agency, or other governmental authority having appropriate jurisdiction to pay on account of this Trust Agreement or the Trust Property, whether for breach of contract, injury to person or property, taxes of any kind, fines or penalties under any law, or otherwise, in any manner under this Trust Agreement ("**Required Payments**"), the Association, on demand by Trustee and in Trustee's sole discretion, shall either pay directly to the party due such payments or reimburse Trustee for such Required Payments; provided, however, Trustee must provide the Association with written notice of any such Required Payments not less than five (5) business days prior to payment thereof.  Notwithstanding anything in this Trust Agreement to the contrary, Required Payments shall not include any amounts that are required to be paid by Trustee due to Trustee's willful misconduct or gross negligence.  In the event Developer, Trust Manager, or the Association receives notice of any Required Payment from any party other than Trustee, Developer, Trust Manager, or the Association, as applicable, such party shall notify Trustee of such Required Payment within three (3) business days of receipt of notice thereof.

(c)     Trustee shall have a lien against a Beneficiary's Interest for the proportionate amount of any of Trustee's expenses payable by the Beneficiary, whether directly or by way of Assessment due to the Association; provided, however, that such lien shall not become effective until such time as the Association has assessed such Beneficiary for such amounts, and the Beneficiary becomes delinquent on the payment of such amount pursuant to the Bylaws.  Trustee's lien for unpaid Trustee expenses shall be subject to the same terms, conditions, and limitations, including, but not limited

ORLA.094873:0154_1288395.15 1/11/2010 9:21 AM

to, notice and recording requirements, as imposed on the Association's assessment liens in accordance with the Bylaws.

**Section 7.6**    Resignation or Death of Trustee.  Trustee shall not resign upon less than ninety (90) days' prior written notice to Developer and to any regulator having jurisdiction over such process. No such resignation shall become effective until a successor Trustee is appointed by Developer and approved by all regulators having jurisdiction over such process.  In the event a successor Trustee is not appointed by Developer and approved by all regulators having jurisdiction over such process, Trustee may petition the Circuit Court in and for Orange County, Florida to appoint a successor Trustee.  Upon the appointment of a successor Trustee and upon payment to Trustee of all costs and fees incurred, including all reasonable attorneys' fees and expenses and court costs (at all levels), including reasonable attorneys' fees and costs in any hearing to determine the reasonableness of such fee, due to the court filing for said appointment of the successor Trustee, the substitution of Trustee shall thereupon be complete.

**Section 7.7**    Removal of Trustee.  Trustee may be removed as trustee of the Trust by the Board, and Developer, for so long as Developer is selling Interests in the ordinary course of business, with or without cause, at any time; provided, however, such removal shall be effective only upon the appointment of a successor Trustee by Developer and the Board.  In the event that Developer and the Board cannot agree on a successor Trustee, Developer and the Board shall apply to the Circuit Court in and for Orange County, Florida for the appointment of a successor Trustee.  Subject to the requirement that a successor Trustee be appointed as set forth in this Section 7.7 and Section 7.8, Trustee shall automatically be removed upon any of the following occurrences:

(a)    the application for the appointment of a receiver for Trustee or the filing of a petition under any provisions of the United States Bankruptcy Code or other state or federal insolvency proceeding by or against Trustee or any assignment for the benefit of creditors by or against Trustee;

(b)    if Trustee is an individual, Trustee's death, physical disability, or mental incompetence, and if Trustee is not an individual, the dissolution, termination of existence, merger, or change in control of or in Trustee;

(c)    any acts of gross negligence, willful misconduct, or fraud by Trustee;

(d)    the violation of any federal, state, or local law or regulation by Trustee, which Developer or the Board reasonably determines adversely affects the Trust, the Trust Property, the Beneficiaries, Developer, or the Association, or Trustee's ability to perform its obligations under this Trust Agreement;

(e)    any criminal indictment of Trustee;

(f)    any material breach of this Trust Agreement or Trustee's fiduciary duty under this Trust Agreement;

(g)    the commencement of any investigation of the acts and practices of Trustee by any governmental agency, which Developer and the Board reasonably determine adversely affects the Trust, the Trust Property, the Beneficiaries, Developer, or the Association, or Trustee's ability to perform its obligations under this Trust Agreement.

**Section 7.8**    Successor Trustee.  In the event that a successor Trustee is appointed under Sections 7.6 or 7.7, Developer or Board, as the case may be shall, by written instrument, substitute a successor or successors to any Trustee named in this Trust Agreement or acting under this Trust

24

Agreement.  Such instrument or memorandum thereof, executed, acknowledged and recorded in Orange County, Florida, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall (without conveyance from the preceding Trustee) succeed to all of the title, estate, rights, powers and duties of such preceding Trustee.  Such instrument or memorandum thereof must contain the name of the Developer and original Trustee, the book and page where the original Memorandum of Trust Agreement is recorded and the name and address of the new Trustee.

**Section 7.9**      <u>Insurance by Trustee</u>.  Trustee shall obtain errors and omissions or professional liability insurance coverage in an amount not less than Five Million Dollars ($5,000,000) or such other amount as may be required by Developer or the Trust Manager, and as may otherwise be required by law.  The Trustee shall be included as an additional insured under the Association's commercial general liability insurance against claims for bodily injury, death, and property damage occurring in conjunction with the operation of the Trust Plan.

**Section 7.10**      <u>Protection of Third Parties Dealing with Trustee</u>.  No party dealing with Trustee in relation to the Trust Property in any manner whatsoever, including no party to whom the Trust Property or any portion of or interest in the Trust Property shall be conveyed, contracted or sold, leased, or mortgaged by Trustee, shall be: (a) obliged to see to the application of any purchase money, rent, or money borrowed or otherwise advanced on the Trust Property; (b) obliged to see that the terms of this Trust Agreement have been complied with; (c) obliged to inquire into the authority, necessity, or expediency of any act of Trustee; or (d) privileged to inquire into any of the terms of this Trust Agreement.

