# EXHIBIT G

## CONTRACT FOR PURCHASE

Developer/Seller:    Marriott Ownership Resorts, Inc., a Delaware corporation, whose address is 6649 Westwood Boulevard, Orlando, Florida 32821-6090, Attn: Director of New Owner Administration

Purchaser(s): ANTHONY B. & BETH A. LENNEN

Title Taken in Name of: ANTHONY B. LENNEN AND BETH A. LENNEN

Title Taken As Tenants by Entireties

Street Address: ███████████████

City/State/Country/Zip: SHELBYVILLE, IN 46176 USA

⚹ Home Telephone No: ███████████

Business Telephone: - -    *DNC*

I.    **PROPERTY; USE RIGHTS.** Marriott Ownership Resorts, Inc., a Delaware corporation (referred to in this Contract as "**Seller**") agrees to sell and the aforedescribed Purchaser or Purchaser(s) (referred to in this Contract as "**Purchaser**") agrees to purchase, the following described beneficial interest(s) ("**Interest(s)**")") in the MVC Trust ("**Trust**"),which Interest(s) constitutes timeshare estate(s) in the plan known as Marriott Vacation Club Destinations ("**Trust Plan**") upon the following terms and conditions:

| Number of Interests: 4 | Total Points Assigned to such Interests: 1000 | |
|---|---|---|
| Beneficial Interest(s) Numbers: H04815 & H04816 & H04817 & H04818 | | |
| Purchase Price $ 11,545.00 | | |
| Use Year Commencement Date: *will be as set forth in the Deed.* | | |

Use rights shall commence on the date set forth in the Deed as the Use Year Commencement Date. Assessments for the first year of ownership will be prorated on a monthly basis based from the Use Year Commencement Date through the end of the calendar year and collected at Closing as further described in Section III below. Ownership and use of the Interest(s) are pursuant to and as described in the MVC Trust Agreement, as amended from time to time ("**Trust Agreement**").

II.    **PURCHASE PRICE AND TERMS.** The total purchase price ("**Purchase Price**") of the Interest(s), payable in good U.S. funds is as follows:

| | | | |
|---|---|---|---|
| Purchase Price.................................................................................................................... | | $ | 11,545.00 |
| a. | Estimated Closing Costs excluding Assessments (See separate Schedule of Estimated Closing Expenses which Schedule is attached to and incorporated into this Contract by reference) ......................................... | $ | 444.68 |
| b. | Prior Reservation Deposit (if applicable) ............................................................................. | $ | 0.00 |
| c. | Deposit (received on date of execution of this Contract) ......................................................... | $ | 1,155.00 |
| d. | Additional deposit due by | $ | 0.00 |
| e. | Seller financing (if applicable) ......................................................................................... | $ | 0.00 |
| f. | Balance of Purchase Price, including Closing Costs, Payable at Closing (excluding Assessments) ...................................................................... | $ | 10,834.68 |

The balance of the Purchase Price shall be paid at closing (in cash, cashier's check, or certified check) or by the proceeds of a loan requested by Purchaser in the amount of the balance due. If Seller-financing is requested pursuant to Section II. e. herein above, this Contract is contingent upon financing being made available by Seller, provided Purchaser makes a good faith effort to qualify for said financing, to include, but not limited to, supplying all required documentation requested by Seller in order to evaluate Purchaser's creditworthiness. For Seller-financed sales, there is a monthly service fee as provided in the loan documents.

III.    **EXPENSES AT CLOSING.** Purchaser shall pay all actual costs relating to closing of this transaction ("**Closing Costs**"), which are estimated as described in Section II above and to be collected at the time of closing of the transaction contemplated by this Contract ("**Closing**"). Closing Costs associated with the purchase , financing and conveyance of an Interest(s) include, but are not limited to: (i) cost of recording the deed; (ii) documentary stamp tax on the deed; (iii) document preparation fees; (iv) Seller's administrative and processing fees; (v) title search fees; (vi) costs for a title commitment and premiums for the owner's title insurance policy; (vii) cost of recording the purchase money mortgage (if any), (viii) applicable intangible and documentary stamp taxes on the purchase money mortgage or note (if any); (ix) Assessments (unless paid after Closing as set forth in the following paragraph); and (x) any and all other Closing Costs, if any. Assessments include the Annual Dues assessed against the Interest(s) by the MVC Trust Owners Association, Inc., a Florida corporation not-for-profit ("**Association**") (including the amount assessed at Closing against the Interest(s) by the Exchange Company (as defined below) pursuant to the Affiliation Agreement (as defined below), real estate taxes, and other charges. If a corporation, Purchaser must pay a U.S.$40.00 corporate search fee at Closing for administrative, processing and out of pocket costs for a corporate search on Purchaser.

The Annual Dues for the current year are $ 475.00; Purchaser must also pay Exchange Company Dues, currently $ 175.00 per year for Standard Members or $ 215.00 per year for Premier and Premier Plus Members; however, the Annual Dues and Exchange Company Dues for the year following the date of this Contract may be higher. The Annual Dues and Exchange Company Dues paid by Purchaser at or prior to Closing shall be pro rated and shall be based on the Annual Dues or Exchange Company Dues for the year of Closing.

