**ANTHONY LENNEN and BETH
LENNEN,**

        **Plaintiffs,**

**v.**                                         **Case No:  6:16-cv-855-Orl-41TBS**

**MARRIOTT OWNERSHIP RESORTS,
INC., MARRIOTT RESORTS TRAVEL
COMPANY, INC., MARRIOTT
RESORTS TITLE COMPANY, INC.,
MVC TRUST OWNERS
ASSOCIATION, INC., FIRST
AMERICAN FINANCIAL
CORPORATION, FIRST AMERICAN
TRUST, FSB, FIRST AMERICAN
TITLE INSURANCE COMPANY,
ORANGE COUNTY FLORIDA and
MARRIOTT RESORTS HOSPITALITY
CORPORATION,**

        **Defendants.**

_____/

## ORDER

THIS CAUSE is before the Court on Marriott Defendants' Dispositive Motion to Dismiss (Doc. 134), Defendant MVC Trust Owners Association, Inc.'s Dispositive Motion to Dismiss (Doc. 135), First American Defendants' Motion to Dismiss (Doc. 136), and Defendant Orange County's Motion to Dismiss (Doc. 144), to which Plaintiffs filed Responses (Doc. Nos. 142, 145). For the reasons set forth herein, Marriott Defendants' Motion to Dismiss will be granted in part, MVC Trust Owners Association, Inc.'s Motion to Dismiss and First American Defendants' Motion to Dismiss will be granted, and Orange County's Motion to Dismiss will be denied.

## I.     BACKGROUND

This dispute arises out of timeshares purchased by Plaintiffs. On January 24, 2008, Plaintiffs purchased two timeshare estates in Marriott's[1] weeks-based Legacy timeshare program. (Am. Compl., Doc. 124, ¶¶ 2, 62). Marriott's Legacy timeshare program is a single-site timeshare plan in which purchasers are deeded a fractional ownership interest in a condominium unit partitioned by weeks coupled with a use license in the accommodations of the resort where the condominium is located. (*Id.* ¶ 62). First American[2] issued a title insurance policy to Plaintiffs for their two timeshare estates. (*Id.* ¶ 4).

In June 2010, Marriott began offering timeshare estates under the MVC Timeshare Plan ("MVC Plan"). (*Id.* ¶¶ 89–90). The MVC Plan is billed as a points-based timeshare product in a multisite timeshare plan. (*Id.* ¶ 90). Under the MVC Plan, purchasers are conveyed a beneficial interest in a Florida land trust ("MVC Trust"), which consists of forty-four Marriott-owned Legacy timeshare condominiums ("Component Sites"), including the one in which Plaintiffs owned an interest. (*Id.* ¶¶ 90–91).

To create the MVC Trust, Marriott deeded its Legacy timeshare condominiums to First American as trustee of the MVC Trust, with all beneficial interests in the MVC Trust vesting in Marriott, the beneficiary. (*Id.* ¶ 95). As Marriott adds new properties to the MVC Trust, Marriott records Notices of Addition ("NOAs") in the public land records of Orange County. (*Id.* ¶¶ 57, 95). The NOAs contain a description of the newly-added properties as well as the point value Marriott has assigned to those properties ("Points for Sale"), which are unitized in tranches of 250 points, called beneficial interests ("BIs"), and sold to consumers as timeshare estates. (*Id.*). However, property added to the MVC Trust via an NOA is not immediately made available for

---

[1] Marriott Ownership Resorts, Inc., Marriott Resorts Travel Company, Inc., Marriott Resorts Title Company, Inc., and Marriott Resorts Hospitality Corporation are collectively referred to as "Marriott."

[2] First American Financial Corporation, First American Trust, FSB, and First American Title Insurance Company are collectively referred to as "First American."

use by timeshare owners ("MVC Trust Owners"). (*Id.* ¶ 58). MVC Trust Owners are only permitted to use a new property once Marriott, in its discretion, delivers a Notice of Use Right ("NOU") for the property to the MVC Trust managing entity, MVC Trust Owners Association, Inc. ("MVCTOA"). (*Id.*). After an NOU is delivered, the points from the newly-added Trust Property are sold to consumers, and MVC Trust Owners' interests in the MVC Trust are recalibrated to account for the additional points. (*Id.* ¶ 104; MVC Trust Agreement, Doc. 124-13, at 13–14). MVC Trust Owners then utilize their points to book accommodations, the cost of which is reflected as Points for Use. (*See* Doc. 124-13 at 5, 13).