Every deed, mortgage, lease, or other instrument executed by Trustee in relation to the Trust Property shall be conclusive evidence in favor of every person claiming any right, title, or interest under the Trust that: (a) at the time of its delivery, the Trust was in full force and effect; (b) the instrument was executed in accordance with the terms and conditions of this Trust Agreement and all its amendments, if any, and is binding upon all Beneficiaries under it; (c) Trustee was duly authorized and empowered to execute and deliver each such instrument; and (d) if a conveyance has been made to a successor or successors in trust, that the successor or successors have been appointed properly and are vested fully with all the title, estate, rights, powers, duties, and obligations of the successor's or successors' predecessor in trust.

**Section 7.11**      <u>Disclosure of Interests</u>.  If required by applicable law, Trustee shall be required to furnish promptly to any state or federal regulatory agency having jurisdiction, upon prior written request, a copy of the Registry and a copy of any other books and records of the Trust Plan that are in the possession of Trustee.  In the event of service of process on Trustee at any time, Trustee shall not, except as may be required by law, disclose to the other parties to the proceeding the names and addresses of the Beneficiaries.  Trustee shall not otherwise disclose the identity of any Beneficiary, except insofar as such disclosure may be required by law or on order of a court of competent jurisdiction.

**Section 7.12**      <u>Legal Proceedings</u>.  Trustee shall be under no duty to take any action, to pay any money or to incur any expenses in connection with any legal proceeding involving this Trust Agreement or the Trust Property.  If Trustee is served with process or notice of legal proceedings or of any other matters concerning this Trust Agreement or the Trust Property, the sole duty of Trustee shall be to forward such process or notice to the Board as provided in Section 13.2 of this Trust Agreement.  In such case, the Association, as determined by the Board, may defend such action in the name of Trustee with counsel reasonably acceptable to Trustee.

**Section 7.13**      <u>Permissive Acts</u>.      Trustee may, when necessary in Trustee's reasonable discretion, and subject to Section 7.5 of this Trust Agreement, do any of the following:

ORLA.094873:0154_1288395.15 1/11/2010 9:21 AM

(a)  <u>Actions</u>.  Trustee may commence or defend any actions at law or in equity relating to the Trust Property.  If a court action should be instituted in connection with the Trust Property or any part of or interest therein and Trustee is named and served as a party, Trustee shall be reimbursed by the Association for all fees and expenses incurred in connection with such action except to the extent that such action is the result of Trustee's willful misconduct or gross negligence.

(b)  <u>Employment of Others</u>.  Trustee may employ counsel, managers, accountants and such other persons that, in Trustee's reasonable judgment, are deemed necessary or desirable to perform Trustee's duties as Trustee.  Trustee shall not be liable to any Beneficiary, Developer, or the Association, and shall be indemnified, defended, held harmless and reimbursed by the Association for (i) the default, defalcation or wrongdoing of any such person if Trustee exercised due care in the selection of such person; or (ii) any action taken or suffered by Trustee in good faith in reliance upon the instructions or advice of any person so selected. The foregoing indemnification provision shall survive the termination of this Trust Agreement.

(c)  <u>Compliance with Laws</u>.  Trustee may do any and all things as may be necessary to comply with all applicable laws, ordinances and regulations promulgated by any governmental authority having jurisdiction over the Trust, the Trust Plan, the Association, or the Trust Property or any portion of or interest therein.

(d)  <u>Execution of Documents</u>.  Trustee may join with Developer or other necessary parties upon request in executing any necessary amendment or supplement to this Trust Agreement or any underlying Component documents, plats, or similar documents.  Trustee shall not be required to execute any instruments containing personal covenants of warranty.

(e)  <u>Delegation of Use Rights</u>.  In accordance with the terms of this Trust Agreement, Trustee delegates to the Association the right to assign Trustee's right to use all or a portion of the Accommodations or facilities at each Component, which right is granted by virtue of Trustee's ownership of Trust Property at the Component.

## ARTICLE VIII.  TRUSTEE LIABILITY

The personal liability of Trustee shall be governed by Sections 736.08125, 736.08163, 736.1013, and 736.1015, *Florida Statutes*, and Chapter 721.  Except as otherwise required by Sections 736.08125, 736.08163, 736.1013, and 736.1015, *Florida Statutes*, Trustee shall not be required, in dealing with the Trust Property or in otherwise acting under this Trust Agreement: (a) to enter into any individual contract or other individual obligations whatsoever; or (b) to become personally liable to pay or incur the payment of any damages, attorneys' fees, fines, penalties, forfeitures, costs, charges or other sums of money whatsoever.  Except as otherwise required by Sections 736.08125, 736.08163, 736.1013, and 736.1015, *Florida Statutes*, Trustee shall have no individual liability or obligation whatsoever arising from Trustee's ownership of or holding legal and equitable title to the Trust Property (including the payment of any Assessments or other amounts assessed by a Component Association), or with respect to any act done, contract entered into or indebtedness incurred by Trustee in dealing with the Trust Property or in otherwise acting under this Trust Agreement upon the direction of the Board, Developer, or the Beneficiaries, except only so far as the Trust Property and any trust funds in the actual possession of Trustee shall be applicable to the payment and discharge of such liability or obligation.

To the extent permitted by applicable law, the Trustee, Trustee's parents, subsidiaries and affiliates, and the officers, directors, managers, equity holders, employees, agents, and representatives, and all of those claiming by, through or under any of the foregoing, and all of their successors and assigns (collectively, the "**Trustee Indemnified Parties**") shall be indemnified, defended, held harmless and reimbursed by the Association against all claims, demands, liabilities, obligations, loss, cost, and

expense, including attorneys' fees and expenses and court costs (at all levels), reasonably incurred by or imposed upon the Trustee Indemnified Parties in connection with any action, suit or proceeding to which the Trustee Indemnified Parties may be made a party or in which the Trustee Indemnified Parties may become involved regarding any act or omission of the Association or the reconstruction, repair, or replacement of the Trust Property as set forth in the Bylaws or by reason of the Trustee acting as Trustee of the Trust, except as to matters wherein the Trustee shall be finally adjudged in such action, suit or proceeding, to be liable for or guilty of gross negligence or willful misconduct in the performance of the Trustee's duties; provided, that in the event of a settlement, the indemnification herein shall apply only when the Board has approved such settlement and reimbursement as being in the best interests of the Association.   The foregoing indemnification provision shall survive the termination of this Trust Agreement.