If prorated Assessments are not collected from Purchaser at or prior to Closing, Purchaser shall be billed by Seller or the Association for such prorated Assessments after Closing and such amounts shall be due to Seller within 30 days after the date billed. If such amounts are not paid in full when due, Seller, in Seller's sole discretion may restrict Purchaser from participating in certain programs or benefits provided by Seller, as determined by Seller from time to time, or Seller may add the unpaid amount to the principal amount of any purchase money financing obtained by Purchaser as a future advance to the extent permitted by the mortgage securing the purchase money financing. The provisions of this paragraph shall survive Closing and delivery of the Deed and shall not be merged therein.

IV.    **ASSESSMENTS AND OTHER EXPENSES.** From and after the Closing and after the delivery of notice to Purchaser of Purchaser's right to reserve, use, and occupy the Trust Property (as defined below) as set forth in Section 1 on the attached addendum ("**Addendum**"), Purchaser will be responsible for payment of Annual Dues, Exchange Company Dues and other obligations to the Association for each Interest purchased as provided in the Trust Agreement. Purchaser will be responsible for any Assessments or special charges levied by the Association, from time to time.

V.    **CLOSING.** The date of Closing is estimated to occur on or before 01-03-15, unless otherwise modified by other provisions of this Contract or the mutual consent of the parties.

VI.    **COMPLETION OF CONSTRUCTION.** If the accommodations and facilities, the contribution of which to the Trust creates the Interest(s) being conveyed pursuant to this Contract (the "**Accommodations and Facilities**"), are not substantially completed, such construction of the Accommodations and Facilities will be complete no more than thirty-six (36) months after the date of this Contract. For the estimated date(s) of completion of all the accommodations and facilities currently contemplated to be part of the Trust Plan, please refer to the Marriott Vacation Club Destinations – Component Site Information chart attached as an exhibit to the Public Offering Statement. Seller intends to have constructed the Accommodations and Facilities substantially in accordance with the plans, drawings or renderings on file with Seller. Any floor plan drawings, elevations or other schematic materials delivered to Purchaser are approximations and are not representations or agreements as to the exact floor plan or layout of the Accommodations and Facilities. In case of conflict between such drawings or materials and the plans and specifications, the plans and specifications shall control and govern in all respects. Seller reserves the right to change the plans and specifications if necessitated by job conditions, including unworkable situations, errors in the plans and specifications, site conditions, unavailable materials, building codes, etc. (as long as the location, size, quality and appearance of the Accommodations and Facilities are substantially equal or superior to that shown on the plans and specifications). If construction of the Accommodations and Facilities is delayed for any causes beyond Seller's control that constitute impossibility of performance, then, subject to applicable law, the time for completion of the improvements and for Closing hereunder may be extended by Seller for a reasonable time to compensate for such delay.

VII.    **PURCHASER'S REPRESENTATIONS.** Purchaser warrants and represents to Seller that the purchase of the subject Interest(s) is made for Purchaser's personal use. Seller makes no representations to Purchaser concerning rentals, rental income, income tax considerations or investment potential. Purchaser acknowledges and agrees that Purchaser is prohibited from engaging in any commercial activity related to the rental of or otherwise concerning any Accommodations and Facilities

available to Purchaser in connection with its Interest(s) purchased under this Contract. Purchaser understands and agrees that Purchaser is acquiring a non-specific interest in the Trust Property rather than acquiring an interest in any particular Accommodation or unit.

VIII.    **DEFINITIONS; COMPLETE TERMS AND CONDITIONS.** The terms not otherwise defined in this Contract will have the same meaning as such terms are defined in the Trust Agreement and/or "**Public Offering Statement**" (as defined below). This Contract is also subject to the terms and conditions set forth as items numbered 1 through 24 on the Addendum which is incorporated into this Contract by this reference.

IX.    **POWER OF ATTORNEY.** The undersigned Purchaser does hereby make, constitute and appoint Seller as Purchaser's true and lawful attorney for Purchaser, in Purchaser's name and on Purchaser's behalf, for the limited purpose of performing all necessary matters concerning the correction of typographical, clerical and other non-material errors and the insertion of information necessary to complete the documents and effectuate the Closing as contemplated by this Contract such as recording information, legal property descriptions, and a Use Year Commencement Date in documents prepared by Seller and associated with the Closing, including, but not limited to, full power to sign, execute, acknowledge, deliver and set over all documents and instruments necessary for the correction of typographical, clerical and non-material errors and the insertion of information necessary to complete the documents and effectuate the Closing as contemplated by this Contract, including, but not limited to, this Contract and any promissory note and mortgage signed by Purchaser if such changes are non-material in nature and solely pertain to the correction of typographical, clerical and other non-material errors or the insertion of information necessary to complete the documents and effectuate the Closing as contemplated by this Contract in such documents, for all intents and purposes as Purchaser might or could do if Purchaser were personally present; and Purchaser hereby ratifies and confirms all that said attorney shall lawfully do or cause to be done by virtue of these presents. Said power of attorney is coupled with an interest, shall be irrevocable, and shall not be affected by the disability of the Purchaser. This special power of attorney shall expire and be of no further effect upon the recording of the special warranty deed conveying the Interest(s) to Purchaser.