On January 14, 2015, Plaintiffs purchased four BIs, equivalent to 1,000 points, in the MVC Trust. (Doc. 124 ¶ 5). The transaction was memorialized in an MVC Trust Consumer Deed recorded in Orange County, Florida. (*Id.*; Special Warranty Deed, Doc. 124-3). Plaintiffs' deed described the interest being conveyed as a timeshare estate and provided an administrative code for each BI conveyed. (Doc. 124-3 at 2).[3] Plaintiffs purchased a title insurance policy through Marriott Resorts Title Company, Inc. ("Marriott Title") and First American Title, FSB ("First American Title"). (Doc. 124 ¶ 7). Thereafter, Plaintiffs initiated this purported class action against Defendants, alleging numerous violations of the Florida Vacation Plan and Timesharing Act ("Florida Timeshare Act"), Fla. Stat. § 721.01 *et seq.*, and the Florida Land Trust Act, Fla. Stat. § 689.071 *et seq.*

## II.   LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6),

---

[3] Because the MVC Consumer Deed does not contain original page numbers, citations are to the electronic filing page number.

a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   ANALYSIS

Defendants argue that Plaintiffs' Amended Complaint should be dismissed because it constitutes a shotgun pleading and because Plaintiffs failed to state a claim. Each of Defendants' arguments will be addressed in turn.

### A.    Shotgun Pleading

As a general matter, "[t]he failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Beckwith v. BellSouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (per curiam) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1029–30 (11th Cir. 2001)). "Shotgun pleadings wreak havoc on the judicial system" and "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (quotation omitted). As such, "[w]hen presented with a shotgun complaint, the district court should order repleading *sua sponte*." *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009) (per curiam); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d

1290, 1333 (11th Cir. 1998) (noting that shotgun pleadings drain judicial resources, and the district should act *sua sponte* to define the issues at the earliest possible stage).

The Eleventh Circuit has defined four types of shotgun pleadings. "The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). The second most common type "is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1331–32. "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–23. "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

Defendants argue that Plaintiffs' Amended Complaint constitutes an impermissible shotgun pleading because each Count incorporates large swaths of factual allegations without regard for their relevance to the specific Count. While occasionally true, it does not transform the entire Amended Complaint into a shotgun pleading. Instead, only certain claims, namely Counts VII, VIII, XI, and Plaintiff's claim for punitive damages, are due to be dismissed as a shotgun pleading.

Counts VII, VIII, and XI fail to separate into different counts each cause of action or claim for relief. Count VII alleges that First American violated section 721.08 by failing to independently verify that the timeshare estates were free and clear from encumbrances or claims of any interestholders. Additionally, Count VII alleges that First American, as trustee and escrow agent, is not independent of Marriott, in violation of 721.03(7). Lastly, Count VII appears to assert a

claim against MVCTOA for unlawfully indemnifying First American for its acts as trustee. Although Plaintiffs purports to bring this Count against MORI, it is unclear what acts or omissions by MORI give rise to Plaintiffs' cause of action. Therefore, Count VII is due to be dismissed as a shotgun pleading.

In Count VIII, Plaintiffs assert a claim against MORI, MVCTOA, First American Corp., and First American Trust for violating section 721.08(2)(c)(4), Florida Statutes. Therein, Plaintiffs allege that Marriott unlawfully withdrew proceeds from sales of the MVC Trust from escrow in violation of section 721.08(2)(c)(4) and request declaratory relief in the form of an order finding that First American violated section 721.08. It is unclear what conduct forms the basis of Plaintiffs' claim against First American as the remainder of the Count focuses on Marriott's alleged wrongdoing.[4] Thus, Count VIII will be dismissed as a shotgun pleading.

Plaintiffs' allegations in Count XI consist of multiple claims against MORI and MVCTOA. Plaintiffs assert that: (1) MVCTOA is a proxy for Marriott, and therefore, it cannot act as a fiduciary for MVC Trust Owners; (2) MVCTOA fails to comply with section 721.13(1)(a) because it was created after the first closing of a timeshare interest; (3) MVCTOA is an invalid owners' association under section 718 because an owners' association already exists for the Legacy Timeshare Estates; (4) MVCTOA fails to comply with section 721.13(1)(b) because it lacks operating authority over the entire condominium; and (5) MVCTOA breached its fiduciary duty to the MVC Trust Owners by violating several provisions of the Florida Timeshare Act. Because Plaintiffs assert multiple causes of action within in the same count, Count XI will be dismissed as a shotgun pleading.