## ARTICLE IX.  THE ASSOCIATION

**Section 9.1**   <u>Management and Operation of the Trust Property, Association Property, and the Trust Plan</u>.  Except as otherwise set forth in this Trust Agreement, all powers, obligations, and duties pertaining to the management and operation of the Trust Property, Association Property, and the Trust Plan are hereby vested exclusively in the Association.   Except as otherwise set forth in this Trust Agreement, all powers of direction of the Trustee as described in Section 689.071(8), *Florida Statutes*, shall be vested in the Association and shall be exercised in accordance with this Trust Agreement, the Articles and the Bylaws, as amended from time to time.  The powers of the Association shall include those powers set forth in the Articles and the Bylaws, as amended from time to time, and those powers which a not for profit corporation in the state of Florida may exercise.  The Association may delegate by contract all or a portion of these powers, obligations and duties to the Trust Manager and an Exchange Company, which duties may be further delegated to sub-managers or sub-contractors.  Trust Manager shall be paid a management fee as set forth in any contract entered into between the Association and the Trust Manager.  The Beneficiaries shall be charged by the Association not less than annually, Annual Dues to satisfy the expenses incurred by the Association in managing and operating the Trust Property, Association Property, and the Trust Plan, which expenses include any assessments or fees paid by the Association to any Component Associations.  The procedures for the payment and collection of Assessments by and from each Beneficiary, together with the remedies available to the Association against a Beneficiary who is delinquent in the payment of any Assessment, are set forth in Section 9.8 of this Trust Agreement and the Bylaws.

**Section 9.2**   <u>Membership in the Association</u>.   Membership of each Beneficiary in the Association is appurtenant to the Beneficiary's Interest.   Each Interest will have appurtenant to it votes in the Association in accordance with the Bylaws.   The vote established for each Interest set forth in the Bylaws is an appurtenance to that Interest, and no change or amendment may be made to the number of votes attributable to each Interest as set forth in the Bylaws without the unanimous approval of all of the Beneficiaries.   Where an Interest is owned by more than one Beneficiary, the multiple Beneficiaries owning such Interest must file a voting certificate with the Association, in accordance with the Bylaws, setting forth which Beneficiary is designated to cast the vote for that Interest.

**Section 9.3**   <u>Limitation on Liability of Trust Association</u>.   Notwithstanding the duty of the Association to manage and operate the Trust Plan, the Association is not liable to Beneficiaries, guests, or invitees, for injury or damage caused by any patent or latent condition of the Trust Property or Association Property, any defects in design or workmanship or alterations or improvements made to the Trust Property or Association Property, or caused by the elements, the Association, the Association's maintenance or lack thereof, or other Beneficiaries or persons.

ORLA.094873:0154_1288395.15 1/11/2010 9:21 AM

**Section 9.4**     <u>Restraint on Assignment of Shares and Assets</u>.  Each Beneficiary's share in the funds and assets of the Association cannot and may not be assigned, hypothecated, or transferred in any manner except as an appurtenance to the Beneficiary's Interest.

**Section 9.5**     <u>Acts of the Association</u>.  Unless the approval or action of a certain specific percentage of Beneficiaries or of the Board is specifically required in this Trust Agreement, the Articles, or Bylaws, applicable Rules and Regulations or applicable law, all approvals or actions required or permitted to be given or taken by the Association will be given or taken by a majority of the Board present and voting at a duly called and constituted meeting at which a quorum is present, without the consent of the Beneficiaries.  The Board may also approve and act through the proper officers of the Association without a specific resolution.  When an approval or action of the Beneficiaries is permitted or required to be given or taken under the Trust Plan Documents or applicable law, unless specifically provided otherwise, all such approvals or actions required or permitted to be given or taken will be given or taken by a majority of the votes present and voting at a duly called and constituted meeting of the Association at which a quorum is present, including any votes attributable to Interests owned by Developer unless prohibited or restricted by law or by the Trust Plan Documents.

**Section 9.6**     <u>Effect on Developer</u>.  Notwithstanding anything in the Trust Plan Documents to the contrary, so long as Developer holds any Interest, none of the following actions may be taken by the Association without the prior approval of Developer:

(a)     <u>Assessment</u>.  Assessment of Developer as a Beneficiary for capital improvements.

(b)     <u>Detrimental Actions</u>.  Any action that would be detrimental to the sales of Interests by Developer as determined by Developer in its sole discretion; provided, however, that an increase in Annual Dues without discrimination against Developer will not be deemed to be detrimental to the sales of Interests.

(c)     <u>Other Acts</u>.  Any other action by the Association for which the Trust Plan Documents require the prior written approval of Developer.

**Section 9.7**     <u>Initial Reservation Procedures</u>.  The Reservation Procedures governing the reservation and use of the Trust Property by Beneficiaries shall be created by the Board and Developer and may be unilaterally amended from time to time by the Association Delegee without the consent of any of the Beneficiaries to further the use and enjoyment of the Trust Plan and the Trust Property by Beneficiaries as a whole or if required to do so by any regulator having jurisdiction over the Trust Plan or the Trust Property.  In establishing and amending the Reservation Procedures or the applicable Point Schedules, the Association Delegee will take into account the location and anticipated relative use demand of each Component and each Accommodation.  The Association Delegee will use its best efforts, in good faith and based upon all reasonably available evidence under the circumstances, to further the best interests of the Beneficiaries as a whole with respect to the Beneficiaries' opportunity to use and enjoy the Accommodations and facilities comprising the Trust Property.  The Reservation Procedures or the applicable Point Schedules may also be amended from time to time by the Association Delegee in order to respond to actual Beneficiary use patterns and changes in Beneficiary use demand for the Accommodations and facilities comprising the Trust Property, including the reallocation of Points for Use as to particular Use Periods.