X.    ADDITIONAL TERMS.

**Any resale of this timeshare interest must be accompanied by certain disclosures in accordance with Section 721.065, Florida Statutes.**

**For the purpose of ad valorem tax assessment, taxation and special assessments, the managing entity will be considered the taxpayer as your agent pursuant to Section 192.037, Florida Statutes.**

**The Seller is required to provide the managing entity of the multisite timeshare plan with a copy of the approved public offering statement text and exhibits filed with the Division of Florida Condominiums, Timeshare, and Mobile Homes ("Division") and any approved amendments thereto, and any other component site documents as described in Section 721.07 or Section 721.55, Florida Statutes, that are not required to be filed with the Division, to be maintained by the managing entity for inspection as part of the books and records of the plan.**

**You may cancel this Contract without any penalty or obligation within 10 (ten) calendar days after the date you sign this Contract or the date on which you receive the last of all documents required to be given to you pursuant to Section 721.07(6), Florida Statutes, whichever is later. If you decide to cancel this Contract, you must notify[1] the Seller in writing of your intent to cancel. Your notice of cancellation shall be effective upon the date sent and shall be sent to Marriott Ownership Resorts, Inc., New Owner Administration, 5350 E. Marriott Drive, Phoenix, AZ 85054 or faxed to 480-293-3849. Any attempt to obtain a waiver of your cancellation right is void and of no effect. While you may execute all closing documents in advance, the closing, as evidenced by delivery of the deed or other document, before the expiration of your 10 (ten) day cancellation period, is prohibited.**

[1]**The term "notify" as used above means any written notice of cancellation which is delivered by any means, including certified mail return receipt requested, to the Seller.**

PURCHASER(S):                                                        DATE

_Anthony B. Lennen_ (signature)                                     12-3-14
ANTHONY B. LENNEN

_Beth A. Lennen_ (signature)                                        12.3.14
BETH A. LENNEN

SALES EXECUTIVE:                    MARRIOT OWNERSHIP RESORTS, INC.

_Lisa Latham_ (signature)          By: _____         Date: 12/3/14
LISA LATHAM                            Authorized Representative

1. **PLAN.** The ownership interest of Purchaser in the Trust Plan consists of Interest(s) in the Trust, which is a timeshare estate under Florida law. The Purchaser should refer to the Public Offering Statement promulgated by the Seller pursuant to Chapter 721, Florida Statutes, (the "**Public Offering Statement**") for a full explanation of the Trust Plan being offered.   Each Interest constitutes a Florida timeshare estate under Chapter 721, Florida Statutes, thereby a Florida real property interest. The right associated with a particular Interest to reserve, use and occupy the property comprising the Trust Plan (the "**Trust Property**") will be exercised in accordance with the Trust Plan Documents, the Bylaws of the Association ("**Bylaws**") and any other documents governing the reservation, use, and occupancy of the Trust Property as may be applicable, including, without limitation, Component Declarations. Occupancy shall not commence prior to the first day of the Owner's Use Year or prior to the date of Purchaser's confirmed reservation. Purchaser understands that until a Notice of Use Rights is provided by the Seller with respect to a particular Trust Property, Purchaser shall not have the right to reserve, use, and occupy such Trust Property.

2. **MODIFICATIONS AND CHANGES.** Seller reserves the right to make changes in the Trust Plan Documents, provided those changes do not: (i) materially decrease Purchaser's use rights with respect to the Trust Property; or (ii) increase Purchaser's proportional share of the Association's Assessments, except as permitted by the Trust Plan Documents.

3. **CREDIT REPORT.** Purchaser agrees that Seller shall have the right, but not the obligation, to obtain from consumer reporting agencies such information relating to the creditworthiness of Purchaser as Seller shall deem appropriate.

4. **TITLE INSURANCE.** Unless Purchaser elects, at Purchaser's option, not to obtain title insurance, Seller shall cause to be issued to Purchaser, at Purchaser's expense, an owner's title insurance policy insuring the Purchaser's title to the Interest(s) purchased, subject only to the conditions of title set forth in this Contract. If Seller is unable to deliver insurable title, for any reason other than actions of Purchaser, Seller shall refund to Purchaser all monies paid under this Contract, and thereupon neither party shall have any further rights or obligations hereunder. Unless Purchaser elects otherwise, Purchaser's title insurance will be provided by Marriott Resorts Title Company, Inc. ("**MRTC**"), a wholly owned subsidiary of the Seller; provided, however, Seller will require Purchaser to obtain title insurance in connection with any financing provided by Seller. The rates are available from MRTC. Seller will have the standard exception for the filing of mechanics' and/or materialmen's liens removed and/or otherwise make certain that adequate provisions are taken to address the filing of these so as to fully protect the Purchaser's rights; together with any other of Seller's exceptions applicable to title to the Interests, if any. Purchaser should consult with his closing agent as to title insurance and other costs if a different closing agent and/or title agent other than Seller or MRTC is used. Purchaser has the right to choose the title insurance company issuing the Owner's title policy; however, if Purchaser does not notify Seller in writing within ___Seven___ ( 7 ) (if left blank then seven (7)) days after the date of execution of this Contract as to the identity of the title insurance company that will be issuing the Owner's title policy, then Seller shall have the right to select such title insurance company, and Purchaser will be deemed to have irrevocably chosen the title insurance company selected by Seller.

Purchaser(s) Initial(s):  _____    _____

If Purchaser obtains a loan for any portion of the Purchase Price, Purchaser will be obligated to pay any loan fees, Closing Costs, escrows, appraisals, credit fees, prepayments and all other expenses charged by any lender giving Purchaser a loan, if applicable. Notwithstanding any of the references in this section to Purchaser seeking to obtain a loan, nothing in this Contract shall be deemed to make this Contract conditional or contingent in any manner on Purchaser obtaining a loan to finance any portion of the Purchase Price other than the contingency for financing being made available by seller as described in Section II. e. of this Contract.