Plaintiffs' punitive damages claim incorporates one hundred and twenty-seven paragraphs of general allegations, many of which are not relevant. "Consequently, [the defendants] and the

---

[4] For this reason, Count VIII also falls into the fourth category of shotgun pleadings.

district court [must] sift through the facts presented and decide for themselves which [are] material to the particular cause of action asserted, a difficult and laborious task indeed." *JAWHBS, LLC v. Arevalo*, No. 15-24176-CIV-GAYLES, 2016 WL 4142498, at *10 (S.D. Fla. Aug. 4, 2016) (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991)). Because Plaintiff's claim for punitive damages is replete with immaterial facts, it is due to be dismissed as a shotgun pleading. *See Mendez-Arriola v. White Wilson Med. Ctr. PA*, No. 3:09-cv-495/MCR/EMT, 2010 WL 338005, at *1 (N.D. Fla. Jan. 21, 2010) (dismissing complaint where each count incorporated one hundred and six paragraphs of factual allegations, many of which were plainly immaterial).

### B.      Failure to State a Claim

#### *1.      Count I*

In Count I of the Amended Complaint, Plaintiffs assert a claim for declaratory relief against MORI, Marriott Resorts Hospitality Corporation, ("Marriott Hospitality"), and Marriott Title ("Count I Defendants"). Therein, Plaintiffs allege that the MVC Trust Consumer Deeds are void because they lack valid legal descriptions of the property interests being conveyed. Under Florida law, "[t]o effect a valid conveyance of real property, a deed or other instrument must describe the property such that it is evident that a particular parcel, and not a different or unspecified one, is to be conveyed." *Mendelson v. Great W. Bank, F.S.B.*, 712 So. 2d 1194, 1196 (Fla. 2d DCA 1998). "[A] description is sufficient if, by relying on the description read in light of all facts and circumstances referred to in the instrument, a surveyor could locate the land." *Id.* "Parol evidence is admissible to determine the description so long as the instrument itself shows that the parties were contemplating a particular piece of property." *Rice v. Rice*, 499 F. Supp. 2d 1245, 1248 (M.D. Fla. 2007) (collecting cases).

Here, it is undisputed that the property descriptions contained within the Consumer Deeds, alone, are inadequate. Instead, Count I Defendants argue that the property descriptions are valid once parol evidence is taken into consideration. Count I Defendants note that the Consumer Deeds

reference the MVC Trust Memorandum, (*see e.g.*, Doc. 124-3 at 2), which provides that all Trust Property, and their legal descriptions, can be found in the recorded NOAs, (*see* Mem. of Trust Agreement, Doc. 124-9, at 1). Through this string of references, Count I Defendants assert that a surveyor would be able to locate all of the Trust Property that an MVC Trust Owner has a nonspecific, undivided interest in. However, at this stage, parol evidence is not admissible because, as alleged, it does not appear that the parties were contemplating a particular parcel of property in this transaction. Accordingly, Plaintiffs have stated a claim as to Count I.

2.     *Count II*

Count II alleges that the MVC Trust Consumer Deeds are void because MORI lacked the legal capacity to convey Trust Property. Specifically, Plaintiffs assert that MORI cannot convey its beneficial interest in the MVC Trust via the Consumer Deeds because MORI conveyed its legal title to the Trust Property to First American. Alternatively, Plaintiffs aver that the MVC Trust is void under the doctrine of merger. In response, Marriott and First American contend that MORI is not conveying legal title to the Trust Property via the Consumer Deeds but rather beneficial interests in the MVC Trust itself.

Under Florida law, beneficiaries possess a beneficial interest in a land trust, while trustees hold legal and equitable title to the land trust property. Fla. Stat. § 689.071(2) (2010). A subsequent amendment to the Florida Land Trust Act clarifies that: "The trustee's legal and equitable title to the trust property of a land trust is separate and distinct from the beneficial interest of a beneficiary in the land trust and in the trust property." Fla. Stat. § 689.071(8)(d).[5] Therefore, when MORI

---

[5] The parties dispute the application of post-2010 amendments to the Florida Land Trust Act. However, the presumption in favor of prospective application of a statutory amendment generally does not apply to remedial or procedural statutes. *Smiley v. State*, 966 So. 2d 330, 334 (Fla. 2007). Because the amendment clarifies the existing rights of trustees and beneficiaries, the Court can look to the subsequent amendment of section 689.071 for guidance as to the legislature's intent. *See id.*

conveys its beneficial interests, it is conveying an interest separate from First American's legal title in the Trust Property.