**Section 9.8**     <u>Assessments</u>.

(a)     <u>Assessments</u>. The mailing and collection of Assessments (or "maintenance fees" as such term is often utilized instead of the term "Assessments" in the context of the Accommodations and Component Ownership Interests constituting the Trust Property) against each Beneficiary for

Common Expenses and the costs or expenses for which an individual Beneficiary may be solely responsible pursuant to the terms of the Trust Plan Documents and against Developer for Restricted Use Property Expenses shall be pursuant to the Bylaws (and the estimated operating budget(s) adopted thereto). All delinquent Assessments or other amounts due to the Association shall bear interest and be subject to late fees as set forth in the Trust Plan Documents. All Assessment payments received shall be applied first to the Assessment payments due, then to interest, then to late fees, then to costs, and then to reasonable attorneys' fees incurred in collection. Further, all Assessment payments received from a Beneficiary shall be applied to the Beneficiary's Interests on a prorated basis. The pro rata amount that will be applied to each Interest shall be determined by the Board and the Board reserves the right to revise the method of proration from time to time and apply Assessment payments in any manner permitted by applicable law. The Association shall have a lien against each Interest for any unpaid Assessments on that Interest and for any interest accruing thereon, which lien may be foreclosed on in accordance with the Bylaws. The Board may also assess fines for violations of the Trust Plan Documents and other applicable laws, rules, and regulations as set forth in the Bylaws.

(b) <u>Remedies</u>. In addition to all other remedies available to the Association resulting from a Beneficiary's delinquency in any payments owed to the Association, the Association shall have the right to deny the use of the Trust Property or Association Property, deny the right to make a reservation, and the right to cancel a confirmed reservation as more specifically set forth in the Bylaws and Reservation Procedures.

## ARTICLE X. PROHIBITION AGAINST RECORDING

**Section 10.1** <u>No Recording</u>. This Trust Agreement shall not be placed on record in any county or other jurisdiction in which the Trust Property is situated, or elsewhere, but if it is so recorded, that recording shall not be considered as notice of the rights of any person under this Trust Agreement derogatory to the title or powers of Trustee as set forth in this Trust Agreement; provided, however, that registration of the Trust with governmental entities by Developer for the purpose of approval to offer the Trust Plan for sale does not constitute recordation of this Trust Agreement.

**Section 10.2** <u>Memorandum of Trust Agreement</u>. For purposes of providing notice of this Trust Agreement, Developer shall record a Memorandum of Trust Agreement in the Public Records of Orange County, Florida, which Memorandum of Trust Agreement shall provide, among other things, that:

(a) Trustee, as trustee of the Trust, holds all legal and equitable title to the Trust Property;

(b) Upon conveyance of property to Trustee by Developer (or at Developer's direction), all Interests in the Trust created by the submission of the property by Developer shall immediately and automatically vest in Developer pursuant to this Trust Agreement and the Memorandum of Trust Agreement;

(c) Interests in the Trust may subsequently be conveyed by Developer or any successor Beneficiary owning such Interest, which ownership shall be evidenced by a deed conveying the Interest to such Beneficiary recorded in the Public Records of Orange County, Florida;

(d) Any lien on an Interest in the Trust shall be perfected only upon the recording of a mortgage or other legally sufficient notice of such lien in the Public Records of Orange County, Florida;

(e)     Any mortgage or other notice of a lien on an Interest shall constitute a lien only upon such Interest and no such instrument or filing shall act as a lien or otherwise encumber Trustee's title to the Trust Property or any other Beneficiary's Interest(s);

(f)     In its discretion, Developer may also substitute the Trustee in accordance with Section 7.8 of this Trust Agreement, which upon compliance with the requirements of Section 7.8, all Trust Property shall vest in the name of the new Trustee without any further conveyance;

(g)     Trustee shall have a lien against each Beneficiary's Interest for the proportionate amount of any of Trustee's expenses payable by such Beneficiary in accordance with and subject to the terms and conditions of this Trust Agreement; and

(h)     In its discretion, Developer may also record a Memorandum of Trust Agreement in the public records (or similar method of legally registering documents for public notice) of the jurisdiction where any particular Trust Property is located.

**Section 10.3**     <u>Locus of Trust</u>. Notwithstanding the provisions of this Trust Agreement requiring Developer to record a Memorandum of Trust Agreement and other documents or instruments in the Public Records of Orange County, Florida, Developer may, from time to time and without the approval of the Trustee, the Association, or any other Beneficiaries, designate a county in Florida other than Orange County ("Substitute County") for purposes of recording a Memorandum of Trust Agreement and other documents or instruments as set forth in this Trust Agreement.   In the event Developer designates a Substitute County pursuant to this Section, all references in this Trust Agreement to Orange County, Florida (excluding Section 13.1 of this Trust Agreement) shall be deemed to be revised to refer to such Substitute County and Developer shall record a Notice of Transfer of Locus of Trust which identifies the Substitute County, in the Public Records of Orange County, Florida.  Developer shall also record in the Substitute County, a Memorandum of Trust Agreement, a document which identifies the Trust Property and lists the official records book and page number of all deeds to Interests that have been recorded in Orange County, Florida, and any other such documents and instruments that Developer deems necessary, in its sole discretion.   In no event shall the designation of a Substitute County pursuant to this Section nullify, void, or otherwise affect the validity or effectiveness of any documents or instruments recorded in Orange County, Florida, including without limitation, any conveyances of property to the Trustee as trustee of the Trust or conveyances of Interests to Beneficiaries, which were recorded prior to the recording of the Notice of Transfer of Locus of Trust in Orange County, Florida, and a Memorandum of Trust Agreement in the Substitute County.