5. **BINDING EFFECT.** Upon acceptance and execution of this Contract by Seller in the United States, this Contract will be binding upon the parties to this Contract and their heirs, legal representatives, successors, and assigns and may not be assigned by Purchaser without written consent of Seller. This Contract and the Public Offering Statement and exhibits to the Public Offering Statement represent the entire agreement between the parties. This Contract may only be amended in writing, signed by all parties. Purchaser may not record this Contract or any memorandum of this Contract in the public records. The recording of this Contract by Purchaser shall constitute a breach, and Seller, at its option, may thereupon terminate this Contract.

6. **DEFAULT.** Time is of the essence, particularly with respect to the obligation to pay money, except where otherwise provided in this Contract. Upon Purchaser's breach of any term or condition of this Contract, Seller may elect to terminate this Contract and may retain all sums paid under this Contract as its sole and exclusive remedy. Should Seller default under this Contract, then Purchaser shall be entitled to: (1) a return of all sums paid under this Contract, and upon receipt of such payment by Purchaser, neither party shall have any further rights, obligations or liabilities with respect to the other party under this Contract; or (2) such other remedies as may be available by law to Purchaser. In the event Seller defaults after exercising its right to close prior to completion of construction as provided in Section 9 below, as a precondition to receiving the return of all funds paid under this Contract, Purchaser shall be obligated to convey the Interest(s) back to Seller free from any liens and encumbrances, other than a purchase money mortgage in favor of Seller, which attached to the Interest(s) upon or subsequent to Purchaser's initial acquisition of title.

7. **CANCELLATION.** In the event Purchaser cancels this Contract during the 10-day cancellation period, Seller will refund to Purchaser the total amount of all payments made by Purchaser under this Contract, reduced by the proportion of any contract benefits Purchaser has actually received under this Contract prior to the effective date of the cancellation. The refund shall be made within twenty (20) days of demand therefor by the Purchaser, or within five (5) days after receipt of funds from Purchaser's cleared check, whichever is later.

8. **EXCHANGE PROGRAMS.** The Association has executed an affiliation agreement ("**Affiliation Agreement**") with Marriott Resorts, Travel Company, Inc. (d/b/a MVC Exchange Company) ("**Exchange Company**"), which provides for the Exchange Program for Beneficiaries. All Beneficiaries have the right to reserve accommodations made available through the Exchange Program pursuant to the Reservation Procedures ("**Reservation Procedures**") and the terms of the Affiliation Agreement. Purchasers shall also have the opportunity to participate in an External Exchange Program offered by Interval International, Inc. ("**Interval**"). Enrollment in the External Exchange Program offered by Interval is provided to each Purchaser pursuant to an Affiliation Agreement with Interval and each Purchaser's annual enrollment fee is included in the Purchaser's Exchange Company Dues as reflected on the Association's annual budget. The initial term of the Affiliation Agreement with Interval is four (4) years and is subject to renewal at the option of Program Manager. All representations set forth within the brochures and literature of the Exchange Company and Interval are representations of the Exchange Company and Interval, respectively, and not of Seller.

9. **CLOSING AND TITLE.** Purchaser and Seller shall execute Closing documents and deliver such documents, together with any funds required to close the transaction, to the closing agent, upon request by the closing agent. MRTC shall act as closing agent, unless Purchaser requests a different closing agent, in which case Purchaser shall pay any increased Closing Costs arising as a result of using such closing agent. Closing documents will either be executed at the time of execution of this Contract and held in escrow until Closing when Closing funds are sent, or the Closing will be handled entirely by mail. Written notice of the Closing date will be given by Seller to Purchaser not less than ten (10) days prior to the date specified in the notice if Closing documents and/or funds must be furnished to closing agent. At Closing, Seller shall deliver to Purchaser its special warranty deed conveying title to the Interest(s) purchased free and clear of all liens, claims, and encumbrances, except Purchaser's mortgage (if any), the terms and conditions of the Trust Documents, conditions, restrictions, covenants, reservations, limitations, zoning, and easements of record at the time of Closing, and liens created by actions of Purchaser. In the event that the amount of prorated Assessments collected pursuant to Section III is greater than the amount of Assessments actually due from Purchaser at the time of Closing, Seller shall, at Seller's option, either deliver the amount of the overpayment to the Association for the benefit of Purchaser or refund the amount of the overpayment to Purchaser. If alternate assurances are obtained and approved by the Division, then at Seller's election and sole discretion, the purchase of the Interest(s) may be closed prior to completion of construction of the Trust Property that, upon contribution to the Trust, will create such Interest(s), as permitted by Section 721.08(5)(b), Florida Statutes.