Plaintiffs also claim, without authority, that by virtue of using a deed, Marriott conveyed legal title to Trust Property to the MVC Trust Owners. That is not the case. Both the Florida Land Trust Act and the Florida Timeshare Act provide that a beneficial interest in a land trust is a real property interest. *See* Fla Stat. § 689.071(6) ("If no such personal property designation appears in the recorded instrument or in the trust agreement, the interests of the land trust beneficiaries are real property.");[6] Fla. Stat. § 721.05(34) (2010) ("'Timeshare estate' means . . . an interest in a trust . . . . A timeshare estate is a parcel of real property under the laws of this state."). The Consumer Deeds and the Trust Agreement both reiterate that MVC Trust Owners were receiving real property interests. (*See* Doc. 124-3 at 2 (noting that the property being conveyed is a timeshare estate); Doc. 124-13 at 9 (providing that the MVC Trust Owner's interests "will each be deemed to be Florida real property interests")). Thus, MORI was required to convey its beneficial interests via a deed. *See W. Lakeland Land Co. v. United States* (*In re W. Lakeland Land Co.*)*,* 216 B.R. 892, 893 (Bankr. M.D. Fla. 1998) (noting that under Florida law, "an interest in real property cannot be conveyed other than by deed").

Alternatively, Plaintiffs argue that the MVC Trust is void due to the doctrine of merger. Under the doctrine of merger, "a trust cannot exist where the legal and equitable interests of the trust are vested in one individual." *Grant v. Wells* (*In re Wells*), 259 B.R. 776, 779 (Bankr. M.D. Fla. 2001). Thus, "for the doctrine of merger to apply, the legal and beneficial interests must be completely coextensive." *Hansen v. Bothe*, 10 So. 3d 213, 216 (Fla. 2d DCA 2009). As explained, Marriott's beneficial interest in the MVC Trust is separate and distinct from First American's legal interest in the Trust Property. Accordingly, Count II will be dismissed with prejudice.

---

[6] The 2010 version of section 689.071(6) did not specify what happens if no personal property designation appears in the recorded instrument or in the trust agreement.

### 3. Count III

In Count III, it is unclear what cause of action Plaintiffs are bringing. Plaintiffs argue that coverage is triggered under their title insurance policy due to Marriott and First American's alleged violation of section 627.784, Florida Statutes, which provides that "[a] title insurance policy . . . may not be issued without regard to the possible existence of adverse matters or defects of title." Fla. Stat. § 627.784. To the extent that Plaintiffs are pursuing a claim under section 627.748, there is no private right of action. *See Regions Bank v. Commonwealth Land Title Ins. Co.*, 977 F. Supp. 2d 1237, 1270 (S.D. Fla. 2013). To the extent that Plaintiffs are pursuing a claim under their title insurance policy, it is not clear whether Plaintiffs are attempting to bring a breach of contract claim or a declaratory judgment claim. Regardless, Plaintiffs have not sufficiently alleged that their cause of action is ripe as Plaintiffs do not state whether they have made a claim under their policy. *See Yacht Club on the Intercoastal Condo. Ass'n v. Lexington Ins. Co.*, 509 F. App'x 919, 922–23 (11th Cir. 2013) (noting that a claim for breach of an insurance contract in Florida is not ripe when the claim has not yet been denied). Accordingly, Plaintiffs fail to state a claim under Count III.

### 4. Count IV

Count IV sets forth a claim against Orange County for negligence, alleging that Orange County breached its official duties by improperly recording and indexing unrecordable MVC Trust instruments.[7] As a threshold matter, Orange County asserts that it is not the proper party for Plaintiffs' claim because the Orange County Comptroller is responsible for recording legal instruments. However, the Orange County Comptroller is part of Orange County, and therefore,

---

[7] Plaintiffs incorrectly conclude that they were given permission to amend the Complaint to reassert their negligence claim against Orange County. (*See* Jan. 4, 2017 Order, Doc. 112, at 2 ("Plaintiffs may *seek leave* to reassert those claims after notice has been provided in accordance with the law." (emphasis added)). Nonetheless, in an effort to conserve judicial resources, the Court will address Plaintiffs' claim against Orange County.