## ARTICLE XI.  AMENDMENTS

**Section 11.1**     <u>By Association</u>. Unless a different vote is required by the specific provisions of this Trust Agreement, until the first election of a majority of directors by Beneficiaries other than Developer, proposal of an amendment and approval thereof shall require the affirmative action of a majority of the entire membership of the Board (which may be by written action in lieu of a meeting), and no meeting of the Beneficiaries nor any approval thereof is required, unless such meeting or approval is required by this Trust Agreement.  After the first election of a majority of directors by Beneficiaries other than Developer, a resolution approving a proposed amendment may be proposed by either the Board or by the Beneficiaries, and after being proposed and approved by one of such bodies, requires the approval of the other body.  Except as otherwise provided in this Trust Agreement, such approvals must be by not less than seventy percent (70%) of the directors and by not less than seventy-five percent (75%) of all of the voting interests of the Association.  Each such amendment of this Trust Agreement shall be evidenced by an instrument in writing, signed and acknowledged by any two (2) officers of the Association, setting forth the full text of such amendment, and certifying that such amendment has been approved by the applicable vote.  No amendment that materially affects the rights and privileges of Developer, as

ORLA.094873:0154_1288395.15 1/11/2010 9:21 AM

determined by Developer in its sole discretion, shall become effective unless and until approved, in writing, by Developer for so long as Developer owns an Interest or any interest in the Trust Property. Furthermore, the Beneficiaries shall have no power to enact any amendment to this Trust Agreement that materially and adversely affects the rights of any Mortgagee of record, without first obtaining the written consent of such affected Mortgagee of record.

**Section 11.2**   <u>By Developer</u>.   Developer reserves the right to unilaterally amend this Trust Agreement as it may deem appropriate in its sole discretion; as may be required by any lending institution, title insurance company, or public body; as may be necessary to conform this Trust Agreement to the requirements of law; to add, substitute, or withdraw property to or from the Trust in accordance with Article V of this Trust Agreement, as permitted by applicable law; to facilitate the operation and management of the Trust Plan; to facilitate the sale of Interests; or as may be necessary, in Developer's sole discretion, to engage the services of Trustee or any successor trustee; provided, however, that no amendment of this Trust Agreement permitted to be unilaterally made by Developer shall be in contravention of the provisions of Section 721.08(2)(c)4, *Florida Statutes*, or its successor.

**Section 11.3**   <u>Effect on Trustee</u>.   Notwithstanding anything in this Trust Agreement to the contrary, no amendments to this Trust Agreement which amendments shall adversely affect the rights, duties, or obligations of Trustee, as Trustee may determine in Trustee's reasonable discretion, shall be made without Trustee's prior written consent. Without limiting the foregoing, Association shall provide prior notice and a complete executed copy of all amendments to this Trust Agreement or the Articles or Bylaws to the Trustee.

## ARTICLE XII.  RIGHTS RESERVED BY DEVELOPER

The following rights are expressly reserved by or have been granted to Developer in the deed to Trustee and are incorporated therein by this reference:

**Section 12.1**   <u>General Rights of Access</u>.   Developer shall have rights over, across, and under the Trust Property as follows:

(a)   <u>Utilities</u>.   Rights are reserved over, across, and under the Trust Property as may be required for utility services in order to adequately serve the Trust Property, or properties located adjacent to the Trust Property. For purposes of this section, utility services include electric power, natural gas, water, garbage, and sewage disposal, stormwater drainage, telephone service, cable, data transmission, satellite transmission, and all other service and convenience facilities which are or may be provided to properties.

(b)   <u>Traffic</u>.   Rights are reserved for pedestrian traffic over, through, and across sidewalks, paths, walks, halls, lobbies, and other portions of the Trust Property as may be from time to time intended and designated for such purpose and use, for vehicular and pedestrian traffic over, through, and across such portions of the Trust Property as may from time to time be paved and intended for such purposes, and for vehicular parking on such portions of the Trust Property as may from time to time be paved, intended, and designated for such purposes, and such rights shall be for the use and benefit of the Beneficiaries, Developer, the owners of interests in properties located adjacent to the Trust Property which are designated by Developer, those claiming by, through, or under the aforesaid, and the aforesaid's guests, licensees, and invitees; provided, however, that nothing in this Trust Agreement shall be construed to give or create in any person the right to park any vehicle on any portion of the Trust Property except to the extent that space may be specifically designated and assigned for parking purposes as designated by the Board. In addition, further rights shall exist for ingress and egress over such streets, walks, and other rights of way within the Trust Property, if any, as shall be necessary to provide for reasonable access to the public ways.

**Section 12.2**    Developer Rights.  Developer reserves the following exclusive rights (except as specifically designated as non-exclusive) and rights to grant easements:

(a)    Marketing and Sales. Developer reserves exclusive rights upon, over and across the Trust Property for the purpose of customer relations, public relations, and marketing and sales of Interests and interests in any property subject to a Component Declaration, vacation ownership interests at other resort condominiums or club resorts, or such other vacation ownership or multisite vacation ownership or membership plans developed or marketed by Developer or its affiliates from time to time.

(b)    Governmental Requirements. Developer reserves the right to grant such easements, from time to time, as may be required by any government agency. The easements shall specifically include any environmental easements required by any state or federal environmental agencies for so long as Developer owns an Interest or any interest in any Trust Property.

(c)    Other Developer Rights. Developer reserves to itself specific rights, and the right to assign all or part of such rights, over and across the Trust Property as it may deem necessary for its use from time to time.  Developer does hereby further reserve the right to delete, relocate, realign, reserve, grant, and receive any and all easements and rights of way over, under, and on the Trust Property deemed necessary or desirable in Developer's sole discretion, including easements and/or rights of way for utilities, retention ponds, sanitary and storm sewers, cable television, cellular telephone towers, any other type of antenna towers or dishes or comparable equipment, refuse disposal, driveways, parking areas and roadways, provided that such easements and/or rights of way shall not be located on or within any existing structure of the Trust Property with the exception of any roof areas on which may be placed cellular telephone towers or other types of antenna towers, dishes or comparable equipment, and such right shall not be exercised as to unreasonably disturb, impair or interfere with the normal use and enjoyment of the Trust Property by the Beneficiaries.  Any income generated from Developer's exercise of its right to grant easements over roof areas for cellular telephone towers or other types of antenna tower dishes or comparable equipment shall be for the sole benefit of Developer.