10. **NO WARRANTIES. SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, CONCERNING THE TRUST PROPERTY OR ANY ACCOMMODATIONS OR FACILITIES EXCEPT GOVERNING VALID STATUTORY WARRANTIES REQUIRED TO BE MADE BY SELLER, AND ANY OTHER REPRESENTATIONS, STATEMENTS OR PROMISES MADE BY ANY PERSON ARE UNAUTHORIZED AND ARE NOT BINDING UPON SELLER. ALL OTHER WARRANTIES WITH RESPECT TO THE TRUST PROPERTY OR ANY ACCOMMODATIONS OR FACILITIES ARE HEREBY DISCLAIMED, TO THE EXTENT PERMITTED BY LAW, WHETHER IMPLIED OR ARISING BY OPERATION OF LAW, COURSE OF DEALING, CUSTOM AND PRACTICE, OR OTHERWISE, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OF HABITABILITY, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE. PURCHASER REPRESENTS THAT PURCHASER HAS READ AND UNDERSTANDS THIS PROVISION, AND THAT PURCHASER UNDERSTANDS AND AGREES THAT BY ENTERING INTO THIS CONTRACT AND ACCEPTING THE BENEFITS OF THE LIMITED WARRANTY DESCRIBED ABOVE, PURCHASER HAS KNOWINGLY RELINQUISHED ANY AND ALL OTHER WARRANTIES OF ANY KIND OR NATURE REGARDING THE TRUST PROPERTY OR ANY ACCOMMODATIONS OR FACILITIES.**

11. **ESCROW OF DEPOSITS.** Unless an approved alternate assurance arrangement is utilized, all deposits made hereunder shall be held by First American Title Insurance Company, Inc., a California corporation, 2300 Maitland Center Parkway, Suite 201, Maitland, Florida 32751 as Escrow Agent, until the expiration of the cancellation period as provided above. Provided Purchaser has not elected to exercise its rights to cancel under this Contract, Escrow Agent shall further hold all deposits until (i) presentation of an affidavit by Seller to Escrow Agent stating that the cancellation period has expired, construction is complete, and Closing has occurred; or (ii) an approved alternate assurance arrangement is utilized, at which time Escrow Agent shall transfer said deposits to Seller. Interest earned on deposits held in escrow shall be paid to Seller. All notices and claims of Purchaser with respect to the above escrow shall be sent to Escrow Agent at the address set forth above.

12. **RISK OF LOSS.** Partial loss or damage to any Trust Property by fire, storm, or other casualty between the date of this Contract and Closing hereunder shall not void or impair this Contract, but all such damage by way of fire, storm, or other casualty is to be the responsibility of the Seller. In the event of substantial or total loss of any Trust Property, which loss will affect Purchaser's ability to reserve, use and occupy the Trust Property as contemplated by this Contract, prior to Closing as a result of the hazards mentioned above, Purchaser shall have the option to cancel this Contract upon written notice to Seller within seven (7) days following the Purchaser's notification of such loss or damage.

13. PURCHASER'S REPRESENTATIONS AND COVENANTS AS TO FOREIGN NATIONAL STATUS. The United States Department of the Treasury, Office of Foreign Assets Control ("OFAC"), prohibits Seller from engaging, directly or indirectly, in transactions with individuals or entities on OFAC's list, as updated from to time to time, of Specially Designated Nationals and Blocked Persons (the "SDN List"). OFAC also administers, from time to time, sanction and embargo programs involving certain designated countries (each an "Embargoed Country").

(a) By signing above, Purchaser represents and warrants to Seller as follows:

1. Purchaser is not included on the SDN List, and is not owned or controlled by, or acting for or on behalf of, an individual, organization or other entity included on the SDN List.

2. Purchaser is not a resident or national of any Embargoed Country.

3. Purchaser is not affiliated with, and does not give support to or receive support from, any terrorist, terrorist organization, narcotics trafficker or person engaged in activities related to the proliferation of weapons of mass destruction.

4. Purchaser is not an individual, organization or other entity with whom Seller or its affiliates are prohibited from transacting business, or with whom they may transact business only subject to the imposition of significant fines or penalties.

5. Purchaser hereby represents its compliance with all applicable anti-money laundering laws, including, without limitation, the USA Patriot Act of 2001, as amended from time to time, and the laws and regulations implemented, enforced, or administered by OFAC, including, without limitation, Executive Order 13224.

6. None of Purchaser's employees, directors, officers, or others with a controlling interest in Purchaser, nor any of its affiliates or the funding sources of either is on the SDN List.

7. Neither Purchaser nor any of its affiliates is directly or indirectly controlled by the government of any country or person that is subject to an embargo by the United States government that prohibits Seller from conducting the business activities contemplated by this Contract with Purchaser.

8. Neither Purchaser nor any of its affiliates is acting on behalf of an Embargoed Country.

Purchaser agrees that it will notify Seller in writing immediately upon the occurrence of any event which would render the foregoing representations and warranties of this Section 13 incorrect. Notice should be sent by mail to the following address: Marriott Ownership Resorts, Inc., Attn: Office of General Counsel, Law Department, 6649 Westwood Blvd., Third Floor, Orlando, Florida 32821 and via confirmed telefacsimile at 407-206-6420.

(b) If at any time Purchaser becomes, or is discovered to be, an individual, organization or other entity described by any of Sections 13.a.1 through 8 above (a "Prohibited Purchaser"), Purchaser shall, immediately and without further action or notice on behalf of Seller, forfeit any use, voting and other rights attached to the Interest(s) purchased hereby and shall not be entitled to a refund of any deposits, fees or other monies paid with respect to such Interest(s). Upon the occurrence of such an event, Purchaser shall waive any claims it may have against Seller and its parent and sister companies, affiliates, subsidiaries, employees, agents, officers and directors as a result of such forfeiture and will indemnify Seller and its parent and sister companies, affiliates, subsidiaries, employees, agents, officers and directors for any losses incurred by them arising from Purchaser's status as a Prohibited Purchaser, including any breach of Purchaser's representations and warranties set forth in this Contract.