Orange County can be subject to liability for the Comptroller's alleged negligent actions. *See* Fla. Stat. § 768.28(9).

Additionally, Orange County argues that it is immune from suit. Section 768.28(5), Florida Statutes, "waived sovereign immunity for the State, its agencies, and its subdivisions in tort actions, rendering the State responsible 'in the same manner and to the same extent as a private individual under like circumstances.'" *Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009) (quoting Fla. Stat. § 768.28(5)). To hold a governmental agency or subdivision liable for negligence, "it must be demonstrated that the governmental entity owed the specific claimant either a 'statutory' or 'common law' duty of care that was breached, and the challenged conduct of the government must involve an 'operational' rather than a 'planning' level of decision-making. *First Am. Title Ins. Co. of St. Lucie Cty. v. Dixon*, 603 So. 2d 562, 564 (Fla. 4th DCA 1992) (collecting cases). "Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy." *Commercial Carrier Corp. v. Indian River Cty.*, 371 So. 2d 1010, 1021 (Fla. 1979).

Here, Orange County concedes that it has a statutory duty to record legal instruments consistent with section 28.222. *See Dixon*, 603 So. 2d at 564 (noting that the clerk of court had a statutory duty to properly record and index documents in the public records). However, Orange County asserts that it does not owe a statutory duty specifically to Plaintiffs. The Court disagrees. Orange County owes a statutory duty to individuals, like Plaintiffs, claiming an interest in land. *See id.* at 565 (holding that section 28.222 is designed to protect those claiming an interest in land, including subsequent purchasers and creditors). Moreover, the Court finds the act of recording legal instruments to be operational, as Orange County contends that it has no discretion in determining whether to record a properly executed deed. *See Rodriguez v. Miami-Dade Cty.*, 117 So. 3d 400, 406 (noting that sovereign immunity shields only actions that are discretionary in

nature, not operational). Accordingly, sovereign immunity is not a bar to Plaintiffs' claim against Orange County.

Lastly, Orange County argues that Plaintiffs cannot state a claim for negligence because it is required to record properly executed deeds, regardless of whether those deeds contain valid legal descriptions. Even if true, Orange County does not address Plaintiffs' remaining arguments: that the Trust Memorandum, NOAs, and mortgages on MVC Trust purchases are not recordable instruments and that Orange County improperly recorded deeds pertaining to property located outside the county. Therefore, Orange County has failed to meet its burden to dismiss Count IV.

     5.     *Count V*

In Count V, Plaintiffs asserts a claim against MORI, MVCTOA, First American Financial Corporation ("First American Corp."), and First American Trust for violation of Florida's Condominium Act, Fla. Stat. § 718.101 *et seq*. Plaintiffs allege that the MVC Trust purports to convey some interest in Legacy Timeshare Condominiums, and therefore, is required to have recorded a condominium declaration. Additionally, Plaintiffs assert that the existing condominium declarations for the Component Sites fail to mention the MVC Trust or the interests created therein. Marriott and First American argue that the MVC Trust is not subject to Florida's Condominium Act because it does not create, sell, or operate condominiums.

The purpose of Florida's Condominium Act is to give statutory recognition to condominium ownership and to "establish procedures for the creation, sale, and operation of condominiums." Fla. Stat. § 718.102. "A condominium is created by recording a declaration in the public records of the county where the land is located, executed and acknowledged with the requirements for a deed." Fla. Stat. § 718.104(2). In order to create a timeshare estate in Florida by converting a condominium into a timeshare, the declaration of condominium must specifically provide the following:

> [A] statement in conspicuous type declaring that timeshare estates
> will or may be created with respect to units in the condominium. In
> addition, the degree, quantity, nature, and extent of the timeshare
> estates that will or may be created shall be defined and described in
> detail in the declaration, with a specific statement as to the minimum
> duration of the recurring periods of rights of use, possession, or
> occupancy that may be created with respect to any unit.

Fla. Stat. § 718.104(4)(o).