(d)    Rights for Construction.  Developer reserves rights over, under, and across the Trust Property as are necessary, from time to time, for the purpose of constructing improvements on the Trust Property or properties located adjacent to the Trust Property.

In the event any of the foregoing Article is left out of the deed to the Trustee, Developer can request Trustee, and Trustee agrees to grant, the rights set forth in this Article.

## ARTICLE XIII.  MISCELLANEOUS

**Section 13.1**    Governing Law.  This Trust Agreement and the obligations of the Parties shall be construed in accordance with the laws of the State of Florida.  The proper and exclusive venue for any action or proceeding brought by any party shall be in Orange County, Florida.

**Section 13.2**    Notices.  Any notice or affidavit required or permitted to be given under this Trust Agreement or applicable law will be effective only if in writing and if sent by certified or registered U.S. Mail, overnight courier, or delivered personally to the intended recipient at the addresses shown or to such changed address as may be furnished to or known by the sender of such notice or affidavit.  With respect to any Beneficiary (other than Developer), the address shown for that Beneficiary on the books and records of Developer and Trustee, or either of them, shall be the address to which any binding notice under this Trust Agreement may be mailed or otherwise delivered as provided in this Trust Agreement. Each written notice sent to Trustee, Developer or the Association shall be addressed as follows:

If to Trustee:                                    _____
                                                  _____
                                                  _____
                                                  _____

with a copy to:                                   _____
                                                  _____
                                                  _____
                                                  _____

If to Developer:                                  Marriott Ownership Resorts, Inc.
                                                  6649 Westwood Blvd.
                                                  Orlando, Florida 32821
                                                  Attn.:  Office of General Counsel, Law Department

with a copy to:                                   Foley & Lardner LLP
                                                  111 North Orange Avenue
                                                  Suite 1800
                                                  Orlando, Florida 32801
                                                  Attn:  Bill Guthrie, Esq.

If to Association:                                MVC Trust Owners Association, Inc.
                                                  _____
                                                  _____
                                                  _____

with a copy to:                                   _____
                                                  _____
                                                  _____
                                                  _____

**Section 13.3**      "Marriott" Mark or any Mark having the Name "Marriott" in It.  Developer, Marriott International, Inc. and their affiliates are the sole and exclusive owners of all rights, title and interest of every kind and nature, whether by statute or common law, in law or equity, which exist, attach, inhere, or subsist in the Marriott Trademarks and all goodwill associated therewith, where the term "Marriott Trademarks" means the name and mark "Marriott," the "M" logo, the Marriott Vacation Club "Sun and Moon" logo, and all other trademarks, service marks, trade names, symbols, logos, slogans and designs used or registered by Developer, Marriott International, Inc. or any of their affiliates, whether registered or unregistered and whether used alone or in connection with any other words, trademarks, service marks, trade names, symbols, logos, slogans and designs.  By acceptance of a deed to an Interest(s), each owner acknowledges that the Developer and/or its affiliates may be required, without advance notice to owners or the Association, to cease use of the Marriott Marks (in which event all indicia of connection of membership with the Marriott Marks, including all signs or other materials bearing any of the Marriott Marks, may be removed from the Trust Property, as applicable), and in which event Developer may affiliate some or all portions of the Trust Property, with a different resort brand or no brand at all.  By acceptance of a deed to an Interest(s), each purchaser acknowledges and agrees that such a change in the status or nature of any portion of the Trust Property's resort affiliations shall not be subject to the approval of any purchaser, owner, or the Association, and shall not be grounds for any claim against the Developer.  Marriott International, Inc. has important, substantial and legitimate interests in ensuring and safeguarding the Marriott Trademarks and any names that use the Marriott Trademarks.  Accordingly, the owners and the Association shall not use any of the Marriott Trademarks

33

or the foregoing names, or any similar names or logos, for any reasons without the prior written consent of Developer or Marriott International, Inc.

In the event the Association receives written notice from Developer, Marriott International, Inc., or the holder of the license (which notice shall be deemed to be notice to each Beneficiary) that it shall no longer be permitted to use the Marriott Marks to identify the Trust Plan or Trust Property, the Association and each Beneficiary shall immediately take steps to cease all use of the mark(s) identified in the notice to identify the Trust Plan or Trust Property, and shall:

(a)     immediately remove all signs containing the Marriott Marks from the Trust Plan or Trust Property, and from any off-site location to the extent the sign refers to the Trust Plan or Trust Property contemplated by this Trust Agreement or the Bylaws;

(b)     immediately destroy all stationery, descriptive literature or printed or written matter bearing the Marriott Marks;

(c)     immediately cease and desist from using the Marriott Marks (or any other variation thereof) orally or in writing in referring to or describing the Association or the Beneficiaries; and

(d)     take immediate action to effect changes to the documents of the Association reflecting the Marriott Marks to eliminate the use of such mark(s) as soon as possible, but in any event, within three (3) months.

The provisions of this section shall survive the termination of the Trust and may be enforced by Developer, Trust Manager, or Marriott International Inc., and by any remedy at law or equity, including mandatory and/or prohibitory injunctions.  By accepting a deed to an Interest, each Beneficiary acknowledges that in the event of non-performance of any of the above-described restrictions, the Trust Manager's, Developer's, and Marriot International Inc.'s remedies at law shall be deemed inadequate to enforce the terms of this section.

**Section 13.4**     Component and Trust Plan Management Agreements.By acceptance of a deed to an Interest(s), each purchaser acknowledges that the management agreements at each Component and the management agreement between Trust Manager and the Association are subject to termination in accordance with the respective terms and conditions of such agreements or pursuant to applicable state law and may be terminated without the approval of the Beneficiaries or the Association.  Each purchaser acknowledges and agrees that in the event any such management agreement is terminated, the particular Component or the Trust Plan, as applicable, may no longer be branded as a "Marriott" resort or timeshare plan, managed by Trust Manager, Marriott International, Inc., or any affiliate or subsidiary thereof, or be held to the same brand standard typically associated with "Marriott" resorts and timeshare plans.  Each purchaser further acknowledges and agrees that any such removal or loss of the "Marriott" brand, management, or standards shall not be grounds for any claim against Developer, Trust Manager, Association, Marriott International, Inc., or any affiliate or subsidiary thereof.