(c) Purchaser shall not transfer or attempt to transfer Purchaser's Interest(s) purchased hereby to any individual, organization or other entity which would be considered a Prohibited Purchaser under the terms of this Contract (a "Prohibited Transferee"). Any such transfer or attempted transfer may subject Purchaser to fines or other liabilities, and such transaction may be declared null and void. Purchaser hereby agrees to indemnify and hold harmless Seller and its parent and sister companies, affiliates, subsidiaries, and the employees, agents, officers and directors of each from any losses incurred by them arising from Purchaser's transfer or attempted transfer of Purchaser's Interest(s) purchased hereby to any Prohibited Transferee.

14. SEVERABILITY. If any portion of this Contract is held to be invalid or unenforceable for any reason whatsoever, all other provisions of this Contract shall, nevertheless, continue in full force and effect.

15. **GOVERNING LAW; VENUE; WAIVER OF JURY TRIAL. THE LOCAL LAWS OF THE STATE OF FLORIDA, WITHOUT REGARD TO FLORIDA'S CHOICE OF LAW RULES, WILL EXCLUSIVELY GOVERN THE INTERPRETATION, APPLICATION, ENFORCEMENT, PERFORMANCE OF, OR ANY OTHER MATTER RELATED TO, THIS CONTRACT. THE SELLER, PURCHASER, AND ANY OTHER PARTY CLAIMING RIGHTS OR OBLIGATIONS BY, THROUGH, OR UNDER THIS CONTRACT EACH WAIVE ANY RIGHT THEY MAY HAVE UNDER ANY APPLICABLE LAW TO A TRIAL BY JURY WITH RESPECT TO ANY SUIT OR LEGAL ACTION WHICH MAY BE COMMENCED BY OR AGAINST THE OTHER CONCERNING THE INTERPRETATION, CONSTRUCTION, VALIDITY, ENFORCEMENT, OR PERFORMANCE OF THIS CONTRACT OR ANY OTHER AGREEMENT OR INSTRUMENT EXECUTED IN CONNECTION WITH THIS CONTRACT. THE ORANGE COUNTY, FLORIDA COURTS WILL BE THE EXCLUSIVE VENUE FOR ANY DISPUTE, PROCEEDING, SUIT OR LEGAL ACTION CONCERNING THE INTERPRETATION, CONSTRUCTION, VALIDITY, ENFORCEMENT, PERFORMANCE OF THIS CONTRACT OR ANY OTHER AGREEMENT OR INSTRUMENT EXECUTED IN CONNECTION WITH THIS CONTRACT. IN THE EVENT ANY SUCH SUIT OR LEGAL ACTION IS COMMENCED BY ANY PARTY, THE OTHER PARTY AGREES, CONSENTS AND SUBMITS TO THE PERSONAL JURISDICTION OF THE ORANGE COUNTY, FLORIDA COURTS WITH RESPECT TO SUCH SUIT OR LEGAL ACTION. EACH PARTY WAIVES ANY AND ALL RIGHTS UNDER APPLICABLE LAW OR IN EQUITY TO OBJECT TO THE JURISDICTION OR VENUE OF THE ORANGE COUNTY, FLORIDA COURTS.**

16. MANAGEMENT. There is a Management Agreement by and between Marriott Resorts Hospitality Corporation and the Association for the management, maintenance and operation of the Trust Plan and the Trust Property, which has an initial term of three (3) years, which Management Agreement shall be automatically renewed for successive three-year periods until or unless terminated. The parties to said Management Agreement have the ability under certain conditions set forth in the Trust Agreement, Bylaws or Management Agreement to make operational decisions which could result in an increase in Assessments.

17. RADON GAS. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

18. FLORIDA BUILDING ENERGY-EFFICIENCY RATING ACT. Pursuant to the Florida Building Energy-Efficiency Rating Act, Part VIII, Chapter 553, Florida Statutes, Purchaser may have the energy-efficiency rating determined for that portion of the Trust Property that is located in Florida. The cost for obtaining this rating is the responsibility of the Purchaser. By execution of this Contract, Purchaser acknowledges receipt of the Department of Community Affairs' information brochure regarding Florida's Energy-Efficiency Rating System.

19. **CONSTRUCTION DEFECT CLAIMS. CHAPTER 558, FLORIDA STATUTES, CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT. SIXTY DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS CONTRACT A WRITTEN NOTICE, REFERRING TO CHAPTER 558, OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS.**

20. **PROPERTY TAX DISCLOSURE SUMMARY. PURCHASER SHOULD NOT RELY ON SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT PURCHASER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.**

21. ASSIGNMENT. Purchaser acknowledges the Seller's right to assign its rights and interests under this Contract without notice to, or consent from, Purchaser. If Seller does assign this Contract, Seller will be relieved of all obligations under this Contract. Purchaser shall only assign its rights and interests under this Contract after providing written notice to Seller and receiving prior written consent of Seller, which consent may be withheld in Seller's sole discretion. Seller intends to condition its consent, if any, upon the payment by Purchaser to Seller of an assignment fee to be determined by Seller in Seller's sole discretion. Upon such assignment, if any, Purchaser's assignee shall assume all of Purchaser's obligations under this Contract, but Purchaser shall remain fully obligated under this Contract until the Closing. In the event that Purchaser's assignee defaults under this Contract, Purchaser will be responsible for performance under this Contract as if no assignment occurred. Any attempted assignment by the Purchaser without prior written consent of Seller will constitute a default under this Contract, permitting the Seller to cancel this Contract.