Plaintiffs' allegations are problematic for a number of reasons. First, it is unclear which Defendants this Count is brought against, let alone how any of the named Defendants are liable. Although Plaintiffs name MORI, MVCTOA, First American Corp., and First American Trust in the beginning of the Count, none of those Defendants are mentioned or tied to any of the allegations contained therein.[8] Second, Plaintiffs provide no authority demonstrating that the MVC Trust is subject to Florida's Condominium Act. Instead, Plaintiffs rely on a letter from the Bureau of Standards and Regulations (Doc. 78-1), which provides that the MVC Plan complies with the Act. The letter is neither attached to the Amended Complaint nor referenced therein, and thus, the Court cannot consider it at this stage. *See Basson v. Mortg. Elec. Registration Sys., Inc.*, 741 F. App'x 770, 771 (11th Cir. 2018) (listing what documents can be considered at the motion to dismiss stage). Lastly, Plaintiffs fail to demonstrate that the existing condominium declarations are required to mention the MVC Trust or the interests created therein. *See* Fla. Stat. § 718.104(4)(0) (listing what must be included in condominium declaration for a timeshare). The Court is not required to accept Plaintiffs' conclusory allegations. Accordingly, Plaintiffs have failed to state a claim as to Count V.

   6.  *Count VI*

---

[8] This alone warrants dismissal of Count V. *See Weiland*, 792 F.3d at 1323 (noting that one form of shotgun pleading involves asserting a claim against multiple defendants without specifying "which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against").

Plaintiffs assert in Count VI that MORI, MVCTOA, First American Corp., and First American Trust violated section 721.57, Florida Statutes, by offering a timeshare estate in a land trust that does not comply with section 721.08. Thus, Plaintiffs claim presupposes that the MVC Trust fails to comply with section 721.08, which Plaintiffs allege in Counts VII and VIII. As discussed herein, Plaintiffs failed to state a claim in Counts VII and VIII. Because Plaintiffs have not demonstrated that the MVC Trust fails to comply with section 721.08, Plaintiffs cannot state a claim under 721.57.

Additionally, Plaintiffs assert that the timeshare estates in this case are invalid because multisite timeshare plans, like the MVC Plan, cannot contain timeshare estates. They rely on the 2010 version of the Florida Timeshare Act, which defines both a specific and nonspecific multisite timeshare plan as "a multisite timeshare plan containing timeshare licenses or personal property timeshare interests." Fla. Stat. §§ 721.52(5), (7) (2010). A reasonable reading of section 721.52(5) could certainly lead to the conclusion that multisite timeshare plans cannot offer timeshare estates. However, the Act must be read as a whole, and other parts of the Act explicitly contemplate the offering of timeshare estates in a multisite timeshare plan. *See e.g.*, Fla. Stat. § 721.52(4) (2010) ("Timeshare estates may only be offered in a multisite timeshare plan pursuant to s. 721.57."); Fla. Stat. § 721.57(1) (2010) ("Any offering of timeshare estates in a multisite timeshare plan that does not comply with these requirements shall be deemed to be an offering of a timeshare license."). Moreover, a timeshare estate is defined as "an interest in a trust that complies in all respects with the provisions of s. 721.08(2)(c)4." Fla. Stat. § 721.05(34) (2010). Thus, the Court finds that the 2010 version of the Florida Timeshare Act does not preclude a multisite timeshare plan from offering timeshare estates, and Count VI will be dismissed with prejudice to the extent Plaintiffs assert that timeshare estates cannot be offered in a multisite timeshare plan.

    7.    *Count IX*

In Count IX, Plaintiffs allege that the MVC Trust fails to comply with the statutory one-to-one nightly use ratio. The "'[o]ne-to-one use right to use night requirement ratio' means that the sum of the nights that owners are entitled to use in a given 12-month period shall not exceed the number of nights available for use by those owners during the same 12-month period." Fla. Stat. § 721.05(25). Stated differently, "[n]o individual timeshare unit may be counted as providing more than 365 use nights per 12-month period." *Id.*

An NOA is issued each time property is added to the MVC Trust. The NOA, among other things, details Marriott's valuation of the property being added in terms of Points for Sale. However, the total Points for Sale in the MVC Trust does not change until an NOU is delivered for the Trust Property because that is when the Trust Property becomes available to the MVC Trust Owners. At that time, the total Points for Sale in the MVC Trust is adjusted to account for the newly-added Trust Property and the total Points for Use—i.e., the cost of booking accommodations—will increase by at least as much as the Points for Sale. (Doc. 124-13 at 14). Both parties agree that the one-to-one nightly use ratio will be maintained so long as the Points for Sale do not exceed the Points for Use.[9]