**Section 13.5**     Successors.  The terms and conditions of this Trust Agreement shall inure to the benefit of and be binding upon any successor Trustee under this Trust Agreement, as well as upon the personal representatives, executors, administrators, heirs, assigns, and all other authorized successors in interest of Developer and the Beneficiaries.  No party other than Developer shall exercise the rights and privileges reserved in this Trust Agreement to Developer unless such party receives and records in the Public Records of Orange County, Florida a written assignment from Developer of all or a portion of such rights and privileges.

**Section 13.6**  <u>Registered Agent for Service of Process</u>.  Trustee shall appoint a registered agent in Florida for service of process.  In the event such a registered agent is not appointed, service of process may be obtained on Trustee pursuant to Section 721.265, *Florida Statutes*.

**Section 13.7**  <u>Headings</u>.  The paragraph headings or designations used throughout this Trust Agreement have been inserted solely for convenience in reference and shall in no way be taken to limit or extend the natural and proper construction or meaning of the language employed within the paragraph.

**Section 13.8**  <u>Interpretation</u>.  Any reference made in this Trust Agreement to any gender shall be deemed to include either masculine or feminine, as appropriate, and any reference to any number shall be deemed to include both singular and plural where the context of the provisions of this Trust Agreement shall permit or require.  The term "include" and similar terms (<u>e.g.</u>, includes, including, included, comprises, comprising, such as, e.g., and for example), when used as part of a phrase including one or more specific items, are used by way of example and not of limitation.

**Section 13.9**  <u>No Third-Party Beneficiary</u>.  This Trust Agreement is solely for the benefit of the Parties and the Beneficiaries and no other person or persons shall have any rights or privileges under this Trust Agreement either as a third-party beneficiary or otherwise.

**Section 13.10**  <u>Enforceability</u>.  If it is determined that any of the provisions of this Trust Agreement or any part thereof, are invalid or unenforceable, the remainder of the provisions of this Trust Agreement shall not thereby be affected and shall be given full effect, without regard to the invalid portions. If any court determines that any of the covenants contained in this Trust Agreement are unenforceable because of the duration or scope of such provision, the duration or scope of such provision, as the case may be, shall be reduced so that such provision becomes enforceable and, in its reduced form, such provision shall then be enforceable and shall be enforced.

**Section 13.11**  <u>Inquiries</u>.  Written inquiries, legal and other notices, tax statements and all other documents and writings received by Trustee and relating to this Trust Agreement or the Trust Property shall be sent and forwarded within a reasonable time, but in no event longer than three (3) business days, after receipt by Trustee to Developer.

**Section 13.12**  <u>Conflicting Claims</u>.  Should Trustee receive conflicting notices or demands regarding any Interest or the transfer or other disposition thereof, Trustee may submit the matter to arbitration, seek an adjudication of the matter by interpleader or otherwise, demand that Developer promptly resolve the controversy by written agreement signed by both parties, or demand that Developer seek a declaratory judgment action or such other resolution as Trustee may demand, and Developer shall promptly do so.  Trustee will be indemnified by the Association for all costs, expenses and reasonable attorneys' fees in connection with such demand, declaratory judgment action, arbitration or interpleader action and will be fully protected by the Association in suspending all or part of its activities under this Trust Agreement with respect to the Interests in question until a final decision, including the expiration for the filing of all appeals to such decision is received.

**Section 13.13**  <u>Tax Treatment</u>.The Beneficiaries acknowledge and agree that the Board will have the sole discretion and authority to make or revoke any tax elections on behalf of the Trust.

WITH RESPECT TO FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF ACQUIRING AN INTEREST AS THEY MAY RELATE TO AN INDIVIDUAL BENEFICIARY, EACH BENEFICIARY SHOULD CONSULT WITH AND RELY ON HER OR HIS OWN PROFESSIONAL TAX ADVISOR.  IN NO EVENT SHOULD THE TRUST, THE DEVELOPER OR ANY OF THEIR RESPECTIVE AFFILIATES, COUNSEL OR ANY OTHER PROFESSIONAL ADVISORS OR COUNSEL ENGAGED BY ANY OF THEM, BE CONSIDERED AS PROVIDING LEGAL OR TAX ADVICE OR OPINIONS OR AS

GUARANTORS OF THE TAX CONSEQUENCES OF OWNERSHIP OF ANY INTEREST ACQUIRED FROM THE DEVELOPER. BENEFICIARIES SHOULD LOOK TO, AND SOLELY RELY ON, THEIR OWN PROFESSIONAL TAX ADVISORS WITH RESPECT TO THE TAX CONSEQUENCES OF OWNERSHIP OF ANY INTEREST ACQUIRED FROM THE DEVELOPER.Consumer Price Index.  Unless otherwise prohibited by law or otherwise statutorily prescribed, any and all dollar limitations set forth in this Trust Agreement shall increase by a factor of the Consumer Price Index for All Urban Consumers, U. S. City Average, All Items ("**CPI-U**"), as published by the Bureau of Labor Statistics of the U.S. Department of Labor over the previous year's CPI-U.  In the event that the CPI-U is no longer published, then the Board shall select a comparable index to utilize.

**Section 13.15**    Counterparts.  This Trust Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same Trust Agreement.  A facsimile copy of this Trust Agreement or any addenda to this Trust Agreement and any signatures thereon shall be considered for all purposes as an original.