22. ACKNOWLEDGEMENTS

(a) Purchaser acknowledges and agrees that prior to Closing, Purchaser is prohibited from listing or advertising its Interest(s) for sale in any real estate listing service and/or publication, on any online electronic medium and on any radio, television or any other medium for advertising.

(b) Purchaser acknowledges and agrees that Seller and its affiliates use Marriott marks under license from Marriott International, Inc. and its affiliate, and the right to use such marks shall cease if such license expires or is revoked or terminated. By accepting a deed to an Interest(s), each owner acknowledges that the Seller or its affiliates may, without advance notice to owners or the Association, cease use of the Marriott marks (in which event all signs or other materials bearing any of the Marriott marks may be removed from the Trust Property), and in which event Seller may affiliate some or all portions of the Trust Property with a different resort brand or no brand at all. By accepting a deed to an Interest(s), each Purchaser acknowledges and agrees that such a change in the status or nature of any portion of the Trust Property's resort affiliations shall not be subject to the approval of any purchaser, owner, or the Association, and shall not be grounds for any claim against the Seller. Owners and the Association shall not use any of the Marriott marks or any similar names or logos, for any reason without the prior written consent of Seller and Marriott International, Inc.

(c) Purchaser acknowledges and agrees that Seller, Marriott International, Inc. and their affiliates are the sole and exclusive owners of all rights, title and interest of every kind and nature in the names and marks "Marriott," "Marriott Vacation Club," the "M" logo, the Marriott Vacation Club "Sun and Moon" logo, and all other trademarks, service marks, trade names, symbols, logos, slogans and designs used or registered by Seller, Marriott International, Inc. or any of their affiliates, whether registered or unregistered and whether used alone or in connection with any other words, trademarks, service marks, trade names, symbols, logos, slogans and designs (the "Marriott Trademarks") and all goodwill associated therewith. By accepting a deed to an Interest(s), each owner acknowledges that the Seller or its affiliates may, without advance notice to owners or the Association, cease use of the Marriott Marks (in which event all signs or other materials bearing any of the Marriott Marks may be removed from the Trust Property), and in which event Seller may affiliate some or all portions of the Trust Property with a different resort brand or no brand at all. By accepting a deed to an Interest(s), each Purchaser acknowledges and agrees that such a change in the status or nature of any portion of the Trust Property's resort affiliations shall not be subject to the approval of any purchaser, owner, or the Association, and shall not be grounds for any claim against the Seller. Owners and the Association shall not use any of the Marriott Trademarks or any similar names or logos, for any reason without the prior written consent of Seller or Marriott International, Inc.

(d) Purchaser represents and warrants to Seller that this transaction was not brought about by any real estate broker or salesperson other than <u>LISA  LATHAM</u> and the Real Estate Broker set forth in this Contract, if any, whose commission will be paid by Seller. Purchaser agrees to defend and indemnify Seller against all claims (including attorneys' fees through and including all appellate levels) of real estate brokers or salespersons for any commissions or fees related to this transaction due to acts of Purchaser or Purchaser's representatives, other than brokers or salespersons employed directly by Seller and the Real Estate Broker, if any.

(e) Purchaser acknowledges the sales agents located at Seller's sales offices are agents of the Seller and are the Selling Agents of Seller and will be paid commissions or other remuneration by Seller.

(f) Purchaser and Seller agree that for all purposes that the Closing constitutes a sale and purchase of the Interest(s) contemplated by this Contract.

23. **AMENDMENTS OR ADDITIONS.** If Seller determines, in its sole discretion, that any amendments or additions to the Trust Plan Documents ("**Amendments or Additions**") are non-material changes (including, without limitation, any additions of Trust Property to the Trust) then Seller may, but is not obligated to, deliver the Amendments or Additions to Purchaser prior to or after Closing, in which event the Amendments or Additions shall not entitle Purchaser to an additional ten (10) day cancellation period pursuant to Florida law. If, however, Seller determines, in its sole discretion, that the Amendments or Additions constitute material changes, Seller shall deliver to Purchaser copies of the Amendments or Additions, in which event Purchaser shall be entitled to an additional ten (10) day cancellation period from the date that Seller delivers the Amendments or Additions with material changes to Purchaser.

24. **MISCELLANEOUS.**

(a) Seller may borrow money from lenders for the acquisition, development and/or construction of the Accommodations and Facilities. Purchaser agrees that any lender advancing funds for Seller's use in connection with the Accommodations and Facilities will have a prior mortgage on Accommodations and Facilities until Closing. At Closing, Seller shall cause the then applicable mortgages to be released and may use Purchaser's Closing proceeds for such purpose. Neither this Contract, nor Purchaser's payment of deposits, will give Purchaser any lien or claim against the Accommodations and Facilities or the Trust Property. Without limiting the generality of the foregoing, Purchaser's rights under this Contract will be subordinate to all mortgages (and all modifications made to those mortgages) affecting the Accommodations and Facilities or the Trust Property even if those mortgages (or modifications) are made or recorded after the date of this Contract.