In the Amended Complaint, Plaintiffs aver that Marriott arbitrarily values property added to the MVC Trust, and therefore, it can create as many Points for Sale as it wants. Even if true, this alone does not demonstrate that the one-to-one nightly use ratio has not been maintained as it does not account for whether the total number of Points for Sale is balanced out by the total number of Points for Use. Additionally, Plaintiff alleges that it is impossible for Marriott to maintain the one-to-one nightly use ratio because of the discrepancy between the total Points for Sale from the properties listed in the NOAs and the total Points for Sale from the properties available to MVC

---

[9] If the total Points for Sale exceed the total Points for Use, there will be a surplus of points available for MVC Trust Owners to reserve timeshare units for more than 365 days in a twelve-month period.

Trust Owners. Plaintiff's argument ignores that fact that the total Points for Sale in the MVC Trust does not change until an NOU has been delivered for a property and that property becomes available to the MVC Trust Owners. Once this occurs, the total Points for Sale and the total Points for Use are balanced. (Doc. 124-13 at 14). Plaintiffs do not allege otherwise, and therefore, Count IX fails to state a claim.[10]

8. *Count X*

In Count X, Plaintiffs allege that Marriott breached its fiduciary duty to MVC Trust Owners pursuant to section 721.552(1)(b), Florida Statues, which provides: "Any person who is authorized by the timeshare instrument to make additions to the multisite timeshare plan pursuant to this subsection shall act as a fiduciary in such capacity in the best interests of the purchasers . . . ." Specifically, Plaintiffs allege that Marriott breached its fiduciary duty to MVC Trust Owners by adding property to the MVC Trust via NOAs without immediately making the property available for use, resulting in increased competition among MVC Trust Owners. Plaintiffs fail to demonstrate how Marriott's method of adding property to the MVC Trust via NOAs increases competition, especially considering that no new interests in the MVC Trust are created until an NOU is delivered for the Trust Property. Moreover, Plaintiffs provide no authority in support of their contention that Marriott's method of adding property to the MVC Trust violates its fiduciary duty, let alone that Plaintiffs suffered an injury. Such conclusory allegations are insufficient to state a claim, and therefore, Count X will be dismissed.

9. *Count XII*

---

[10] To the extent that Plaintiffs' Response asserts additional allegations, "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, No. 8:12-cv-897-T-30TBM, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)).

Count XII sets forth a claim against MORI and MVCTOA for unfairly assessing and collecting common expenses in violation of section 721.15(1)(a), Florida Statutes. Section 721.15(1)(a) provides that:

> The timeshare instrument shall provide for the allocation of common expenses among all timeshare units or timeshare interests on a reasonable basis, including timeshare interests owned or not yet sold by the developer. The timeshare instrument may provide that the common expenses allocated may differ between those timeshare units that are part of the timeshare plan and those units that are not part of the timeshare plan; however, the different proportion of expenses must be based upon reasonable differences in the benefit provided to each. The timeshare instrument shall allocate common expenses to timeshare interests owned or not yet sold by the developer on the same basis that common expenses are allocated to similar or equivalent timeshare interests sold to purchasers.

Fla. Stat. § 721.15(1)(a). Here, the MVCTOA Bylaws provide a formula for the allocation of common expenses for Trust Property for which an NOU has been delivered. (Doc. 124 ¶ 349). This formula applies equally to all MVC Trust Owners. (*Id.*). On the other hand, all common expenses for Trust Property for which an NOU has not been delivered ("restricted-use property"), are allocated to Marriott. (*Id.* ¶ 353; Bylaws, Doc. 124-14, at 19). Plaintiffs assert that this disparity violates section 721.15(1)(a).

Plaintiffs argument is not well taken. The plain language of the statute provides that the common expenses allocation may differ based on whether or not the timeshare units are part of the timeshare plan, so long as the variance is based on reasonable differences in the benefit provided by each. The restricted-use properties are not part of the timeshare plan and provide no benefit to MVC Trust Owners, who cannot use them. Thus, Marriott can allocate common expenses for restricted-use property on a different basis than the common expenses for Trust Property for which an NOU has been delivered.