**Section 13.16**    Other Plans.  NO VACATION OWNERSHIP PLANS, TIMESHARE PLANS, FRACTIONAL PLANS, EXCHANGE PROGRAMS OR CLUB, OR TRAVEL OR VACATION CLUBS COMPRISED OF A TRUST, CORPORATION, COOPERATIVE, LIMITED LIABILITY COMPANY, PARTNERSHIP, EQUITY PLAN, NON-EQUITY PLAN, OR ANY SUCH OTHER SIMILAR PROGRAMS, STRUCTURES, SCHEMES, DEVICES OR PLANS OF ANY KIND: (A) SHALL BE CREATED, ESTABLISHED, OPERATED OR MAINTAINED WITH RESPECT TO THE TRUST PROPERTY; (B) SHALL ACQUIRE OR  ACCOMMODATE ANY TRUST PROPERTY OR PORTIONS THEREOF; OR (C) SHALL BE PERMITTED TO INCORPORATE A TRUST PROPERTY OR PORTION THEREOF INTO SUCH ENTITY'S PROGRAM, STRUCTURE, SCHEME, DEVICE OR PLAN, EXCEPT BY DEVELOPER, TRUST MANAGER, OR AN AFFILIATE THEREOF, EXCEPT WITH THE PRIOR WRITTEN AUTHORIZATION FROM DEVELOPER, WHICH AUTHORIZATION MAY BE GIVEN OR WITHHELD IN DEVELOPER'S SOLE AND ABSOLUTE DISCRETION, AND WHICH AUTHORIZATION SHALL BE EVIDENCED BY A WRITTEN INSTRUMENT EXECUTED BY DEVELOPER, RECORDED IN THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA, AND CONTAINING A REFERENCE TO THIS TRUST AGREEMENT AND THIS SECTION 13.16; PROVIDED, HOWEVER, THAT ANY TIMESHARE PLANS, FRACTIONAL PLANS, EXCHANGE PROGRAMS OR CLUB, OR TRAVEL OR VACATION CLUBS ENTERED INTO BY DEVELOPER, PROGRAM MANAGER OR AN AFFILIATE THEREOF WITH RESPECT TO THE TRUST PROPERTY OR ANY PORTION THEREOF SHALL BE DEEMED TO COMPLY WITH THIS SECTION 13.16.  BY REFERENCE TO THIS SECTION 13.16, DEVELOPER HEREBY PROVIDES NOTICE THAT DEVELOPER, PROGRAM MANAGER OR AN AFFILIATE THEREOF MAY OPERATE AN EXCHANGE PROGRAM OR CLUB OR TRAVEL, VACATION OR MEMBERSHIP CLUB OR PLAN, THAT CERTAIN PROPERTY OR ACCOMMODATIONS MAY BE SUBMITTED INTO SUCH PLAN OR CLUB, RATHER THAN THE TRUST PLAN, AND/OR THAT THE TRUST PLAN MAY BE AFFILIATED WITH OR INCORPORATED INTO SUCH OTHER PLAN OR CLUB.

**Section 13.17**    Waiver of Jury Trial.  EACH OF THE PARTIES AND BENEFICIARIES HEREBY WAIVES ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS TRUST AGREEMENT.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS AGREEMENT, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.    EACH OF THE PARTIES AND BENEFICIARIES ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO OR ABIDE BY THIS TRUST AGREEMENT, THAT EACH HAS ALREADY RELIED ON THE WAIVER IN ENTERING INTO OR OWNING PROPERTY SUBJECT TO THIS TRUST AGREEMENT AND THAT EACH WILL CONTINUE TO RELY ON THE WAIVER IN THE FUTURE.  EACH OF THE PARTIES

AND BENEFICIARIES FURTHER WARRANTS AND REPRESENTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.  THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS TRUST AGREEMENT, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRUST AGREEMENT OR THE ASSOCIATION DOCUMENTS.  IN THE EVENT OF LITIGATION, THIS TRUST AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

**Section 13.18**    Attorneys' Fees.   If any action at law or in equity (including in appellate, bankruptcy, or probate proceedings) is brought to enforce any provision of this Trust Agreement, the prevailing party will be entitled to recover from the other party, as part of the prevailing party's costs, reasonable attorneys' fees (including paraprofessional fees), the amount of which will be fixed by the court and will be made a part of any judgment or decree rendered, in addition to any damages or other relief awarded by the court.

**Section 13.19**    Force Majeure.   In the event that any party to this Trust Agreement is prevented from fully and timely performing any of its obligations hereunder due to acts of God, strikes and/or lock-outs, other industrial disturbances, acts of the public enemy, laws, rules and regulations of governmental authorities, wars or warlike action (whether actual, impending or expected, and whether de jure or de facto), arrest or other restraint of government (civil or military), blockades, insurrections, acts of terrorists or vandals, riots, epidemics, landslides, sinkholes, lightning, hurricanes, storms, floods, washouts, fire or other casualty, condemnation, earthquake, civil commotion, explosion, breakage or accident to equipment or machinery, any interruption of utilities, confiscation or seizure by any government or public authority, nuclear reaction or radiation, radioactive contamination, accident, repairs or other matter or condition beyond the reasonable control of either party (collectively called "**Force Majeure**") such party shall be relieved of the duty to perform such obligation until such time as the Force Majeure has been alleviated; provided, that upon the removal of the Force Majeure, the obligation prevented from being fulfilled will be automatically reinstated without the necessity of any notice whatsoever.

ORLA.094873:0154_1288395.15 1/11/2010 9:21 AM

**IN WITNESS WHEREOF**, the Parties have executed this Trust Agreement this \_\_\_ day of _____, 200\_\_.

**TRUSTEE:**

_____,
not individually, but solely in capacity as Trustee

By: _____
Name: _____
Its: _____

**DEVELOPER:**

**Marriott Ownership Resorts, Inc.,** a Delaware corporation

By: _____
Name: _____
Its: _____

**ASSOCIATION:**

**MVC Trust Owners Association, Inc.,** a Florida not-for-profit corporation

By: _____
Name: _____
Its: _____

38

**EXHIBIT A**
**ASSOCIATION ARTICLES OF INCORPORATION**

ORLA.094873:0154_1288395.15 1/11/2010 9:21 AM

**EXHIBIT B**
**ASSOCIATION BYLAWS**

ORLA.094873:0154_1288395.15 1/11/2010 9:21 AM