Prior to Closing, the rights and interests of Purchaser in the Trust Property, if any, and this Contract are hereby unconditionally subordinated to the lien and operation of any mortgage granted by Seller which encumbers the Trust Property as security for any loan made to Seller and any other loan documents executed by Seller in connection with such mortgage(s), whether previously or subsequently made (including any mortgage securing any loan to wholly or partially refinance the obligations secured by the mortgage), and all advances now or hereafter made on the security thereof (whether optional or obligatory and without limitation as to the amount), and all other amounts now or hereafter secured by the mortgage. The subordination contained in this section is unconditional and shall not be affected by: (a) any modification or amendment to, assignment of, or substitution of a new mortgage for the mortgage (whether or not considered a novation); (b) any release or partial release of the mortgage or any portion of the property encumbered thereby; (c) any extensions, waivers or indulgences with respect to the mortgage or the obligations secured thereby; or (d) any other circumstances whatsoever. This subordination shall be automatically effective without the need for execution of any additional documents by Purchaser provided, however, Purchaser will execute and deliver a document in recordable form setting forth the subordination contained in this Contract upon the reasonable request of either Seller or the holder of the mortgage. Notwithstanding the foregoing, the holder of the mortgage will have no right or interest in Purchaser's deposit, except to the extent that such holder may have the right to assume and fulfill Seller's obligations pursuant to this Contract.

(b) Seller has access to a revolving credit facility (the "Credit Facility") for the purpose of supplementing its operating capital. The Credit Facility is secured by a mortgage that encumbers Seller's unsold timeshare inventory, the lien of which against any unsold timeshare interest is released prior to the closing of the sale of such timeshare interest. Title to all timeshare interests is conveyed free and clear of the mortgage that secures the Credit Facility.

(c) This Contract may be executed in any number of counterparts, which together shall constitute the agreement of the parties. The effective date of this Contract is the date of execution by the Seller, and shall not be affected by whether or when Purchaser receives a fully executed copy of this Contract.

(d) Purchaser acknowledges the Accommodations and Facilities or the Trust Property, as the case may be, may be built in multiple phases and or may be planned for construction; and substantial construction-related activities may be expected which may cause noise, dust and other attendant inconveniences. Purchaser further acknowledges that such development may include, without limitation, commercial operations capable of causing noise, odors and other attendant inconveniences.

(e) If required by a title underwriter, Purchaser, if an organization other than a natural person, shall deliver to Seller at or prior to Closing a copy of a resolution of Purchaser, duly adopted and certified by an authorized representative of Purchaser as required by the laws of the state of Purchaser's organization, authorizing the purchase of the Interest(s), together with all certificates of organization, certificates of authority, trade name affidavits and other documents required by Florida law to enable Purchaser to hold title to the Interest(s). Purchaser represents that at Closing Purchaser will be in good standing.

(f) If Purchaser is comprised of two or more parties, they shall be jointly and severally obligated under this Contract.

(g) The proposed estimated operating budget of the Association is based on bids and estimates that were valid at the time that they were made. Figures contained in the estimated budget delivered to the Purchaser are estimates only and represent an approximation of future expenses based on facts and circumstances existing at the time of the preparation of the estimated budget by Seller. Actual costs of such items may exceed estimated costs. As Trust Property is added to the Trust, actual costs may exceed estimated costs. Such changes in cost do not constitute material adverse changes in the offering. In particular, the cost of insurance for associations is particularly difficult to predict. Given hurricanes, storms and other recent events, insurance rates have risen substantially in recent years and are subject to change. Although the Association is required to purchase property insurance, the cost of that insurance is beyond the control of the Association or the Seller. Purchaser recognizes and agrees that an increase in the cost of insurance that reflects an actual increase in the cost of insurance reasonably available to the Association shall not be considered a material change in the Trust Plan Documents, and Purchaser agrees that a revised estimated budget may be enacted prior to or after Closing to incorporate increased costs such as those described in this section.

(h) As provided in the Public Offering Statement, the transfer of a beneficial interest in the Trust will be characterized, for income tax purposes only, as the transfer of (1) the right to use (in accordance with the Trust Plan Documents) the Trust Property held or to be held in the Trust for which a Notice of Use Rights has been or is delivered ("**Use Rights**"), and (2) an economic interest in the Trust ("**Economic Rights**"); and the purchase price paid for the Interest(s) will be allocated between the Use Rights and the Economic Rights as follows: Use Rights $9,164.20 Economic Rights $2,380.80. The preceding allocation of purchase price will be used to determine the Purchaser's initial tax basis in the Use Rights and Economic Rights associated with the Interest(s). This characterization is for income tax purposes only and nothing contained herein shall be deemed to change the character of the Interest(s) as a Timeshare Estate under Florida law.

(i) In addition to the personal information provided by the Purchaser, Seller may use third party sources to provide Seller with additional contact, demographic or personal information about the Purchaser based on the information provided directly. For example, if Seller knows the Purchaser's name and postal address, Seller may use a third party source to provide Seller with the Purchaser's email address, demographic information, or information available in publicly-accessible government registries. By providing Seller with his/her information and/or purchasing the Interest(s), the Purchaser will have consented to the collections and uses of information from third party sources, as described above. Seller would then use this information along with the information provided by the Purchaser for market analysis and marketing purposes, and to keep the Purchaser updated about future offers or promotions. Seller may also collect personal information about the Purchaser from other sources provided that such sources confirm to Seller that they are permitted to share such information, such information is publicly available, or the collection is required or authorized by law. However, the Purchaser may opt-out of these collections and uses of information from third party sources at any time. For additional information related to the collection, use and transfer of information, please see Seller's Privacy Policy at www.marriottvacationclub.com.