Additionally, Plaintiffs claim that Marriott's allocation of common expenses is unreasonable because the MVC Trust Owners' share of common expenses has increased over the

years while Marriott refuses to disclose the amount it pays on expenses for restricted-use properties. Based on this fact alone, Plaintiffs conclude that Marriott is passing along the cost of the expenses for restricted-use properties onto MVC Trust Owners. Plaintiffs' argument is based on pure speculation and is insufficient to state a claim for relief. Therefore, Count XII will be dismissed.

      *10.    Count XIII*

In Count XIII, Plaintiffs aver that Marriott failed to provide and maintain a separate reservation system for MVC Trust Owners and owners of Legacy timeshares ("Legacy Owners") in violation of section 721.56, Florida Statutes. "Prior to offering the multisite timeshare plan, the developer shall create the reservation system and shall establish rules and regulations for its operation." Fla. Stat. § 721.56(6). A "reservation system" is defined as "the method, arrangement, or procedure by which a purchaser, in order to reserve the use and occupancy of any accommodation or facility of the multisite timeshare plan for one or more use periods, is required to compete with other purchasers in the same multisite timeshare plan." Fla Stat. § 721.52(6).

Plaintiffs acknowledge that separate reservation systems exist for MVC Trust Owners and Legacy Owners; however, Plaintiffs argue that those reservation systems have been subsumed by the MVC Exchange Program, thus violating the requirement that a purchaser compete only against other purchasers in the same multisite timeshare plan. The Amended Complaint provides no explanation as to how Marriott combined the separate reservation systems into a single MVC Exchange Program. Plaintiffs conclusory allegations are insufficient to state a claim. To the extent that Plaintiffs' Response elaborates on their allegations, "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Vandenbrink v. State Farm Mut. Auto. Ins. Co*., No. 8:12-cv-897-T-30TBM, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)). Therefore, Count XIII will be dismissed.

*11.* *Florida RICO Counts I & II*

In the final two Counts of the Amended Complaint, Plaintiffs allege violations of the Florida Civil Remedies for Criminal Practices Act–Florida's RICO equivalent. Section 772.103, Florida Statutes, provides as follows:

> It is unlawful for any person:
>
> (1) Who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of criminal activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.
>
> (2) Through a pattern of criminal activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.
>
> (3) Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.
>
> (4) To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

Fla. Stat. § 772.103. Plaintiffs do not identify under which subsection they are bringing a claim; this alone warrants dismissal. *See Signeo Int'l Ltd. v. Wade*, No. 6:12-cv-1884-ORL-DAB, 2013 WL 12153590, at *6 (M.D. Fla. Apr. 1, 2013).

Moreover, Plaintiffs fail to state a pattern of criminal activity. "To maintain an action under 722.103, a plaintiff must plead the necessary predicate acts or continuity of endeavor." *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 864 (Fla. 4th DCA 2012). Here, the alleged predicate acts are Marriott and First American's conspiracy to establish an unlawful trust and to unlawfully withdraw MVC Trust sale proceeds from escrow. In other words, Plaintiffs' RICO claims require Plaintiff to adequately state a claim in Counts VI, VII, and VIII which, as previously discussed, they failed to do. Because Plaintiffs are unable to establish the necessary predicate acts, Florida RICO Counts I & II will be dismissed.

### C. Leave to Amend

Plaintiffs have not requested leave to amend their Amended Complaint. "A district court is not required to grant a plaintiff leave to amend his complaint [*sua sponte*] when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). Moreover, Plaintiffs were already given one opportunity to amend their Complaint. Thus, Plaintiffs will not be granted leave to amend.

### IV. CONCLUSION

Based on the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Marriott Defendants' Dispositive Motion to Dismiss (Doc. 134) is **GRANTED in part** and **DENIED in part**.

2. Defendant MVC Trust Owners Association, Inc.'s Dispositive Motion to Dismiss (Doc. 135) and First American Defendants' Motion to Dismiss (Doc. 136) are **GRANTED**.

3. Defendant Orange County's Motion to Dismiss (Doc. 144) is **DENIED**.

4. Counts II and VI, to the extent Plaintiffs assert that timeshare estates cannot be offered in a multisite timeshare plan, are **DISMISSED with prejudice**.

5. Counts III, V, VII, VIII, IX, X, XI, XII, XIII, Florida Rico Counts I & II, and Plaintiffs' punitive damages claim are **DISMISSED without prejudice**.

**DONE** and **ORDERED** in Orlando, Florida on March 31, 2019.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record